EXHIBIT "A"

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

---

RISEBORO COMMUNITY PARTNERSHIP INC., formerly known as RIDGEWOOD BUSHWICK SENIOR CITIZENS COUNCIL, INC.,

                        Plaintiff,

-against-

SUNAMERICA HOUSING FUND NO. 682, SLP HOUSING I, LLC, 420 STOCKHOLM STREET ASSOCIATES L.P.,

                        Defendants.

Index No.: _____

**VERIFIED COMPLAINT**

---

Plaintiff, RiseBoro Community Partnership Inc., formerly known as Ridgewood Bushwick Senior Citizens Council, Inc., ("RiseBoro"), by their attorneys, Goldstein Hall PLLC, as and for their Verified Complaint against SunAmerica Housing Fund No. 682 ("SunAmerica") and SLP Housing I, LLC ("SLP") (collectively, "Defendants") and 420 Stockholm Street Associates L.P. ("Partnership") hereby alleges as follows:

## PRELIMINARY STATEMENT

1. The underlying Apartment Complex (hereinafter defined) is a 35-unit low-income housing development with low-income tenants that is in desperate need of repair. Despite Plaintiff's best efforts to effectuate said repairs, Plaintiff has been blocked by Defendants in securing the necessary financing, solely because of Defendants' desire to maintain an interest in the Apartment Complex, long after they have reaped the benefit of its Low-Income Housing Tax Credits ("LIHTC") and long after 26 U.S.C. § 42 ("Section 42") contemplated their exit.

1

Defendants are waiting-out the expiration of the relevant binding agreements to enrich themselves by extracting additional undue benefit out of the Apartment Complex, including converting it into expensive market rate units. This desire is at the direct expense of the current low-income tenants because RiseBoro cannot refinance the Apartment Complex without Defendants first exiting, which has resulted in extreme delay in the making of necessary and important repairs. Further, Defendants desire to wait out the Regulatory Agreement is at direct odds with Section 42's intent for perpetual not-for-profit ownership.

## THE PARTIES

2. RiseBoro is a New York not-for-profit corporation organized and existing under the laws of the State of New York, with its principal place of business at 565 Bushwick Avenue, Brooklyn, New York 11206.

3. Upon information and belief, SunAmerica is a foreign limited partnership, organized and existing under the laws of the State of Nevada with its principal place of business at 1 SunAmerica Center, Century City, Los Angeles, California 90067-6022.

4. Upon information and belief SunAmerica transacts business in the State of New York.

5. Upon information and belief, SLP is a foreign limited liability company, organized and existing under the laws of the State of Nevada with its principal place of business at 1 SunAmerica Center, Century City, Los Angeles, California 90067-6022.

6. Upon information and belief SLP transacts business in the State of New York.

7. The Partnership is a New York limited partnership organized and existing under the laws of the State of New York with its principal place of business at 217 Wyckoff Avenue,

Brooklyn, New York 11237. The Partnership is named as a nominal defendant in that its interest will be affected by the outcome of this action.

## JURUSIDICTION AND VENUE

8. This Court has long-arm personal Jurisdiction over the Defendants pursuant to CPLR 302 in that the Defendants (i) transact business in New York State (the "State"), and/or (ii) commit tortious acts within the State, and/or (iii) committed tortious acts outside of the State causing injury to RiseBoro in the State, and (a) regularly do or solicit business or derive substantial revenue from services rendered within the State, or (b) expect or should reasonably expect the act to have consequences in the State and derive substantial revenue from interstate commerce.

9. Pursuant to CPLR 507, Kings County is the proper venue for this action since the Premises subject to the dispute is located within Kings County.

## BACKGROUND ALLEGATIONS AS TO ALL CAUSES OF ACTIONS

I.  NATURE OF ACTION

10. This action concerns the interpretation of a contractual right of first refusal (the "ROFR") granted to RiseBoro (or its designee) in the Amended and Restated Agreement of Limited Partnership of the Partnership. RiseBoro is the not-for-profit sponsor of the redevelopment of a LIHTC project located at 420 Stockholm Street, Brooklyn New York (the "Apartment Complex"). Upon information and belief, SunAmerica and SLP are limited investor partners of the Partnership; SunAmerica is the Investment Partnership and SLP is the Special Limited Partner.

11. On February 13, 2018, RiseBoro informed the Defendants that it intended to exercise the ROFR and purchase the Apartment Complex within thirty days, but the Defendants refused RiseBoro's notice and informed RiseBoro that RiseBoro cannot exercise the ROFR unless

SLP consents to such a purchase and that, moreover, RiseBoro cannot exercise its ROFR unless a bona fide third party offer is made and the Defendants are willing to sell.

12. There is a genuine controversy between the parties as to whether the consent of the Defendants is necessary for RiseBoro to exercise the ROFR. RiseBoro maintains that the Defendants have already realized the benefit of the bargain by capturing the LIHTC tax credits and other associated tax benefits, while RiseBoro's statutorily promulgated role – to maintain the affordability of the Apartment Complex – has not yet lapsed.

13. Crucially, to refinance the Apartment Complex and maintain its operational viability, Defendants must exit the Partnership and facilitate RiseBoro's purchase of the Apartment Complex. Otherwise, Defendants' continued involvement precludes the Apartment Complex from both securing necessary public funds and precludes perpetual not-for-profit ownership as contemplated by Section 42 – rendering the entire LIHTC framework upon which the Apartment Complex is premised, meaningless.

## II. LOW INCOME HOUSING TAX CREDIT

14. The LIHTC provision of the Internal Revenue Code, Section 42 is a program that leverages private sector and investment, to develop and perpetuate low-income housing.

15. Section 42 creates federally allocated tax credits administered by state housing finance agencies. These state agencies then award tax credits to real estate developers in exchange for the developers' creation of low-income housing.

16. As these tax credits are nonrefundable, only taxpayers with tax liabilities can make use of the tax credits. Thus, developers transfer the credits to large financial institutions with significant federal tax liabilities.

17. However, because one taxpayer cannot sell tax credits to another and the Internal Revenue Code permits only the owner of a qualified low-income building to claim the tax credit on its return, for the tax credits to enure to the benefit of an entity, a developer and an investor (the "Investor Partner") enter into a partnership that will own the project.

18. Accordingly, in exchange for being allocated approximately 99% of the tax credits, which are taken over a period of ten years, the Investor Partner makes a series of capital contributions to the partnership – these contributions serve as the initial equity necessary to develop, operate and maintain the project.

19. As a result, over a period of ten years, the Investor Partner can claim annual tax credits to offset its tax liabilities over ten to fifteen years so long as the project complies with affordability restrictions (the "Compliance Period"), avoiding tax-credit recapture. However, after the tax credits are exhausted and the Investor Partner loses any economic incentive to remain in the partnership and perpetuate affordability, in order to ensure the Project's fundamental low-income housing objective, Section 42 specifically contemplates and incentivizes a not-for-profit organization's purchase of the LIHTC project for a statutorily prescribed below market price, in Section 42(i)(7) (the "Section 42 ROFR").

20. Specifically, Section 42 provides, in pertinent part:

> (A) No Federal income tax benefit shall fail to be allowable to the taxpayer with respect to any qualified low-income building merely by reason of a right of 1st refusal held by the tenants (in cooperative form or otherwise) or resident management corporation of such building or by a qualified nonprofit organization (as defined in subsection (h)(5)(C)) or government agency to purchase the property after the close of the compliance period for a price which is not less than the minimum purchase price determined under subparagraph (B).

5

> (B) Minimum purchase price. For purposes of subparagraph (A), the minimum purchase price under this subparagraph is an amount equal to the sum of—
>   a. the principal amount of outstanding indebtedness secured by the building (other than indebtedness incurred within the 5-year period ending on the date of the sale to the tenants), and
>   b. all Federal, State, and local taxes attributable to such sale.
> Except in the case of Federal income taxes, there shall not be taken into account under clause (ii) any additional tax attributable to the application of clause (ii).

26 U.S.C. Section 42(i)(7).

21. Here, the Restated Agreement (as hereinafter defined) granted a Section 42 ROFR to RiseBoro in Section 12.03. The not-for-profit organization's – or, here, RiseBoro's – opportunity to purchase preserves the affordability of the project.

### III.   THE PROJECT

22. On December 21, 1998, 420 Stockholm Housing Development Fund Company, Inc. (the "HDFC") as general partner, and SunAmerica as limited partner entered the Partnership, pursuant to an Agreement of Limited Partnership (the "Agreement").

23. In the Agreement, SunAmerica loans the HDFC the funds necessary to purchase certain land pursuant to a purchase agreement that is to be assigned to the HDFC by RiseBoro (wherein RiseBoro is purchaser), and that purchased land would then be acquired by the Partnership to take advantage of the LIHTC program. See Section 7(d) of the Agreement.

24. On or about March 25, 1999 the HDFC did acquire the land and the Agreement was amended and restated on May 1, 1999 (the "Restated Agreement") to outline the now existing LIHTC partnership, specifically: "the Apartment Complex is being developed in a manner which satisfies, and shall continue to satisfy, all restriction, including tenant income and rent restrictions,

applicable to projects generating Low-Income Housing Tax Credits under Section 42 of the Code." Section 4.01(p) of the Restated Agreement.

25. To that end, the Agreement provides that "no restrictions on the sale or refinancing of the Apartment Complex, other than the restrictions to be set forth in … Section 42 of the Code …. and no such restrictions shall … be placed upon the sale or refinancing of the Apartment Complex." Section 4.01(O) of the Restated Agreement.

26. On August 14, 2000, 420 Stockholm Corp. whose sole shareholder is RiseBoro, replaced the HDFC as general partner of the Partnership. Simultaneously, the land – now the Apartment Complex – was transferred from the HDFC to the Partnership to satisfy the fundamental tax principles of ownership that underpin the LIHTC framework by making the Partnership owner of the Apartment Complex and permitting the Section 42 "tax credits to be allocated to the Partners in accordance with their Percentage Interests." Section 11.01(a) of the Restated Agreement.

27. The Restated Agreement granted RiseBoro the ROFR.

28. 99.89% of the tax credits were allocated and flowed to SunAmerica, while a nominal 0.10% of the tax credits were allocated and flowed to RiseBoro and 0.01% of the tax credits were allocated and flowed to SLP. See Section 5.01(a), (b), (c) of the Restated Agreement.

IV. RISEBORO'S RIGHT OF FIRST REFUSAL

29. In connection with the development of the Apartment Complex and in accordance with Section 42, the Restated Agreement provided for a right of first refusal, the ROFR, as follows:

> On and after the end of the 15 year Compliance Period, [RISEBORO] or its designee, if it is at that time a qualified nonprofit corporation, shall have a right of first refusal to purchase the Apartment Complex for the price equal to the sum of:
> (i) The principal amount of outstanding indebtedness secured by the building (other than indebtedness

7

      incurred within the 5-year period ending on the date of the sale)
(ii) All Federal, State, and local taxes attributable to such sale and to any amounts paid pursuant to subsection (iii) hereof; and
(iii) Any amounts of a Tax Credit Shortfall which has not been paid.

Section 12.03 of the Restated Agreement.

  V.  RISEBORO'S EXERCISE OF ITS RIGHT OF FIRST REFUSAL

  30.  On November 2, 2015, RiseBoro's agent, Mr. Peter Brodie, e-mailed Defendants and communicated RiseBoro's intent "to purchase the [Apartment Complex] … in accordance with Section 12.03 of the [Restated Agreement]."

  31.  On the same day, SLP replied to RiseBoro's E-mail stating:

> Under Section 12.03, your client has a right of first refusal to purchase the property. Further under Section 8.02b, SLP consent is required for a sale or disposition of all or any material portion of the Partnership assets.
> At this time, the limited partners are not interested in pursuing the sale of the property. Hence, the right of first refusal would not be triggered this coming January, and will not be triggered unless and until the partners decide to sell the property.
> Therefore, do not proceed with the course of action described below.

  32.  On February 13, 2018, RiseBoro again informed Defendants of its intent to exercise its rights and purchase the Apartment Complex and requested that transaction occur within thirty days thereof.

  33.  On April 17, 2018, Defendants' counsel alleged that the proposed transaction would violate the terms of the Partnership Agreement. Defendants' counsel followed up his April 17th letter in an April 24, 2018 letter (the "April 24th Letter") by arguing, without support, that RiseBoro's intended transaction "without the Consent of the Special Limited Partner would violate

8

the Partnership Agreement" and, further alleging that, the predicate right of first refusal requires "both a willing seller and a bona fide third party offer before it can be exercised." See the April 24th Letter.

34. The parties continued discussing Defendants' purchase pursuant to the ROFR during various subsequent telephone calls. During these discussions it became clear that RiseBoro and Defendants disagreed as to the meaning and significance of several provisions of the Restated Agreement, *inter alia*: (i) whether the provision

> General Partner shall not without the Consent of the Special Limited Partner which Consent may be withheld in its sole and absolute discretion, have any authority to: to sell or otherwise dispose of, at any time, all or any material portion of the assets of the Partnership, **except as expressly provided in this Agreement**

Section 8.02(b)(i) (emphasis added), precludes and/or conditions RiseBoro's ROFR in Article XII, Section 12.03; and (ii) whether the ROFR "would not be triggered … and will not be triggered unless and until the Defendants decide to sell the "Apartment Complex]" and a bona fide third-party offer is made.

35. RiseBoro explained that Defendants' benefit of the bargain was to capture the LIHTC tax credits and this benefit has already been realized by SunAmerica. RiseBoro further explained that Defendants' ownership of the Apartment Complex remained a mere nominal appendage of the LIHTC structure which cannot be viewed in isolation, but must instead be construed together with, *inter alia*, the purpose of the Partnership: generating LIHTC tax credits and ensuring that the Apartment Complex remains affordable via not-for-profit ownership at the expiration of the Compliance Period.

9

## AS TO THE FIRST CAUSE OF ACTION

(Declaratory Relief)

36. RiseBoro repeats and realleges each and every allegation set forth above as if fully set forth herein at length.

37. There is an actual controversy between the parties concerning their respective rights under the Restated Agreement.

38. Specifically, the parties disagree as to whether Defendants' consent, provided in Section 8.02(b)(i), is a condition precedent for RiseBoro to exercise its ROFR and purchase of the Apartment Complex pursuant Section 12.03.

39. Section 8.02(b)(i) specifically provides:

> General Partner shall not without the Consent of the Special Limited Partner which Consent may be withheld in its sole and absolute discretion, have any authority to: to sell or otherwise dispose of, at any time, all or any material portion of the assets of the Partnership, except as expressly provided in this Agreement.

40. The ROFR specifically provides:

> On and after the end of the 15 year Compliance Period, [RiseBoro] or its designee, if it is at that time a qualified nonprofit corporation, shall have a right of first refusal to purchase the Apartment Complex for the price equal to the sum of:
> (iv) The principal amount of outstanding indebtedness secured by the building (other than indebtedness incurred within the 5-year period ending on the date of the sale)
> (v) All Federal, State, and local taxes attributable to such sale and to any amounts paid pursuant to subsection (iii) hereof; and
> (vi) Any amounts of a Tax Credit Shortfall which has not been paid

41. The ROFR neither contains any limiting language nor consenting requirements for RiseBoro to exercise it. In fact, SLP's SLP's consent is not necessary for RiseBoro to exercise the ROFR because, *inter alia*, Section 8.02(b)(i) specifically provides that its impart is effective, "except as expressly provided in this Agreement" and therefore does not implicate RiseBoro's ROFR which neither contains any limiting language nor consenting requirements for RiseBoro to exercise it.

42. In other words, Section 8.02(b)(i) has no impact upon the bundle of rights RiseBoro is granted by the ROFR.

43. Further, Section 4.01(o) of the Restated Agreement provides "no restrictions on the sale or refinancing of the Apartment Complex, other than the restrictions to be set forth in … Section 42 of the Code …. and no such restrictions shall … be placed upon the sale or refinancing of the Apartment Complex."

44. Section 42 contemplates no restrictions against a ROFR holder.

45. By reason of the foregoing, a declaratory judgment is both necessary and proper in order to set forth and determine the rights and obligations that exist between the parties in connection with the Restated Agreement. A declaratory judgment would terminate the uncertainty or controversy giving rise to this cause of action.

## AS TO THE SECOND CAUSE OF ACTION

(Declaratory Relief)

46. RiseBoro repeats and realleges each and every allegation set forth above as if fully set forth herein at length.

47. There is an actual controversy between the parties concerning their respective rights under the Restated Agreement.

48. There is an actual controversy between RiseBoro and Defendants as to whether the ROFR "is an instrument that, under New York law, requires both a willing seller and a bona fide third party offer before it can be exercised," as maintained by Defendants.

49. The ROFR cannot be interpreted purely under New York common law, but must be interpreted to be consistent with the statutory scheme of Section 42 as mandated by the Restated Agreement.

50. Accordingly, the ROFR is unlike a common law ROFR – a preemptive right – as it entitles RiseBoro to purchase the Apartment Complex from the owner at a specific price and can be exercised unilaterally.

51. The Restated Agreement neither includes nor implies a bona fide third-party offer as a condition precedent for RiseBoro to exercise its ROFR and purchase of the Apartment Complex pursuant Section 12.03.

52. Furthermore, Section 42 neither includes nor implies a bona fide third-party offer as a condition precedent for a ROFR holder to exercise its ROFR and such a limitation is inconsistent with the statutory scheme of Section 42 because a Section 42 ROFR permits a not-for-profit organization to purchase a project at a below-market price (the minimum purchase price), even if it is lower than the price offered by a third party, thereby discouraging any bona fide third party offeror from making any offer because the third parties would be aware that a not-for-profit organization would prevail against any such third-party offer no matter how competitive it is.

53. By reason of the foregoing, a declaratory judgment is both necessary and proper in order to set forth and determine the rights and obligations that exist between the parties in connection with the Restated Agreement. A declaratory judgment would terminate the uncertainty

or controversy giving rise to this cause of action. A declaratory judgment would terminate the uncertainty or controversy giving rise to this cause of action.

## AS TO THE THIRD CAUSE OF ACTION

(Breach of Contract/Specific Performance)

54. RiseBoro repeats and realleges each and every allegation set forth above as if fully set forth herein at length.

55. The ROFR specifically provides:

> On and after the end of the 15 year Compliance Period, [RiseBoro] or its designee, if it is at that time a qualified nonprofit corporation, shall have a right of first refusal to purchase the Apartment Complex for the price equal to the sum of:
> (i) The principal amount of outstanding indebtedness secured by the building (other than indebtedness incurred within the 5-year period ending on the date of the sale)
> (ii) All Federal, State, and local taxes attributable to such sale and to any amounts paid pursuant to subsection (iii) hereof; and
> (iii) Any amounts of a Tax Credit Shortfall which has not been paid

56. On February 13, 2018, RiseBoro communicated, for a second time, its intent to exercise the ROFR within thirty days.

57. Defendants refused and continues to refuse to sell the Apartment Complex to Plaintiff, despite their obligations to the contrary, and have thereby breached the Restated Agreement.

58. This refusal by Defendants constitutes a breach of their obligations under the Restated Agreement.

59. By reason of the foregoing, Plaintiff is entitled to a judgment, pursuant to the ROFR, declaring and adjudging that Defendants had no right to refuse Plaintiff's intended exercise of its ROFR provided by and pursuant to Section 12.03, and directing the Defendants to specifically perform all of their obligations under the Restated Agreement, including cooperating with RiseBoro as it exercises the ROFR and purchases the Apartment Complex from the Partnership, as provided by and pursuant to Section 12.03.

60. The Restated Agreement relates to an interest in real property that is special, unique, and irreplaceable. The specific performance sought by RiseBoro relates to and affects the title to, or the possession, use or enjoyment of, real property.

61. RiseBoro has no adequate remedy at law as monetary damages are inadequate. Barring specific performance, RiseBoro cannot be made whole by an award of monetary damages.

## AS TO THE FOURTH CAUSE OF ACTION

(Breach of Contract/Damages)

62. RiseBoro repeats and realleges each and every allegation set forth above as if fully set forth herein at length.

63. RiseBoro pleads, in the alternative, that to the extent specific performance is not granted, RiseBoro is entitled to an award of damages by reason of the Defendants' breaches of contract, which have proximately caused, inter alia, RiseBoro to lose business opportunities in connection with re-positioning and/or refinancing the Apartment Complex.

64. The damages incurred by RiseBoro by reason of each of the Defendants' breach of contract as described herein includes, but is not limited to Defendants refusing and precluding RiseBoro from exercising its ROFR and purchasing the Apartment Complex as provided by and

pursuant to Section 12.03, and inhibiting RiseBoro from re-positioning and/or refinancing the Apartment Complex.

65. By reason of the foregoing, RiseBoro is entitled to a judgment against Defendants, in an amount to be determined at trial, but believed to be no less than $10,000,000.00.

WHEREFORE, RISEBORO seeks a judgment against the Defendants, jointly and severally,

a. *On the First Cause of Action*, an order declaring that:
    i. no condition precedent, other than the end of the 15 year Compliance period pursuant to Section 12.03, is required for RiseBoro to exercise its right of first refusal provided by and pursuant to Section 12.03;
    ii. neither consent of SLP nor any other entity or individual is required for RiseBoro to exercise its right of first refusal provided by and pursuant to Section 12.03; and
    iii. RiseBoro's exercise of its right of refusal provided by and pursuant to Section 12.03 is proper, and RiseBoro may purchase the Apartment Complex forthwith.

b. *On the Second Cause of Action*, an order declaring that:
    i. the right of first refusal provided by and pursuant to Section 12.03 is not a right of first refusal which is to be construed solely under New York law, but must instead be consistent with the statutory scheme of Section 42;
    ii. a bona fide third-party offer to purchase the Apartment Complex is not required prior to RiseBoro's exercising its right of first refusal provided by and pursuant to Section 12.03;
    iii. a third-party offer to purchase the Apartment Complex is not required prior to RiseBoro's or its designee exercising its right of first refusal provided by and pursuant to Section 12.03; and
    iv. the right of first refusal provided by and pursuant to Section 12.03 does not require a willing seller for the Apartment Complex to be purchased by RiseBoro or its designee by RiseBoro or its designee exercising its right of first refusal provided by and pursuant to Section 12.03.

c. *On the Third Cause of Action*, for a judgment directing the Defendants to specifically perform all of its obligations under the Restated Agreement and consummate the RiseBoro's purchase of the Apartment Complex as provided by and pursuant to Section 12.03

d. *On the Fourth Cause of Action*, for money damages in amount to be determined at trial, but believed to be no less than $10,000,000.00 against each of the Defendants for the breach of the Restated Agreement, plus attorney's fees, costs and disbursements.

e. *Such other and further relief* as the Court deems just, proper, and equitable.

Dated: New York, New York
November 14, 2018

**GOLDSTEIN HALL PLLC**

By: /S/ *Brian J. Markowitz*
**BRIAN J. MARKOWITZ, ESQ.**
**DANIEL GOLDENBERG, ESQ.**
Attorneys for Plaintiff
*RISEBORO COMMUNITY PARTNERSHIP INC.*
80 Broad Street, Suite 303
New York, New York 10004
Tel. (646) 768.4100

## VERIFICATION

STATE OF NEW YORK )
) ss.:
COUNTY OF NEW YORK )

**SCOTT SHORT**, being duly sworn, deposes and says as follows:

1. I am the chief executive officer of RISEBORO COMMUNITY PARTNERSHIP INC., formerly known as RIDGEWOOD BUSHWICK SENIOR CITIZENS COUNCIL, INC., the Plaintiff in this action.

2. I have read the foregoing Complaint and know the contents thereof to be true, except as to matters therein alleged upon information and belief, and that as to those matters I believe them to be true.

3. As to those matters alleged upon information and belief, the source of my information and the grounds for my belief are Plaintiff's books and records.

4. This verification is made by the deponent on behalf of RISEBORO COMMUNITY PARTNERSHIP INC., formerly known as RIDGEWOOD BUSHWICK SENIOR CITIZENS COUNCIL, INC., because it is a corporation and I am an officer of said corporation, to wit, its chief executive officer.

_____
**SCOTT SHORT**

Sworn to before me on this
14th day of November, 2018

_____
Notary Public

NIKI TSISMENAKIS
NOTARY PUBLIC – State of New York
No. 02TS6264869 – Qualified in Kings County
My commission expires July 2, 2020

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*NOTICE OF ENTRY\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Sir/Madam:

    Please take notice that the within is a (certified) true copy of a _____ duly entered in the office of the clerk of the within named court on the ___ day of _____, 2018.

Dated: _____

        Yours, etc.

        **GOLDSTEIN HALL PLLC**
        Attorney(s) for Plaintiff
        80 Broad Street, Suite 303
        New York, New York 10004

To: _____
Attorneys(s) for _____

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*NOTICE OF SETTLEMENT\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Sir/Madam:

    Please take note that an _____ of which the within is a true copy will be presented for settlement to the Hon. _____, one of the Justices of the within named court at _____, on _____, 2018, at _____ A.M./P.M.

Dated: _____

        Yours, etc.

        **GOLDSTEIN HALL PLLC**
        Attorney(s) for Plaintiff
        80 Broad Street, Suite 303
        New York, New York 10004

To: _____
Attorneys(s) for _____

---

INDEX NO.:

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
_____

RISEBORO COMMUNITY PARTNERSHIP INC., formerly known as RIDGEWOOD BUSHWICK SENIOR CITIZENS COUNCIL, INC.,

                Plaintiff,

-against-

SUNAMERICA HOUSING FUND NO. 682, SLP HOUSING I, LLC, 420 STOCKHOLM STREET ASSOCIATES L.P.,

                Defendants.
_____

VERIFIED COMPLAINT
_____

To the best of my knowledge, information and belief, formed after an inquiry reasonable under the circumstances, the presentation of these papers, or the contentions therein, are not frivolous, as defined in subsection (c) of section 130-1.1 of the Rules of the Chief Administrator (22 NYCRR).

        **GOLDSTEIN HALL PLLC**
        Brian J. Markowitz, Esq.
        Daniel Goldenberg, Esq.
        80 Broad Street, Suite 303
        New York, New York 10004

_____

Service of a copy of the within is hereby admitted
Dated: _____, 2018
Attorney(s) for _____