UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

RISEBORO COMMUNITY PARTNERSHIP INC.,
formerly known as RIDGEWOOD BUSHWICK
SENIOR CITIZENS COUNCIL, INC.,

                            Plaintiff,

              - against -

SUNAMERICA HOUSING FUND NO. 682; SLP
HOUSING I, LLC; and 420 STOCKHOLM STREET
ASSOCIATES L.P,

                         Defendants.

Case No.: 1:18-CV-07261-RJD-VMS

## MEMORANDUM OF LAW IN OPPOSITION
## TO PLAINTIFF'S MOTION TO REMAND

Submitted by:

**DEFENDANTS SUNAMERICA HOUSING
FUND NO. 682 and
SLP HOUSING I, LLC**

through their attorneys,

NIXON PEABODY LLP
55 West 46th Street
New York, New York  10036-4120
Tel: (212) 940-3000

Juan Luis Garcia
Louis E. Dolan (*Pending admission pro hac vice*)
jgarcia@nixonpeabody.com
dolan@nixonpeabody.com

Dated:  March 1, 2019

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND ........................................................................................................ 3

ARGUMENT .............................................................................................................. 8

    I.    Plaintiff's Pleading Raises a Substantial Federal Question on Its Face........................8

        A.    Plaintiff's Own Allegations Raise a Substantial Issue of Federal Tax Law at the Heart of the LIHTC Program, Which Issue Is Properly Resolved by a Federal Court ........................................................................................ 8

            1. The Construction of Section 42 Is Necessarily Raised and Disputed...............9

            2. The Construction of Section 42 Is a Substantial Federal Question .................10

            3. The Construction of Section 42 in a Federal Forum Will Not Disrupt the Federal-State Judicial Balance .................................................................13

        B.    Plaintiff's Objection to Jurisdiction Ignores Plaintiff's Essential Reliance on a Contested Interpretation of a Federal Statute ............................................. 15

    II.    There Is Complete Diversity Between the Real Parties in Interest.............................18

        A.    Pursuant to Settled Law, a Partnership Is Disregarded and the Citizenship and Adverse Interests of the Partners Are Considered for Purposes of Diversity; the General Partner is Naturally Aligned with its Sole Shareholder, the Plaintiff and Should be Realigned Accordingly...................... 19

        B.    In the Alternative, an Independent Analysis Based on the Real Parties to the Controversy Calls for Disregarding the Partnership..................................... 21

    III.    Plaintiff Is Not Entitled to Attorneys' Fees and Costs.................................................24

CONCLUSION ........................................................................................................... 25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Avon Prod., Inc. v. A/J P'ship*,
No. 89 CIV. 3743 (PNL), 1990 WL 422416 (S.D.N.Y. Mar. 1, 1990) ..................................20

*Bayerische Landesbank, New York Branch v. Aladdin Capital Mgmt. LLC*,
692 F.3d 42 (2d Cir. 2012)...............................................................................................20

*Broder v. Cablevision Sys. Corp.*,
418 F.3d 187 (2d Cir. 2005)...............................................................................................17

*Brown v. Progressive Cas. Ins. Co.*,
No. 18CV03753ARRSJB, 2018 WL 4404071 (E.D.N.Y. Sept. 17, 2018) ............................24

*Carden v. Arkoma Assocs.*,
494 U.S. 185 (1990)...........................................................................................18, 19, 20

*Caterpillar Inc. v. Williams*,
482 U.S. 386 (1987)...............................................................................................16

*City of Indianapolis v. Chase Nat. Bank of City of New York*,
314 U.S. 63 (1941)...............................................................................................20

*CWCapital Cobalt VR Ltd. v. CWCapital Invs. LLC*,
2018 U.S. Dist. LEXIS 90174 (S.D.N.Y. May 23, 2018)..............................................15, 17

*Empire Healthchoice Assurance, Inc. v. McVeigh*,
547 U.S. 677 (2006)...............................................................................................15

*Franchise Tax Bd. v. Constr. Laborers Vacation Trust*,
463 U.S. 1 (1983)...............................................................................................16

*Garbers-Adams v. Adams*,
2010 WL 2710622 (S.D. N.Y. 2010)..............................................................................20

*Grable & Sons Metal Products v. Darue Eng'g & Mfg.*,
548 U.S. 308 (2005)...............................................................................................8, 12, 13

*Great S. Fire Proof Hotel Co. v. Jones*,
177 U.S. 449 (1900)...............................................................................................19

*Gunn v. Minton*,
568 U.S. 251 (2013)...............................................................................................14

*Homeowner's Rehab, Inc. v. Related Corp. V SLP, L.P.*,
  479 Mass. 741 (2018) ...................................................................................10, 11

*New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*,
  824 F.3d 308 (2d Cir. 2016)....................................................................................12

*K & D Equity Investments, Inc. v. Cannex Therapeutics*,
  2009 WL 5173710 (E.D. Tex. 2009) .......................................................................22

*Lewis v. Clarke*,
  137 S. Ct. 1285 (2017)..............................................................................................18

*Lewis v. Odell*,
  503 F.2d 445 (2d Cir. 1974).....................................................................................20

*Lincoln Prop. Co. v. Roche*,
  546 U.S. 81 (2005)..............................................................................................19, 21

*Marsala v. Target Stores*,
  2013 WL 6628298 (E.D.N.Y. 2013).........................................................................22

*Martin v. Franklin Capital Corp.*,
  546 U.S. 132 (2005)..................................................................................................24

*Maryland Cas. Co. v. W.R. Grace and Co.*,
  23 F.3d 617 (2d Cir. 1993)........................................................................................20

*Merrell Dow Pharmaceuticals Inc. v. Thompson*,
  478 U.S. 804 (1986)............................................................................................13, 14

*Navarro Sav. Ass'n v. Lee*,
  446 U.S. 458 (1980)..................................................................................................18

*Pampillonia v. RJR Nabisco, Inc.*,
  138 F.3d 459 (2d Cir. 1998)......................................................................................18

*Phillips Petroleum Co. v. Texaco, Inc.*,
  415 U.S. 125 (1974)..................................................................................................16

*Senior Housing Assistance Grp. v. Amtax Holding*,
  No. C17-1115RSM, 2019 WL 687837 (W.D. Wash. Feb. 21, 2019)......................11

*Shaw v. Delta Air Lines, Inc.*,
  463 U.S. 85 (1983)......................................................................................................9

*Shorraw v. Bell*,
  No. 4:13–01992, 2014 WL 692752 (D.S.C. Feb. 21, 2014)....................................21

*Sovereign Bank v. RCI Plumbing Corp.*,
    No. 11-CV-00941 FB MDG, 2012 WL 3027539 (E.D.N.Y. July 24, 2012)..........................24

*Stoneybrook Tenants Ass'n, Inc. v. Alpert*,
    194 F. Supp. 552 (D. Conn.1961) .................................................................................22, 23

*Strotek Corp. v. Air Transp. Ass'n of Am.*,
    300 F.3d 1129 (9th Cir. 2002) ...............................................................................................18

*Varga v. McGraw Hill Fin., Inc.*,
    36 F. Supp. 3d 377 (S.D.N.Y. 2014)................................................................................15, 16

*Veneruso v. Mt. Vernon Neighborhood Health Ctr.*,
    933 F. Supp. 2d 613 (S.D.N.Y. 2013), *aff'd*, 586 Fed. Appx. 604 (2d Cir. 2014) .................16

**Statutes**

26 U.S.C. § 42 ........................................................................................................... *passim*

28 U.S.C. § 1331 ................................................................................................................8

28 U.S.C. § 1340 ...............................................................................................12, 13, 14

28 U.S.C. § 1447 ..............................................................................................................24

28 U.S.C. §§ 2201 *et seq.* .................................................................................................9

**Other Authorities**

6A Fed. Prac. & Proc. Civ. § 1556 (3d ed.)....................................................................23

Fed. R. Civ. P. 12(b)(6).......................................................................................................2

## PRELIMINARY STATEMENT

SunAmerica Housing Fund No. 682, a Nevada limited partnership, ("SHF 682") and SLP Housing I, LLC, a Nevada limited liability company, (the "SLP" and collectively, "Defendants") respectfully submit this memorandum of law in response to the Motion to Remand of Plaintiff Riseboro Community Partnership Inc. ("Riseboro" or "Plaintiff").

This controversy arises in connection with a conditional right of first refusal allowed under Section 42 of the Internal Revenue Code, 26 U.S.C. § 42. The right of first refusal is set forth in the limited partnership agreement of 420 Stockholm Street Associates L.P., a New York limited partnership (the "Partnership"). The Partnership is named in this action as a defendant, but it has not appeared or responded to the complaint. The General Partner of the Partnership is 420 Stockholm Corp., a New York corporation, and the limited partners are the Defendants. The Partnership was formed in order to own and operate a multifamily apartment complex as low-income, affordable housing in Brooklyn under the federal Low Income Housing Tax Credit ("LIHTC") program, codified as Section 42 of the Internal Revenue Code. The Plaintiff, Riseboro, is not a party to the Partnership Agreement. Nonetheless, Riseboro asserts that the right of first refusal in the Partnership Agreement creates a "special" right under *federal law*, namely Section 42(i)(7), that *displaces the requirements of New York's state common law* and requests that this Court determine that the Section 42(i)(7) right of first refusal is a "special" right granted under federal law such that Riseboro can dispense with the requirements of state law in exercising the right.

The four corners of the Complaint, irrespective of any defenses the Defendants might raise, squarely present a necessary, disputed, and substantial federal question about the correct

construction of Section 42(i)(7) of the Internal Revenue Code and Congressional intent.[1]  Riseboro all but admits it cannot succeed on its claims *unless* its proposed construction of Section 42(i)(7) and its interpretation of Congressional intent, when enacting that federal legislation, displaces and supplants New York common law on rights of first refusal.  The federal question is purely a legal one, and its resolution by a federal court will help resolve controversies that are otherwise likely to recur in similar situations under the LIHTC program nationwide.  A decision by the Supreme Court of Massachusetts resolved a similar dispute by expressly construing provisions of Section 42, inferring conclusions from the overall LIHTC program, and interpreting Congressional intent. If the issue is left to the states, other state courts may well reach conflicting interpretations of the federal law and Congressional intent.  The present dispute, which squarely and directly presents a pure question of construction and implementation of an important federal tax law, is precisely the type of controversy that "arises under" federal law and should be heard in a federal forum.

Federal jurisdiction also exists because there is complete diversity between the adverse, real parties to the controversy.   Contrary to Plaintiff's assertion, Defendants' removal is not made on the basis of an alleged fraudulent joinder, which applies when a plaintiff joins a party only with the express purpose of defeating diversity.  Rather, the removal is based on the doctrine that the diversity jurisdiction of the federal courts depends on the "real parties to the controversy," rather than nominal or formal parties, such as the Partnership, without juridical personality.  Under that doctrine, there is complete diversity.  Pursuant to well-settled precedent, courts look to the

---

[1] For the purpose of this opposition only, Defendants rely upon the allegations contained in the Complaint, assuming, pursuant to the well-pleaded complaint rule, that Plaintiff may plead a claim for relief based on its construction of Section 42 of the Internal Revenue Code.  Defendants, however, dispute, pursuant to Fed. R. Civ. P. 12(b)(6), that Plaintiff may state any claim for relief by relying on federal law to displace New York common law about a "right of first refusal."

partners, not where the partnership conducts business, to determine the real parties to the controversy, and then to their citizenship for purposes of determining diversity jurisdiction. Here, there are only three partners. The Defendants constitute the two limited partners. The General Partner was not named as a party, but it is owned by the Plaintiff and its interests are aligned with it. Therefore, the real parties to the controversy are the Plaintiff and the General Partner, on one side, who are both New York corporations with their principal place of business in New York. On the other side are the Defendants, a limited partnership and limited liability company with no partners, members or other constituents domiciled in New York.

In addition, the Court should disregard the Partnership as a formal or nominal party (as Plaintiff has asked it to do), since it has no separate or independent stake apart from the interests of its partners, which are already represented in the action through Defendants and Plaintiff. Accordingly, there is complete diversity between the adverse, real parties to the controversy and federal jurisdiction exists on the basis of diversity of citizenship.

## BACKGROUND

The Complaint alleges claims for breach of contract and declaratory relief. In asserting these claims, Plaintiff frames the chief disagreement as the correct construction and application of an important right granted under Section 42(i)(7) of the Internal Revenue Code – importantly, a law enacted by an Act of Congress that provides for federal internal revenue. The Complaint commences by alleging that this action concerns a "35-unit low income housing development" developed with the benefit of "Low-Income Housing Tax Credits ('LIHTC')" pursuant to 26 U.S.C. § 42 (i.e. the Internal Revenue Code). Compl. ¶ 1. Plaintiff emphatically alleges that Defendants' conduct *violates federal law* because Defendants' actions are "at direct odds with Section 42's intent for perpetual not-for profit ownership." *Id*.

The Complaint also evidences the importance of Section 42 to Plaintiff's claims by describing the federal statute and the LIHTC program at length.  According to Plaintiff, the "LIHTC provision of the Internal Revenue Code, Section 42 is a program that leverages private sector [] investment, to develop and perpetuate low-income housing."  Compl. ¶ 14.  Plaintiff explains that "Section 42 creates federally allocated tax credits administered by state housing finance agencies . . . [which credits are awarded] to real estate developers in exchange for the developers' creation of low-income housing."  Compl. ¶ 15.  Further, Plaintiff alleges that "only tax payers with tax liabilities can make use of the tax credits" and as such, "developers transfer the credits to large financial institutions with significant federal tax liabilities."  Compl. ¶ 16.

According to Plaintiff, the federal LIHTC program incentivizes such large financial institutions, through an "Investor Partner" to "enter into a partnership that will own the project."  Compl. ¶ 17.  Plaintiff explains that in a typical investment under the federal LIHTC program, the Investor Partner receives 99% of the tax credits, taken over ten years, in exchange for a series of capital contributions to develop, operate and maintain the project.  Compl. ¶ 18.  Such tax credits may offset tax liabilities over ten to fifteen years so long as the project continues to comply with affordability restrictions during those years to avoid tax-credit recapture.  Compl. ¶ 19.

Critically, Plaintiff construes Section 42 in a manner that "contemplates and incentivizes a not-for-profit organization's purchase of the LIHTC project for a statutorily prescribed below market price, in Section 42(i)(7) (the Section 42 ROFR)."  *Id.*  Plaintiff then quotes certain "pertinent" terms of Section 42:

> (A)No Federal income tax benefit shall fail to be allowable to the taxpayer with respect to any qualified low-income building merely by reason of a right of 1st refusal held by the tenants (in cooperative form or otherwise) or resident management corporation of such building or by a qualified nonprofit organization (as defined in

> subsection (h)(5)(C) or government agency to purchase the property after the close of the compliance period for a price which is not less than the minimum purchase price determined under subparagraph (B).
>
> (B) Minimum purchase price. For purposes of subparagraph (A), the minimum purchase price under this subparagraph is an amount equal to the sum of—
>
> a. the principal amount of outstanding indebtedness secured by the building (other than indebtedness incurred within the 5-year period ending on the date of the sale to the tenants), and
>
> b. all Federal, State, and local taxes attributable to such sale.
>
> Except in the case of Federal income taxes, there shall not be taken into account under clause (ii) any additional tax attributable to the application of clause (ii)."

Compl. ¶ 20.[2]

Only after discussing Section 42 and the federal LIHTC program in detail, and then section 42(i)(7) specifically, does Plaintiff turn its attention to any contractual terms.  Plaintiff then alleges that a special purpose entity, 420 Stockholm Housing Development Fund Company Inc. (the "HDFC") entered into an agreement of limited partnership with SHF 682 and the SLP. Compl. ¶ 21, 22.  As Plaintiff alleges, the Partnership Agreement provides that SHF 682 provided funds to the HDFC for acquisition of land from Riseboro, and the parties then entered into an Amended and Restated Agreement of Limited Partnership, *i.e.* the Partnership Agreement, for an investment within all the terms and restrictions of Section 42 of the Internal Revenue Code. Compl. ¶ 24.  Subsequently, 420 Stockholm Corp., a non-profit entity "whose sole shareholder is Riseboro," replaced the HDFC as General Partner of the Partnership. Compl. ¶ 26

---

[2] A right of first refusal granted pursuant to Section 42(i)(7) is commonly referred to as the "debt plus taxes ROFR".

Plaintiff's reliance on the Partnership Agreement appears limited to the grant of a right of first refusal and its incorporation of and reference to the terms and restrictions of Section 42. The Complaint provides that the Partnership Agreement grants a Section 42 right of first refusal to Plaintiff's predecessor, which right Plaintiff now has a right to exercise. Compl. ¶ 29. Plaintiff alleges that it attempted to exercise the right of first refusal, in effect, as an option, without any *bona fide* third-party offer to preempt, and that its purported unilateral exercise was rejected by Defendants. Compl. ¶¶ 30-35. Plaintiff thus contends that Section 42(i)(7) grants it an option, and not a right of first refusal, despite the plain language of that federal statute only allowing a "right of first refusal" in LIHTC deals.

Key to Plaintiff's claims is its contention that "Defendants' ownership of the Apartment Complex [has] remained a mere nominal appendage of the *LIHTC structure* which cannot be viewed in isolation, but must instead be construed together with, *inter alia*, the purpose of the Partnership: *generating LIHTC tax credits* and ensuring that the Apartment Complex remains affordable via not-for-profit ownership at the expiration of the Compliance Period." Compl. ¶ 35 (emphasis added).[3] Plaintiff's contention is not based on specific words of the Partnership Agreement. Rather, Plaintiff contends that its right of first refusal "***cannot be interpreted purely under New York common law, but must be interpreted to be consistent with the statutory scheme of Section 42*** as mandated by the Restated [i.e. Partnership] Agreement." Compl. ¶ 49 (emphasis added).

Plaintiff's allegations, in effect, concede that New York state common law alone does not

---

[3] Plaintiff ignores the other parties eligible to benefit from the allowance of such a right of first refusal under Section 42(i)(7), including government agencies, resident management corporations, and tenants, in attempting to single itself out for this special benefit.

support the relief Plaintiff seeks.  Instead, Plaintiff relies chiefly on *federal law* to allege a violation

by Defendants and a right of relief.  According to Plaintiff, a right of first refusal under Section 42

"***is unlike a common law [right of first refusal]*** – a preemptive right – as it entitles Riseboro to

purchase the Apartment Complex from the owner at a specific price and can be exercised

unilaterally."  Compl. ¶ 50.  In other words, Plaintiff contends that a statutorily defined purchase

price under Section 42(i)(7) (*i.e.* the debt plus taxes ROFR) converts a "right of first refusal" into

an "option" agreement, and as a result, it can ignore the requirements of state law in seeking to

trigger and enforce the right.  To support its position, Plaintiff alleges the New York state common

law requirement of a *bone fide* third-party offer, which is necessary to exercise a right of first

refusal, "is inconsistent with the statutory scheme of Section 42 because a Section 42 [right of first

refusal] permits a not-for-profit organization to purchase a project at a below-market price (the

minimum purchase price), even if it is lower than the price offered by a third-party . . . ."  Compl.

¶ 52.  Based on these allegations, Plaintiff seeks a declaration *construing and interpreting federal

law* as contained in Section 42, and *rejecting* state law in order to support its claims.

      As provided in the Notice of Removal, ECF Doc. No. 1, ("Removal Notice"), Defendants

were served on November 20, 2018 and filed their notice of Removal within thirty days, on

December 20, 2018.  Defendants removed on the basis of federal question jurisdiction because the

Complaint raises a necessary, disputed, and substantial question of federal law that is suitable for

adjudication in a federal forum, and on the basis of the complete diversity between the adverse,

real parties to the controversy.

      Plaintiff is a New York corporation with a New York principal place of business.

Defendant SHF 682 is a Nevada limited partnership, none of whose partners is a citizen of or

domiciled in New York.  Removal Notice ¶¶ 25, (a).  None of the members of the limited liability

companies that are partners in SHF 682 are citizens of, or domiciled in New York either.  Removal Notice ¶¶ 26, (a) – (g).  Defendant SLP is a Nevada limited liability company, whose sole member is a California corporation with its principal place of business in Los Angeles.  Removal Notice ¶ 26.  In turn, the Partnership is identified solely as a "nominal party" in the Complaint.  Compl. ¶ 7.  420 Stockholm Corporation, which is a New York corporation aligned with Plaintiff, is the sole General Partner and is not a party.  Compl. ¶ 26.

## ARGUMENT

### I.      Plaintiff's Pleading Raises a Substantial Federal Question on Its Face

Plaintiff's Complaint raises a substantial and disputed issue of federal law on its face that must necessarily be decided for Plaintiff to state a claim for relief.  Federal question jurisdiction under 28 U.S.C. § 1331 exists, even when a cause of action is stated under state law, when an embedded federal question is (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state judicial balance approved by Congress.  *Grable & Sons Metal Products v. Darue Eng'g & Mfg.*, 548 U.S. 308, 314 (2005).  Here, all elements of the test confirm that federal jurisdiction exists to resolve the parties' dispute concerning the construction and application of Section 42, and particularly Section 42(i)(7).

### A.      Plaintiff's Own Allegations Raise a Substantial Issue of Federal Tax Law at the Heart of the LIHTC Program, Which Issue Is Properly Resolved by a Federal Court

As the Complaint acknowledges, Plaintiff's claims for relief require ignoring or displacing New York state common law on a "right of first refusal."  For this purpose, the Complaint seeks a declaration from this Court that definitively construes Section 42 of the Internal Revenue Code.  Specifically, in the second cause of action, Plaintiff asserts that its right of first refusal "cannot be interpreted merely under New York common law, but must be interpreted consistent with the

statutory scheme of Section 42," that it "is *unlike* a common law [right of first refusal]," and that Section 42 "neither includes nor implies a *bona fide* third-party offer as a condition precedent . . . ." (emphasis supplied)  Compl. ¶¶ 49-50, 52.  It is unclear whether Plaintiff contends that Section 42 authorizes a federal common law definition of a "right of first refusal" to displace state common law.  It is clear, at a minimum, that Plaintiff asserts that Section 42 is inconsistent with New York common law on the subject, such as to require a different result.  Plaintiff's reliance on the construction of federal law, pursuant to Section 42, in a manner that displaces New York state common law, is apparent, and it is essential for Plaintiff's claims.

### 1.   *The Construction of Section 42 Is Necessarily Raised and Disputed*

The parties' controversy about their respective rights, arising from their disputed construction of a *federal statute*, could have been the basis of a claim for a declaration pursuant to 28 U.S.C. §§ 2201–02.  Federal jurisdiction is unquestionably proper in such circumstances, since the federal courts have jurisdiction to issue a declaration regarding the correct construction of a federal statute, including whether it preempts or displaces any contrary state law.  *See Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85 (1983) (affirming federal question jurisdiction for an action seeking declaratory and injunctive relief to bar application of state regulation on the basis of preemption due to a federal statute).  The significance of the parties' purely legal dispute about the proper construction of Section 42 demonstrates that the federal question is necessarily raised and disputed.

In addition, the Complaint, in effect, alleges that Defendants' conduct violates Plaintiff's rights under federal law, as embodied in Section 42.  Plaintiff alleges that Defendants have "maintain[ed] an interest in the Apartment Complex, long after they reaped the benefit of its Low-Income Housing Tax Credits [] and long after 26 U.S.C. § 42 contemplated their exit," all in

violation of Plaintiff's rights or interest.  Compl. ¶ 1.  According to Plaintiff, Defendants' conduct is "at direct odds with Section 42's intent for perpetual not-for-profit ownership."  *Id.*  Plaintiff also alleges that Defendants' continued interest in the property is "a mere nominal appendage of the LIHTC structure which cannot be viewed in isolation" but must be viewed in the context of the purpose of the LIHTC program.  Compl. ¶ 35.  The alleged violation of a federal right, whose existence is controverted, raises a necessary and disputed federal question.

2.       *The Construction of Section 42 Is a Substantial Federal Question*

The necessary, disputed, and substantial nature of the federal question presented is demonstrated by the analysis and the result reached in *Homeowner's Rehab, Inc. v. Related Corp. V SLP, L.P.,* 479 Mass. 741 (2018).  The Massachusetts Supreme Court departed significantly from its own *state* common law on the basis of its construction of *federal law*, including its view of the intent and structure created by Section 42.  The *Homeowner's Rehab* court believed "the right of first refusal in this case is *not purely a creation of the common law* but . . . was granted 'in accordance with § 42(i)(7) of the Internal Revenue Code,' and must be understood in the context of agreements designed to secure tax credits under the LIHTC program."  479 Mass. at 753.  The court then proceeded to construe federal law as displacing each of the following Massachusetts state-law requirements for a right of first refusal:  first, the need for a third-party *bona-fide* offer to purchase the property (which was deemed to contravene the purpose of Section 42), *id.* at 757-58; and, second, the requirement of a "willing seller," as the Massachusetts court deemed it sufficient that the non-profit general partner, over the objection of a special limited partner, intended to accept a third-party offer to trigger the right of first refusal, *id.* at 759.  All of this was buttressed on the Massachusetts court's interpretation, whether correct or incorrect, of Section 42(i)(7) and the LIHTC program generally.

As in *Homewner's Rehab*, the Plaintiff here concedes its claim to purchase the property fails under long-standing state-law with respect to rights of first refusal.  Plaintiff's theory requires a construction of Section 42 that simply disregards certain fundamental principles of New York state law – in effect arguing that Section 42 of the Internal Revenue Code trumps state law on the topic. That being the gravamen of Plaintiff's complaint, and Plaintiff seeking shelter in a federal statute, it is entirely appropriate that a federal court decide the issue.  Defendants, of course, dispute Plaintiff's construction of Section 42 on the basis of the plain meaning of the statute, long standing requirements of New York state law (which have not been satisfied by Plaintiff) and the intent of the United States Congress, which *declined* to adopt statutory language that would have permitted an option in LIHTC deals instead of the conditional, pre-emptive "right of 1st refusal" language it did enact.  The parties' dispute therefore *revolves around* the construction of a federal statute within the context of the LIHTC program created by Congress.

As the parties' controversy arises chiefly from their differing constructions of a federal statute, the question is almost purely a legal question.  The correct construction of Section 42 is very substantial and has national scope, given that a decision is likely to impact thousands of investments in which a right of first refusal is granted to a non-profit entity within the confines of the LIHTC program and related Internal Revenue Service guidelines.  Besides the *Homeowner's Rehab* decision, other cases are now pending within the United States.  For example, the U.S. District Court for the Western District of Washington reached a very different result from the Massachusetts Supreme Court, declining to find that Section 42 created a federal common law definition of a "right of first refusal" that could displace the state common law or the ordinary meaning of the term developed over the years.  *See Senior Housing Assistance Grp. v. Amtax Holding*, No. C17-1115RSM, 2019 WL 687837 (W.D. Wash. Feb. 21, 2019).  The construction of

Section 42 of the Internal Revenue Code in connection with a "right of first refusal" is properly and most efficiently determined by a federal court.

This Court's exercise of jurisdiction over this matter is consistent with other cases in which the parties have a disputed construction of federal tax law. It is significant that 28 U.S.C. § 1340 specifically provides for federal jurisdiction for "any civil action arising under any Act of Congress providing for internal revenue . . . ." Section 42 is part of an Act of Congress providing for internal revenue, and the proper construction and application of the statute is at the heart of the parties' dispute.

Like here, *Grable*, 548 U.S. 308, involved an interpretation of the Internal Revenue Code. Although the face of the *Grable* complaint raised only a state-law quiet title claim, it arose after an IRS property sale to collect on a tax delinquency and the quiet title claim required application and interpretation of federal law related to the IRS property sale. The U.S. Supreme Court found that "*the national interest in providing a federal forum for federal tax litigation* is sufficiently substantial…" to justify an exercise of federal jurisdiction. 545 U.S. at 310 (emphasis added).

Similarly, the Second Circuit upheld federal question jurisdiction in a matter presenting state-law claims under the New York False Claims Act because the claims alleged violations of federal tax provisions. *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308 (2d Cir. 2016). The alleged violations related to securitized residential mortgages subject to a federal tax exemption (a REMIC). The Second Circuit viewed the REMIC as "a creature of federal law that accords favorable tax treatment to investments in mortgaged backed securities…" and that an "important purpose of the REMIC legislation was to provide clear rules…" *Id.* at 317. The Court noted that the statute, regulations, and regulatory guidance all governed an important "trillion-dollar national market in mortgage-backed securities." *Id.* at 318. It also did not appear

that state courts were a traditional or preferred forum for litigating such questions of federal tax treatment and false tax filings.

Both the *Grable* and *Jacobson* decisions are instructive. At the heart of the parties' dispute here is a controversy involving a federal tax statute, which is part of an important national federal program implemented by Congress, the LIHTC program, involving hundreds of millions of investment dollars nationwide each year, designed and intended to promote private-sector investments in low-income housing. It is in the interest of such a national, federal program to have clear rules and construction consistent with other federal law and Congressional intent. Therefore, there is a very substantial interest in having this dispute heard in a federal forum.

### 3. *The Construction of Section 42 in a Federal Forum Will Not Disrupt the Federal-State Judicial Balance*

The Congressional intent apparent in 28 U.S.C. § 1340, to provide a federal forum to resolve questions of federal tax law, also answers the final inquiry required under the *Grable* test. The results of *Grable* and *Jacobson*, which involved federal tax statutes, demonstrate that federal jurisdiction in this case will not disrupt the federal-state judicial balance. The U.S. Supreme Court has indicated that the last inquiry of the *Grable* test should be guided by a balancing test, according to the following issues: (i) "sensitive judgments about congressional intent" (such as the federal interest in providing a federal forum for federal tax issues); (ii) any impact on the volume of federal court litigation if jurisdiction is accepted; (iii) the possibility of causing a significant shift of what were traditionally state cases into federal cases; and (iv) litigants' interest in a federal forum. *Grable*, 548 U.S. at 317-19; *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 812 n. 9, 814 n. 12 (1986).

Here, Section 42 enacted important law that formed the basis of the national LIHTC program. While, as Plaintiff notes, various aspects of the program are implemented or overseen

through state agencies, Congress had a specific intent of creating a *federal tax* credit program with a national scope, that could promote private sector investments in low income housing at the federal level. As with other laws involving federal tax revenue, 28 U.S.C. § 1340 plainly indicates that Congress intended disputes involving a federal tax statute to be heard in the federal courts.

The other factors of the balancing test also indicate this is a unique issue of statutory construction under one specific part of Section 42. Indeed, Plaintiff characterizes this specific grant as different from traditional, state-law based rights of first refusal. Thus, what is at issue here is a specific, limited federal issue – not an issue that will transform state court litigation on traditional real property rights of first refusal into federal litigation. The nature of the issue here is not likely to change the state-law nature of common contractual disputes or state law interpretation of non-Section 42(i)(7) rights of first refusal. The present controversy is very different from situations where the federal courts have expressed concern about accepting traditional state-law cases. For example, in *Merrell Dow*, the Supreme Court was concerned that the application of any federal standard of conduct (through a misbranding statute) would convert many tort and product liability claims into federal cases, since federal regulations often define a standard of conduct for manufacturers. 478 U.S. at 814-17. Likewise, in *Gunn v. Minton*, 568 U.S. 251 (2013), the Supreme Court was concerned that legal malpractice cases could be turned into federal actions whenever an attorney's application of federal law could raise a question about a hypotetically different result, if the attorney's conduct had been different. *Id.* at 262-64; *see also id.* at 264 (noting that states "have "a special responsibility for maintaining standards among members of the licensed professions" including attorneys).

Here, Plaintiff has not raised any concern of a similar scope. Plaintiff has asserted and alleged that the right of first refusal allowed under Section 42(i)(7) is *different* from a common

law right of first refusal, under state law, and the parties dispute the construction of Section 42(i)(7) in this regard.  Thus, there will not be a rush of cases involving traditional, non-Section 42(i)(7) rights of first refusal into federal courts.

In sum, a unique and purely legal question about the construction of Section 42(i)(7) is at the heart of Plaintiff's claims.  This Court necessarily has jurisdiction to resolve such a purely legal question about the meaning and intent of a federal statute involving federal internal revenue.

B.    Plaintiff's Objection to Jurisdiction Ignores Plaintiff's Essential Reliance
      on a Contested Interpretation of a Federal Statute

Most of the cases upon which Plaintiff relies, in fact, emphasize why federal question jurisdiction is proper in this case.  Much as in *Jacobson*, the chief dispute between the parties is interpretation of Section 42, a federal tax statute.  As the Second Circuit observed, "[t]here can be no doubt that the 'actually disputed' factor of the test is satisfied when the federal issue is 'the only' or 'the central' point in dispute." 824 F.3d at 216.  Moreover, the parties' dispute focuses on the *construction* of a federal tax statute – *i.e.* whether it displaces state-law requirements for a right of first refusal.  This circumstance demonstrates that the federal issue is substantial.  *CWCapital Cobalt VR Ltd. v. CWCapital Invs. LLC*, 2018 U.S. Dist. LEXIS 90174, at *14 (S.D.N.Y. May 23, 2018) (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 700 (2006).

Plaintiff's reliance on cases such as *Varga v. McGraw Hill Fin., Inc.*, 36 F. Supp. 3d 377, 382 (S.D.N.Y. 2014) is misplaced.  In *Varga*, plaintiffs asserted various New York common law fraud claims against certain credit rating agencies.  The defendants contended that they were subject to the federal Credit Rating Agency Reform Act of 2005, which explained the conduct, or that the complaint implicated standards of federal conduct.  The *Varga* court noted that the plaintiffs did not allege any violations of federal law and the claims were premised on state standards of conduct that exist *independent* of federal law.  In this case, by contrast, Plaintiff's

- 15 -

Complaint *quotes and relies on* Section 42 extensively and proposes an interpretation of the federal law – one that Plaintiff contends overrides state law requirements – to support its claims. Plaintiff's very claims depend on construction of federal law.

Plaintiff also misplaces its reliance on *Veneruso v. Mt. Vernon Neighborhood Health Ctr.*, 933 F. Supp. 2d 613 (S.D.N.Y. 2013), *aff'd*, 586 Fed. Appx. 604 (2d Cir. 2014), *Phillips Petroleum Co. v. Texaco, Inc.,* 415 U.S. 125, 129 (1974), and *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398 (1987).  Critically, the *Veranuso* complaint did not reference or disclose *any* federal law or statute, unlike here.  Moreover, each of the federal issues presented was in the nature of defenses, rather than addressing any elements of a claim for relief.  *Id.* at 625.  Similarly, the *Phillips Petroleum* case involved claims for *quantum meruit*; the allegations based on a federal statute simply anticipated a *defense*, intending "only [to] preclude the interposition of a plea of payment to defeat a quasi-contractual suit for the value of the helium."   415 U.S. at 128.  The *Caterpillar* complaint raised claims of breach of an individual employment agreement that was entered into as a collective-bargaining agreement.  The alleged breach did not require any interpretation of federal law and it was only the defendant's defenses (such as preemption) that raised a federal issue. *Caterpillar*, 482 U.S. at 396-98.  Each of the *Veneruso*, *Phillips Petroleum*, *Caterpillar* and *Varga* decisions are various forms of the well-pleaded complaint rule.  Under that rule, a disputed federal issue supports federal jurisdiction only if it addresses an *element* of proof of the plaintiff's claims, and not when the disputed issue addresses merely a defense. *See also Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1 (1983) (holding that a federal issue that establishes a defense to a claim for damages or equitable relief, even when stated as part of a claim for a declaration, does not generally support federal jurisdiction).

Here, Plaintiff asserts that Section 42 displaces state common law requirements concerning a right of first refusal; defendants contend it does not.  That issue is a question of law, and one that is presented squarely, and repeatedly, by the allegations in the Complaint, rather than merely in a defense or anticipation of a defense, unlike the cases upon which Plaintiff relies.  *See, e.g.,* Compl. ¶¶ 1, 14, 17, 19-21, 49, 50, 52.  As discussed above, Plaintiff's second cause of action seeks a declaration that definitively construes Section 42 in the manner Plaintiff proposes.  In effect, Plaintiff seeks an interpretation of Section 42 that would allow a "right of first refusal" to be exercised like an "option."  Plaintiff's proposed interpretation inevitably raises other possible consequences under existing federal tax law.  The Internal Revenue Service, under guidance related to the "economic substance" of a transaction, can deem the holder of a below market "option" the actual owner of a property for tax purposes.  Doing so here would destroy the entire structure of this LIHTC deal and disrupt the benefits of the federal tax credits to the investor in the deals.  Plaintiff's proposed interpretation thus raises various issues of *federal* concern about the federal tax system, the LIHTC program, and Congressional intent.

Finally, this is not a case where merely a *factual dispute* between the parties would result in a different application of federal law.  That was the situation presented in *CWCapital*, where the parties disputed whether the merger at issue "effected a change of control" such as to fall within an exception to a federal statutory definition of "assignment."  2018 U.S. Dist. LEXIS 90174, at *9-*10.  Rather, more like the dispute in *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187 (2d Cir. 2005), the contractual nature of Plaintiff's claims only masks the central issue of Section 42 to the dispute.  Plaintiff's claims rise or fall on Plaintiff's proposed construction of federal law because Plaintiff acknowledges it has not complied with New York state law requirements in seeking to effectuate the right of first refusal.

In sum, Plaintiffs' claims are squarely within this Court's federal question jurisdiction. Plaintiff cannot succeed in obtaining the pleaded relief, enforcing a right of first refusal, *unless* it succeeds under its proposed interpretation of Section 42.  Therefore, the disputed interpretation of Section 42 addresses an essential element of Plaintiff's alleged claims, and federal question jurisdiction is appropriate.

## II.   There Is Complete Diversity Between the Real Parties in Interest

Plaintiff misdirects this Court's attention concerning the basis for diversity in this case. Defendants did *not* remove on the basis that any party has been "fraudulently joined".[4]  Thus, all the cases Plaintiff cites concerning that doctrine are irrelevant.   Instead, Defendants rely on alternative, independent grounds provided by the "real-party-to-the-controversy" doctrine.   The U.S. Supreme Court holds, even absent a fraudulent joinder, that "the 'citizens' upon whose diversity a plaintiff grounds jurisdiction must be real and substantial parties to the controversy." *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460 (1980); *see also Lewis v. Clarke*, 137 S. Ct. 1285, 1294 (2017) (holding that "in assessing diversity jurisdiction, courts look to the real parties to the controversy").   Under the doctrine, courts "must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." *Navarro Sav.*, 446 U.S. at 461; *see also Strotek Corp. v. Air Transp. Ass'n of Am.*, 300 F.3d 1129, 1133 (9th Cir. 2002).

As a matter of well settled law, the doctrine is applied to disregard the citizenship of formal business associations or entities, other than corporations, such as all pass-through entities.  *Carden*

---

[4] That doctrine is applied when a plaintiff names a non-diverse defendant with a fraudulent intent to defeat diversity or when there is no possibility, based on the pleadings, that the plaintiff can state a cause of action against the non-diverse defendant.  *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459 (2d Cir. 1998).

*v. Arkoma Assocs.*, 494 U.S. 185, 193-95 (1990)[5]; *Great S. Fire Proof Hotel Co. v. Jones,* 177 U.S. 449, 457 (1900).  For such entities, the courts look behind their formal existence to the members, partners, or other owners, who are regarded as the real parties to the controversy.  Here, although the Partnership is a named defendant, the Court need not consider its domicile.

There are only three partners in the Partnership:  the General Partner, 420 Stockholm Corp., a New York corporation owned by and aligned with Plaintiff, another New York corporation; and the Defendants, neither of which has partners or members with citizenship in New York.  Thus, there is complete diversity as between the real parties to the controversy.

Alternatively, even the Plaintiff admits in its Complaint that the Partnership is a nominal defendant.  That is a separate and independent ground for disregarding its citizenship.  Thus, whether the Partnership is treated as a disregarded entity under *Carden*, or as a nominal party based on the Planitiff's own pleading, the result is the same: there is complete diversity.

    A.    <u>Pursuant to Settled Law, a Partnership Is Disregarded and the Citizenship and Adverse Interests of the Partners Are Considered for Purposes of Diversity; the General Partner is Naturally Aligned with its Sole Shareholder, the Plaintiff and Should be Realigned Accordingly</u>

Plaintiff is incorrect in asserting that the Partnership is considered to have its citizenship in New York.  The location where a partnership conducts business is not a relevant consideration for the citizenship of a partnership.[6]   Under the real-party-to-the-controversy doctrine applied to

---

[5] While the majority and dissent in *Carden* disagreed about an approach premised on "control," all Justices agreed that the analysis of the "real parties to the controversy" was applied in at least some of the Supreme Court's decisions involving business associations. *See id.* at 193-94; *id*. at 200-206 (O'Connor, J., dissent).

[6] The U.S. Supreme Court has observed that the Court's "prior decisions do not regard as relevant to subject-matter jurisdiction the locations at which partnerships conduct business." *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 84 n.1 (2005).

business entities other than corporations, the Partnership is deemed not to be the real party (or real "citizen") to the controversy. Instead, this Court should look to the citizenship of its partners. *See Carden*, 494 U.S. at 189, 193-95; *Bayerische Landesbank, New York Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012). Further, the Court is not bound by a plaintiff's alignment of the parties and may re-align them based on their real interests in the controversy. *City of Indianapolis v. Chase Nat. Bank of City of New York*, 314 U.S. 63 (1941). Here, once the Partnership is disregarded as a defendant, the Court should realign the General Partner with its sole shareholder, the Plaintiff, resulting in complete diversity.

In the Second Circuit, the parties are aligned according to the "collision of interests" test. *Maryland Cas. Co. v. W.R. Grace and Co*., 23 F.3d 617 (2d Cir. 1993); *Garbers-Adams v. Adams*, 2010 WL 2710622, *2 (S.D. N.Y. 2010). Under this test, an alignment is proper if there exists an actual, substantial controversy or a collision of interests between the parties on each side of the controversy. *Indianapolis*, 314 U.S. at 71. The proper alignment between diverse parties hinges on issues that divide the parties, rather than those on which they agree. *Maryland Cas.*, 23 F.3d at 623.

Under this doctrine, where a named defendant retains neutrality in response to a plaintiff's complaint and has no reason to oppose the suit, realignment is proper. *Lewis v. Odell*, 503 F.2d 445 (2d Cir. 1974). The Southern District of New York has also held that where a particular party is a "natural ally" of the plaintiff and has more interests in common with the plaintiff, realignment is proper. *Avon Prod., Inc. v. A/J P'ship*, No. 89 CIV. 3743 (PNL), 1990 WL 422416, at *2 (S.D.N.Y. Mar. 1, 1990).

Considering these doctrines together, the citizenship and principal place of business of the Partnership is disregarded, and the Court should proceed to consider the real interests of the

partners, namely Defendants SHF 682 and SLP, and the General Partner, non-party 420 Stockholm Corp., whose sole shareholder is Plaintiff.  Compl. ¶ 26.  In applying the collision-of-interests test, it is clear that the controversy and collision of interests among all these parties is between the Defendants SHF 682 and SLP, on the one hand, and Plaintiff and 420 Stockholm Corp. on the other.  First, Plaintiff's sole ownership and control of 420 Stockholm Corp. demonstrates that they are "natural allies" in this suit and have an identity of interest.  Second, Plaintiff sued Defendants SHF 682 and SLP, but it did not sue 420 Stockholm Corp., although it is the General Partner in the Partnership.  Moreover, despite 420 Stockholm Corp.'s authority of General Partner, it. has not caused the Partnership to retain any separate counsel, nor has it caused the Partnership to oppose the Complaint.  It is apparent, therefore, that 420 Stockholm Corp.'s interest in the controversy is aligned with Plaintiff, against the position of Defendants SHF 682 and the SLP.  Therefore, there is complete diversity between the parties to the controversy.

B.     In the Alternative, an Independent Analysis Based on the Real Parties to the Controversy Calls for Disregarding the Partnership

Alternatively, this Court may also apply the general test for the real-party-to-the-controversy doctrine to reach the same result and sustain diversity jurisdiction.  This test provides that a party is not a real party to the controversy if the party is "[1] named to satisfy state pleading rules, *or* … [2] joined only as designated performer of a ministerial act, *or* [3] otherwise had no control of, impact on, or stake in the controversy." *Lincoln Prop.*, 546 U.S. at 92–93 (emphasis added) (internal citations omitted).[7]

_____

[7] Some other Circuits have further defined a standard.  In the Fourth Circuit, courts look to: (1) the level of control that the party retained over the litigation; (2) the weightiness of the party's interest in the litigation; (3) whether the party had retained counsel; and (4) whether the party had given a statement or a deposition. *Shorraw v. Bell*, No. 4:13–01992, 2014 WL 692752, *3 (D.S.C. Feb. 21, 2014).  Each of these additional factors confirms that the Partnership, as

The separate development and analysis of the real-party-to-the-controversy doctrine confirms that this doctrine is independent of "fraudulent joinder," and should not be confused with the separate requirements that exist to establish a fraudulent joinder.  For example, courts have disregarded nominal parties who have not asserted any position in the dispute, even if such parties may be necessary to effectuate a judgment.  *See, e.g., Stoneybrook Tenants Ass'n, Inc. v. Alpert*, 194 F. Supp. 552, 560 (D. Conn.1961) (disregarding citizenship of entities formed only to hold title as they were "no more than formal, nominal parties to this action and that they are neither necessary nor indispensable parties."); *K & D Equity Investments, Inc. v. Cannex Therapeutics,* 2009 WL 5173710, *3 (E.D. Tex. 2009) (disregarding citizenship of a corporation that was named "for relief purposes only"); *Marsala v. Target Stores*, 2013 WL 6628298, *2 (E.D.N.Y. 2013) (disregarding citizenship of "absentee landlord" which had no interest in repair or maintenance responsibilities in the building at issue).

Here, the Partnership may be disregarded as a nominal party under either of the first two prongs of the Supreme Court test.  First, Plaintiff agrees the Partnership is a nominal party, alleging that the Partnership is named as "a nominal defendant in that its interest will be affected by the outcome of this action," Compl. ¶ 7. Next, the Partnership – separate from the interests of the Defendants and the General Partner – may be viewed as joined only to satisfy pleading rules for necessary parties or joined to perform merely a ministerial act.  The Partnership has no independent interests or stake, separate from the partners, despite the nominal title it holds to the property.  As

---

separate from Defendants, should be treated as a nominal party in this litigation.  It has not asserted a position or any control in the litigation, its interest in the outcome is only formal through its existence as a business association, it has not retained counsel, and it is unlikely to provide any statement through any representative, given the dispute between the General Partner, on the one hand, and the Limited Partner and Special Limited Partner, on the other.

discussed above, the adverse interests are in fact between Plaintiff and the General Partner, on one side, and Defendants SHF 682 and SLP on the other.  The Partnership has not, and will likely not, assert any interest or position in this case, and it has no real stake in the outcome as an entity *per se*, separate from its partners.  As the Complaint acknowledges implicitly, while the Partnership's nominal title "will be *affected* by the outcome of this action," Compl. ¶ 7 (emphasis added), the Partnership does not have any independent stake or position as to that outcome.

The *Stoneybrook* decision is instructive.  Even though one of the defendants held title to the property in dispute, the court observed that holding "naked legal title," without asserting any position about the dispute, rendered the title-holding entity a mere nominal party.  *Stoneybrook*, 194 F. Supp. at 556-57.  It was relevant that the other parties in the case had formed and/or controlled the specially formed entity which held title.  *See also* 6A Fed. Prac. & Proc. Civ. § 1556 (3d ed.) (noting that several courts have held that "the citizenship of a person who holds a bare legal title to property that is involved in litigation and has no actual interest or control over it does not affect the court's jurisdiction when the holders of all the equitable interests in the property are represented.")

Similarly, here, the Partnership is a special purpose entity whose creation was intended to hold title to the property at issue and effectuate the joint intent of the Defendants and 420 Stockholm Corp., the latter of which is owned by Plaintiff.   The fact that the Partnership has legal title is not a reflection that, *in itself*, the entity has separate and real interests apart from the Defendants and Plaintiff. Accordingly, the Partnership, as an entity separate from its partners, is properly disregarded in the diversity analysis.

Plaintiff concedes and admits, by its silence on the topic, that the citizenship of all the members and partners of the Defendants are diverse from Plaintiff. Therefore, there is complete diversity between Plaintiff and the Defendants, who are the real parties to the controversy.

### III.    Plaintiff Is Not Entitled to Attorneys' Fees and Costs

Plaintiff makes only a cursory, one-sentence request for attorneys' fees costs incurred for its motion on the basis of an "improvident removal." (Pl. Mem. at 2.) An award of attorney's fees pursuant to 28 U.S.C. § 1447 should not be made "[a]bsent unusual circumstances . . . when the removing party has an objectively reasonable basis for removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 132 (2005). Here, Plaintiff makes no effort to show any bad faith or lack of any objectively reasonable basis for removal – nor can there be any finding of bad faith. The fact that the parties disagree as to the existence of jurisdiction is an insufficient basis to support an award of fees. *See, e.g.*, *Brown v. Progressive Cas. Ins. Co.*, No. 18CV03753ARRSJB, 2018 WL 4404071, at *4 (E.D.N.Y. Sept. 17, 2018); *Sovereign Bank v. RCI Plumbing Corp.*, No. 11-CV-00941 FB MDG, 2012 WL 3027539, at *4 (E.D.N.Y. July 24, 2012).

Defendant removed under two separate and independent grounds, each of which sufficiently establishes an independent basis for federal subject matter jurisdiction. Neither ground is contrived and each ground is well supported by the jurisprudence of federal jurisdiction developed by the U.S. Supreme Court, the Second Circuit and the U.S. District Courts. Accordingly, an award of fees is unwarranted.

/

/

/

/

## CONCLUSION

For all the foregoing reasons, Defendants SHF 682 and SLP respectfully request that the Court deny Plaintiff Riseboro's Motion to Remand in all respects, and in the event this Court grants the Motion to Remand, deny Plaintiff's perfunctory request for attorneys' fees and costs.

Dated:   March 1, 2019                     Respectfully submitted,
         New York, New York

                                           NIXON PEABODY LLP


                                           By:   *s/ Juan Luis Garcia*
                                                 Juan Luis Garcia, Esq.

                                              Tower 46
                                              55 West 46th Street
                                              New York, New York  10036-4120
                                              Tel:  (212) 940-3000
                                              Fax:  (212) 940-3111
                                              jgarcia@nixonpeabody.com

                                              and

                                              Louis E. Dolan (*Pending admission pro hac vice*)
                                              Nixon Peabody LLP
                                              799 9th Street NW Suite 500
                                              Washington, DC 20001-5327
                                              Tel: (202) 585-8818
                                              Fax: (866) 947-3670
                                              dolan@nixonpeabody.com

                                              *Attorneys for Defendants*
                                              *SunAmerica Housing Fund No. 682*
                                              *and SLP Housing I, LLC*