**GOLDSTEIN HALL PLLC**
Attorneys for Plaintiff
*Riseboro Community Partnership Inc.,*
*formerly known as Ridgewood Bushwick*
*Senior Citizens Council, Inc.*
80 Broad Street, Suite 303
New York, New York 10004
(646) 768-4127
BY:   Brian J. Markowitz (BM-9640)
        bmarkowitz@goldsteinhall.com
        Daniel Goldenberg (DG-1337)
        dgoldenberg@goldsteinhall.com

UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------------

RISEBORO COMMUNITY PARTNERSHIP INC., formerly known as RIDGEWOOD BUSHWICK SENIOR CITIZENS COUNCIL, INC.,

                                    Plaintiff,

-against-

SUNAMERICA HOUSING FUND NO. 682, SLP HOUSING I, LLC, 420 STOCKHOLM STREET ASSOCIATES L.P.,

                                    Defendants.

Docket No. 18-cv-07261 (RJD)

---------------------------------------------------------------------------

**RISEBORO COMMUNITY PARTNERSHIP INC.'S MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO REMAND TO STATE COURT**

# Contents

TABLE OF AUTHORITIES ................................................................................................... i

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ........................................................................................................................ 2

    A. Despite its attempts to the contrary, Defendants have not shown that the Complaint raises a Substantial Federal Question........................................................................................ 2

        i. No "Actually Disputed" Federal Issue is "Necessarily Raised" by Plaintiff's Causes of Action..................................................................................................................... 4

        ii. The Instant Action Does Not Present Any Substantial Federal Issues ......................... 5

        iii. The Exercise of Jurisdiction Would Disrupt the Federal-State Balance....................... 7

    B. Complete Diversity Does Not Exist in this Action and Therefore the Action Cannot Be Removed Based on Diversity............................................................................................ 8

CONCLUSION.................................................................................................................... 10

## **TABLE OF AUTHORITIES**

### **Cases**

*Grable & Sons Metal Products, Inc. v. Darue Engr. & Mfg.*,

   545 U.S. 308 (2005) ............................................................................................................. 5

*Gunn v. Minton*

   568 U.S. 251 (2013) ............................................................................................................. 6

*Homeowner's Rehab, Inc. v. Related Corp V SLP, L.P.*,

   479 Mass. 741 (2018) ............................................................................................. 3, 4, 5, 6

*Johnson v. County of Suffolk*,

   280 F. Supp. 3d 356 2017 WL 5990120 (E.D.N.Y. 2017). .............................................. 9, 10

*K & D Eq. Investments, Inc. v. Cannex Therapeutics*,

   4:09CV249, 2009 WL 5173710 (E.D. Tex. Dec. 22, 2009) .................................................. 10

*Marsala v. Target Stores*

   13-CV-5334 JS ARL, 2013 WL 6628298 (E.D.N.Y. Dec. 16, 2013) ................................... 10

*Navarro Sav. Ass'n v. Lee*,

   446 U.S. 458 (1980) ........................................................................................................... 11

*New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*,

   824 F.3d 308 (2d Cir. 2016) ................................................................................................. 9

*Pampillonia v. RJR Nabisco, Inc.*,

   138 F.3d 459 (1998), ........................................................................................................... 11

*Ryan Envtl., Inc. v. Hess Oil Co.*, Inc.,

   2010 WL 2264907 (N.D.W. Va. 2010) .............................................................................. 11

*Senior Housing Assistance Grp v. Amtax Holding*,

    No. C17-1115RSM, 2019 WL 68737 (W.D. Wash. Feb. 21, 2019) ........................ 4, 5

*Shaw v. Delta Air Lines, Inc.*,

    463 U.S. 85 (1983) ................................................................................................................ 3

*Stonybrook Tenants Ass'n, Inc. v. Alpert*,

    194 F. Supp. 552 (D. Conn. 1961) ...................................................................................... 10

*Sullivan v Am. Airlines, Inc*.,

    424 F.3d 267 (2d Cir. 2005) ................................................................................................. 2

## Statutes

26 U.S.C. § 42 ................................................................................................................... 1, 3, 4

28 U.S.C. § 1447(c) ................................................................................................................ 1

## Other Authorities

*Brandon M. Weiss, Residual Value Capture in Subsidized Housing*

    10 Harv L & Pol'y Rev 521, 534 (2016) .......................................................................... 6

*U.S. Gov't Accountability Off., Gao-15-330, Low-Income Housing Tax Credit: Joint IRS-HUD*

    *Administration Could Help Address Weaknesses In Oversight* 1 N.1 (2015) ........................ 6

**PRELIMINARY STATEMENT**

Plaintiff, Riseboro Community Partnership Inc., formerly known as Ridgewood Bushwick Senior Citizens Council, Inc, by and through its attorneys, Goldstein Hall PLLC, respectfully submit this Reply Memorandum of Law, in further support of Plaintiff's Motion for an Order, pursuant to 28 U.S.C. § 1447(c), remanding this action back to the New York State Supreme Court, Kings County ("State Court"), on the grounds that the action does not present any federal questions nor are the parties diverse.

As clearly stated in Plaintiff's moving papers, this Action concerns the interpretation of Section 12.03 (the "ROFR") of the Amended and Restated Agreement of Limited Partnership of the 420 LP (the "Restated Agreement") which is expressly governed by New York State law. While the agreement is expressly governed by New York State law, this action seeks a declaratory judgment regarding the interpretation of the ROFR. Under 26 U.S.C. § 42 ("Section 42"), Plaintiff is entitled to purchase the Apartment Complex for, in essence, a nominal fee. Because the amount set forth in Section 42 is far below the amount that any arm's length transaction would recognize, Plaintiff would be able to undercut any potential purchase price, thus obfuscating the need for such a stalking-horse bidder. Section 42's use here does not raise a federal question, or raise any federal issues, but instead is utilized to interpret the ROFR.

Separately, Defendants' attempt to invoke diversity as a basis for jurisdiction is equally unavailing. Here, it cannot be disputed that Plaintiff has a cause of action against Defendant 420 Stockholm L.P. ("420 LP") because it is 420 LP that actually owns and controls the Apartment Complex, albeit Defendants are the managing member of 420 LP, and is simultaneously the only entity over which agency regulatory enforcement exists. Here, not only is 420 LP completely

active, but it is the only party that can provide the requested remedy, i.e., transfer of the Apartment Complex.

As such, Defendants' opposition does not state a case for federal jurisdiction. Despite Defendants' attempt to frame Plaintiff's action, Plaintiff remains the master of his claim and Plaintiff's Complaint asserts state law claims for a declaratory judgment and breach of contract, only. Plaintiff does not plead a substantial federal question on its face and there is no complete diversity between the real parties in interest.

## ARGUMENT

### A. Despite its attempts to the contrary, Defendants have not shown that the Complaint raises a Substantial Federal Question.

Defendants' cannot establish that "arising under" jurisdiction exists in accordance to the *Grable* elements, nor can it be established in accordance with the "Complete-Preemption Doctrine" because, ultimately, the issue herein is not substantial and does not have the requisite pre-emptive force. Plaintiff remains the master of his claim and Plaintiff's Complaint asserts state law claims for a declaratory judgment and breach of contract, only.

Merely because Defendants' repeatedly used the term "displace" does not automatically trigger the Complete-Preemption Doctrine, because the standard is more exacting than Defendants allege: "[u]nder the complete-preemption doctrine, certain federal statutes are construed to have such "extraordinary" preemptive force that state-law claims coming within the scope of the federal statute … The Supreme Court has only found three statutes to have the requisite extraordinary preemptive force to support complete preemption" to wit § 301 of the Labor–Management Relations Act, § 502(a) of the Employee Retirement Income Security Act (ERISA), and §§ 85 and 86 of the National Bank Act, *Sullivan v Am. Airlines, Inc*., 424 F.3d 267, 272 (2d Cir. 2005) (internal citations omitted). Defendants mistaken reliance on *Shaw v. Delta Air Lines, Inc*, which

2

was a case that involved ERISA, (one of the "three statutes to have the requisite extraordinary preemptive force to support complete preemption", *Id.*) *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85 (1983). In other words, besides using the word "displace" ten times and relying on the unpersuasive *Shaw* case, Defendants do not – and cannot – assert a developed reason as to why Section 42 invokes the Complete-Preemption Doctrine, even though it is their burden to do so. Plainly, Section 42 does not possess the requisite extraordinary preemptive force to support complete preemption.

Interestingly, while arguing in favor of finding a federal question through the Complete-Preemption Doctrine, Defendants cite to and analyze a Massachusetts Supreme Court case, directly on this issue. In *Homeowner's Rehab, Inc. v. Related Corp V SLP, L.P.*, 479 Mass. 741, 761-762 (2018), the Massachusetts high Court, applying Massachusetts state law, affirmed a Trial Court decision, holding: "we conclude that the general partner is authorized to trigger the nonprofit developer's right of first refusal …. we emphasize that we are only interpreting the language of the agreements that the parties executed here. We are not declaring that every partnership participating in the LIHTC program must permit a right of first refusal …. For the same reasons set forth by the Massachusetts Court, the ROFR here is a creature of contract." While the Massachusetts Court used Section 42 to interpret the ROFR and its terms, the Court had no trouble in deciding that case under Massachusetts law. It did not seek to preempt or supplant Massachusetts law with Federal Law and indeed limited its own decision to the specific facts before it. Thus, contrary to Defendants' arguments, the *Homeowners Rehab* case argues against, not for, federal jurisdiction.

Similarly, in the recent case of *Senior Housing Assistance Grp v. Amtax Holding*, No. C17-1115RSM, 2019 WL 68737 (W.D. Wash. Feb. 21, 2019), the Federal District Court, applying

Washington state law – not federal law – reasoned that it "finds that certain language in the Agreements demonstrates an intent for the ROFRs to be exercisable as essentially an option, but that other language demonstrates an intent to provide a right clearly different from an option … the Court cannot find that the Agreements clearly demonstrate an intent contrary to the ordinary meaning of a right of first refusal". Here, again, the Court turned to the language of the relevant agreement, and the meaning of Section 42, and, utilizing the state law, determined the meaning of the ROFR. Accordingly, there is no basis to assert Federal jurisdiction over this matter.

### i. No "Actually Disputed" Federal Issue is "Necessarily Raised" by Plaintiff's Causes of Action

As discussed in Plaintiff's opening papers, the first element of "arising under" jurisdiction is the removing party's demonstration that a federal issue was necessarily raised in the Complaint.

Here, Plaintiff does not necessarily raise a federal issue. This action can be resolved by merely reading the underlying contracts without invoking any federal issue whatsoever, just as the *Homeowners* and *SHAG* Courts did. Despite having federal jurisdiction, the District Court in *SHAG* applied none of the "advantages thought to be inherent in a federal forum," *Grable & Sons Metal Products, Inc. v. Darue Engr. & Mfg.*, 545 U.S. 308 (2005) but instead relied solely on Washington State cases to first assert the legal standard for interpreting the underlying contract, and to then interpret the specific contractual terms at issue. *See Senior Housing Assistance Grp* No. C17-1115RSM, 2019 WL 68737 (W.D. Wash. Feb. 21, 2019). Likewise, in *Homeowners*, the State Court found no reason to invoke a federal issue, and – in an expansive discussion – applied Massachusetts state law to process the singular contractual terms, while keeping the LIHTC purpose in mind:

> [W]e must interpret that language in the context in which it was written and "with reference ... to the objects sought to be accomplished … Here, that context is § 42 … The

4

>purpose of the partnership, as stated in section 2.5.A of the partnership agreement, is to "invest[ ] in real property and ... provi[de] ... low income housing … We therefore examine the agreements with these mutual interests in mind.

*Homeowner's Rehab, Inc*. 479 Mass. at 752, (2018).

Besides both being bereft of any federal issue, the *SHAG* and *Homeowners* decisions were driven by an analysis of the disputed agreements and not by the "construction of section 42" as Defendants contend is appropriate here.[1] In comparison, this action presents no additional issue that would elevate it – over *Homeowners* and *SHAG* – to the "special and small category" of disputes that require "arising under jurisdiction" to be resolved.

### ii. The Instant Action Does Not Present Any Substantial Federal Issues

Even assuming arguendo that the Complaint does necessarily raise a federal issue, that issue is not substantial. Substantiality is lacking where an issue calls for a "fact-bound and situation-specific" application of federal statute, or "where the result [of a case] would be limited to the parties ... before the state court," the "possibility that a state court will incorrectly resolve a state claim is not, by itself, enough to trigger the federal courts' ... jurisdiction, even if the potential error finds its root in a misunderstanding of [federal] law." *Gunn v. Minton* 568 U.S. 251, 263 (2013). *SHAG's* and *Homeowners'* differing decisions, that were tightly fastened to the underlying agreements, make it clear that the issue here is "fact bound and situation specific." By this analysis alone, the alleged federal issue is not substantial.

Defendants, however, rely on *Homeowners* to demonstrate the opposite: the alleged federal issue is substantial because of the need for national clarity on federal tax statutes. This dispute

---

[1] Tellingly, Defendants extract a quote from Homeowners which states: "the right of first refusal in this case is not purely a creation of common law but … must be understood in the context of agreements designed to secure tax credits under the LIHTC program." In other words, the Homeowners court was aware of its decision's narrowness and its fundamental reliance on the agreements rather than theoretical statutory construction.

5

does not present such an opportunity. Defendants are alluding to the discussion in *Homeowners* that addresses how ownership (for the purposes of tax credits) is impacted by an option versus a right of first refusal. *See Homeowner's Rehab, Inc.*, 479 Mass at 758, 2018 WL 2994344 (2018) ("[I]n many contexts, an option to purchase property at a below-market price … is deemed to transfer ownership to the option holder, thereby disqualifying the legal owner from tax benefits.").

This is a worthy query, but a Court need not broach it to resolve this dispute. Here, the ROFR, as uniquely drafted, can be only exercised after Year 15. This is significantly after the Defendants realized their tax credits. Accordingly, whether the predicate ROFR is an option or a right of first refusal has no effect on Defendants' status and, indeed, has no effect on the national uniformity of tax principles because that issue is moot after an investor recognizes its tax credits. In fact, the LIHTC program never anticipated the need for national uniformity of tax principles after Year 15 as it was specifically designed to divest the federal government of all administrative, compliance, and supervisory powers to State agencies. *See U.S. Gov't Accountability Off., Gao-15-330, Low-Income Housing Tax Credit: Joint IRS-HUD Administration Could Help Address Weaknesses In Oversight* 1 N.1 (2015) ("Once IRS monitoring of LIHTC projects ends after year 15, HFAs have sole authority to monitor compliance …"); *see also Brandon M. Weiss, Residual Value Capture in Subsidized Housing*, 10 Harv L & Pol'y Rev 521, 534 (2016) ("The IRS, however, leaves it to states to conduct all compliance and enforcement after Year-15….").

In sum, *SHAG* and *Homeowners* underscore Plaintiff's initial papers in that Defendants' argument regarding the substantiality of this action is misplaced. Just as the Courts in *SHAG* and *Homeowners* interpreted the specific language of the contracts they were presented, so will the Court that adjudicates this action. Plaintiff's ROFR is different to both ROFRs discussed in *SHAG* and *Homeowners* and is likely different from virtually every other Section 42 ROFR in this

6

country. Therefore, even if a federal issue is determined to exist, it is not substantial and no "arising-under" jurisdiction can be determined to exist because substantiality does not exist.

### iii. The Exercise of Jurisdiction Would Disrupt the Federal-State Balance

To pacify the Supreme Court's real concerns that federalism may be corroded if federal jurisdiction is unjustifiably invoked, it promulgated the stringent *Gunn* elements to serve as parameters for the already opaque "arising under" jurisdiction. It is therefore surprising that Defendants are especially hollow when setting forth why they believe a federal forum for this action "will not disrupt the federal-state judicial balance." Defendants present one argument: Section 42 is a federal tax statute and "congress intended any disputes to be heard in the federal court." This is a misleading argument because the triggered contractual provision here ripens several years after any entity realized tax credit benefits and therefore whether the predicate contractual term is interpreted to function as an option is of no consequence to the uniformity of federal tax principles pertaining to ownership.

Next, Defendants simply ignore Plaintiff's arguments and continue to repeat that Section 42 is a tax statute and therefore any dispute deserves a federal forum. In fact, Defendants brazenly assert that "[w]hile, as Plaintiff notes, various aspects of the program are implemented or overseen through state agencies, Congress had a specific intent of creating a federal …." At the outset, Plaintiff does not merely note that state agencies oversee and implement various aspects, Plaintiff provides an authoritative excerpt from a report by the US Gov't Accountability Office, jointly issued by the Internal Revenue Service and the US Department of Housing and Urban Development that clearly states: "Once IRS monitoring of LIHTC projects ends after year 15, HFAs have sole authority to monitor compliance … If a project were found to be noncompliant, the HFA could take action, such as litigation under state law."

7

Here, it is undisputed that year 15 has passed. The reason for this, as discussed earlier, is because the federal tax credits have been realized. It is axiomatic that every state is facing a different set of circumstances, and it is to this end, that Section 42 relieved the federal government of its involvement after the necessary financing framework exhausted its use. In the end, a federal adjudication of this action will unnecessarily impinge upon the singular needs of Brooklyn, instead of leaving it to be decided by New York State, as the framers envisioned our judiciary to function. Along the same line of reasoning, Defendants' reliance on *Jacobson* is unavailing as here the tax principles are not implicated since the tax credits at issue have already been realized several years ago. *See New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308 (2d Cir. 2016).

### B. Complete Diversity Does Not Exist in this Action and Therefore the Action Cannot Be Removed Based on Diversity

Defendants attempt to argue that the Court has subject matter jurisdiction over this action because of diversity. Defendants have argued that the Court must disregard the citizenship of 420 LP on several legal theories. However, Defendants' arguments do not consider the actual thrust of diversity jurisprudence or the realities of this dispute. Above all however, Defendants ignore that the factual and legal issues must be resolved in favor of the Plaintiff. *Johnson v. County of Suffolk*, 280 F. Supp. 3d 356, 362, 2017 WL 5990120 (E.D.N.Y. 2017).

Contrary to Defendants opposition, the ultimate argument here turns on whether 420 LP is a nominal party, and to that end, "whether a party is nominal appears to be governed by essentially the same legal standard as whether a party is fraudulently joined …." *Johnson* 280 F. Supp. 3d at 362.

Defendants reliance on *K & D Eq. Investments, Inc. v. Cannex Therapeutics* is unavailing because in that action the parties did not actually dispute the nominal nature of the Defendant therein. As such, the issue was never before the Court. *K & D Eq. Investments, Inc. v. Cannex*

8

*Therapeutics*, 4:09CV249, 2009 WL 5173710 (E.D. Tex. Dec. 22, 2009). Similarly, Defendants' reliance on *Marsala v. Target Stores* 13-CV-5334 JS ARL, 2013 WL 6628298 (E.D.N.Y. Dec. 16, 2013) is self-defeating. First, in *Marsala*, the Court accepts and applies the fraudulent joinder standard that Defendant states is irrelevant for this action. Second, the Court held "[the removing party] has satisfied its burden of establishing that [the nominal party] was a nominal party, because "there can be no recovery against [nominal defendant] under the law on the cause alleged." Here, not only has Defendant failed to address this requirement, but it cannot, because Plaintiff ultimately seeks specific performance against 420 LP.

Most blatantly unpersuasive is Defendants' use of *Stonybrook Tenants Ass'n, Inc. v. Alpert*, 194 F. Supp. 552, 557 (D. Conn. 1961). A nonbinding case that predates the relevant standards set forth in *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 460 (1998), *Navarro*, or *Carden*. *See NYCB Mortg. Co., LLC v. Capital Fin. Mortg. Corp.*, 1:13 CV 2678, 2014 WL 535706, at *5 (N.D. Ohio Feb. 6, 2014) (*Stonybrook* "involved defendants who did not have an interest in the agreement that was the subject of dispute because they already disclaimed their interests in the agreement."); *Ryan Envtl., Inc. v. Hess Oil Co*., Inc., 2010 WL 2264907 (N.D.W. Va. 2010) ("the district court premised its conclusion that two of the defendants were nominal defendants on its findings that they were shell corporations and had no assets subject to recovery"); Here, not only is 420 LP active, but it is the only party that can provide a remedy. Even applying the Defendants' argument, 420 LP is nonetheless a real and adverse party in this action and, accordingly, destroys diversity.

In *Navarro*, The Supreme Court held that "a trustee is a real party … when he possesses certain customary powers to hold, manage, and dispose of assets for the benefit of others." *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 464 (1980). Here, 420 LP holds, manages, and disposes of assets

9

for the benefit of the other parties in this action. Indeed, 420 LP is the owner of the deed and the signatory to all the regulatory agreements, mortgages, and other relevant contracts arising from an intricate LIHTC project and general management of an apartment complex. Moreover, it is the 420 LP that is at the mercy of all agency and regulatory enforcement.

Second and alternatively, but equally fatally, it cannot be said that there is no cause of action against 420 LP or that there is no potentially recovery as against them, as argued by Defendants, 420 LP is the Owner of the Apartment Complex and therefore this action directly effects their rights. Therefore, the cases relied on by Defendants are inapplicable and not germane to the issues presented herein. Tellingly, when Defendants threatened Plaintiff with a conversion lawsuit based on the transfer sought herein, one would be hard pressed to imagine that any other party, other than 420 LP as owner would have been the Plaintiff therein.

As such, any judgment rendered in this action clearly and undeniably affects the rights of 420 LP, and its ability to own and control real property and therefore it is much more than a nominal party whose citizenship can be disregarded for purposes of diversity. Accordingly, diversity jurisdiction cannot provide the Defendants with an independent reason to remove this action from the State Court and therefore this action must be remanded back to the New York State Court.

## **CONCLUSION**

For all of the reasons set forth herein, Plaintiff respectfully request that the Court remands this Action to the Supreme Court of the State of New York, Kings County and award such other and further relief as the Court deems just proper and equitable.

Dated: New York, New York
      March 22, 2019                                By:    /s/ Brian J. Markowitz
                                                                         Brian J. Markowitz (BM-9640)
                                                                        Daniel Goldenberg (DG-1337)