UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- x
RISEBORO COMMUNITY
PARTNERSHIP INC, formerly known as
RIDGEWOOD BUSHWICK SENIOR
CITIZENS COUNCIL, INC.,

                      Plaintiff,

      - against -                                **MEMORANDUM & ORDER**

SUNAMERICA HOUSING FUND NO. 682,        18-CV-7261 (RJD) (VMS)
SLP HOUSING I, LLC, 420 STOCKHOLM
STREET ASSOCIATES, L.P.,

                      Defendants.
----------------------------------------------------------- x

DEARIE, District Judge

Plaintiff Riseboro Community Partnership Inc. brings an action against Defendants SunAmerica Housing Fund No. 682 ("SunAmerica"), SLP Housing I, LLC ("SLP") and 420 Stockholm Street Associates L.P., ("the Partnership") seeking declaratory relief and asserting breach of contract claims relating to Plaintiff's efforts to exercise a contractual right of first refusal to purchase an affordable housing project developed with the benefit of Low-Income Housing Tax Credits pursuant to Section 42 of the Internal Revenue Code, 26 U.S.C. § 42. Plaintiff first brought this action in Kings County Supreme Court, and Defendants SunAmerica and SLP timely removed the case based on federal-question and diversity jurisdiction, arguing that Plaintiff's claims present a federal question about the correct construction of federal tax law and that the non-diverse citizenship of the Partnership should be disregarded for jurisdictional purposes because it is a nominal party to this action. Plaintiff now moves to remand the case to state court, arguing that it has asserted state-law claims that merely involve a federal tax credit framework and that the Partnership must be considered for the purpose of diversity jurisdiction

because it is a real defendant in this action. For the reasons stated below, Plaintiff's motion is denied.

## BACKGROUND

This case concerns the interpretation of a contractual right of first refusal ("ROFR") in the amended partnership agreement of the Partnership, formed to own and operate a low-income housing project located at 420 Stockholm Street in Brooklyn ("the Apartment Complex") under the federal Low-Income Housing Tax Credit ("LIHTC") program, codified as 26 U.S.C. § 42. Defendants SunAmerica and SLP are limited investor partners of the Partnership and Plaintiff is the not-for-profit sponsor of the redevelopment of the Apartment Complex. Compl. ¶ 10.

The LIHTC program creates federally allocated tax credits awarded to real estate developers in exchange for the developer's creation and maintenance of low-income housing. Id. at ¶¶ 14-15. Developers typically fund their projects by entering into limited partnerships with private investors who have significant tax liabilities and contribute the capital for the project in exchange for having the tax credits allocated to them. Id. at ¶¶ 16-19. Investors can claim the credits annually over a period of ten years as long as the project complies with rent affordability restrictions for a period of fifteen years ("the Compliance Period"). Id. at ¶ 18. According to the Complaint, in order to ensure that these projects remain low-income housing after the tax credits are exhausted and the Compliance Period is over, 26 U.S.C. § 42 specifically contemplates and incentivizes a not-for-profit organization's purchase of the LIHTC project by expressly allowing these organizations to have a statutory right of first refusal to buy the projects at a statutorily prescribed minimum price. 26 U.S.C. § 42(i)(7)(A)[1].

---

[1] 26 U.S.C. § 42(i)(7) states: "(A) No Federal income tax benefit shall fail to be allowable to the taxpayer with respect to any qualified low-income building merely by reason of a right of 1st refusal held by the tenants (in cooperative form or otherwise) or resident management corporation or such building or by a qualified nonprofit organization (as defined in subsection (h)(5)(C)) or government agency to

2

Plaintiff alleges that Defendants entered into the Partnership with a special purpose entity, 420 Stockholm Housing Development Fund Company Inc. ("HDFC"), to develop the Apartment Complex as a LIHTC project. Id. at ¶ 22. Defendant SunAmerica provided the funds for HDFC to purchase land, and once it did, the land was transferred to the Partnership so the 26 U.S.C. § 42 tax credits could be allocated to Defendants. Id. at ¶¶ 23, 26. Subsequently, 420 Stockholm Corp., a non-profit entity whose sole shareholder is Plaintiff, replaced HDFC as the General Partner of the Partnership. Id. at ¶ 26.

After HDFC purchased the land, the parties amended their partnership agreement to reflect that the Partnership was compliant with all the terms and restrictions of 26 U.S.C. § 42 ("Restated Agreement"). Id. at ¶ 24-25. The Complaint alleges that "in connection with the development of the Apartment Complex and in accordance with" 26 U.S.C. § 42, Section 12.03 of the Restated Agreement granted Plaintiff a ROFR, as follows:

> "On and after the end of the 15 year Compliance Period, [RiseBoro] and its designee, if it is at that time a qualified nonprofit corporation, shall have a right of first refusal to purchase the Apartment Complex for the price equal to the sum of:
> (iv) The principal amount of outstanding indebtedness secured by the building (other than indebtedness incurred within the 5-year period ending on the date of the sale to the tenants), and
> (v) All Federal, State, and local taxes attributable to such sale and to any amounts paid pursuant to subsection (iii) hereof; and
> (vi) Any amounts of a Tax Credit Shortfall which has not been paid"

Id. at ¶ 29.

---

purchase the property after the close of the compliance period for a price which is not less than the minimum purchase price determined under subparagraph (B);
    (B) Minimum purchase price. For purposes of subparagraph (A), the minimum purchase price under this subparagraph is an amount equal to the sum of –
        a. The principal amount of outstanding indebtedness secured by the building (other than indebtedness incurred within the 5-year period ending on the date of the sale to the tenants), and
        b. All Federal, State, and local taxes attributable to such sale.
    Except in the case of Federal income taxes, there shall not be taken into account under clause (ii) any additional tax attributable to the application of clause (ii).

3

Plaintiff alleges that, upon expiration of the Compliance Period, it attempted to exercise its ROFR to purchase the Apartment Complex, but Defendants refused, arguing that, under Section 8.02(b)(i) of the Restated Agreement[2], Defendant SLP's consent is required before Plaintiff can exercise the ROFR, and the ROFR is not triggered until Defendants decide to sell and a bona-fide third party offer is made. Id. at ¶¶ 30-34. Unable to resolve their disagreement, Plaintiff filed this lawsuit, alleging that "Defendants' benefit of the bargain was to capture the LIHTC tax credits ... [which] has already been realized by SunAmerica," and "Defendants' ownership of the Apartment Complex remained a mere nominal appendage of the LIHTC structure which cannot be viewed in isolation, but must instead be construed together with, *inter alia*, the purpose of the Partnership: generating LIHTC tax credits and ensuring the Apartment Complex remains affordable via not-for profit ownership at the expiration of the Compliance Period." Id. at ¶ 35.

Along with claims for specific performance and damages for Defendants' alleged breach of the Restated Agreement, Plaintiff is seeking declaratory judgments pertaining to its right to exercise its ROFR under the Restated Agreement. The first cause of action alleges that Defendants' consent is not a condition precedent for Plaintiff to exercise its ROFR because (1) the ROFR under Section 12.03 contains no such requirement, (2) Section 8.02(b)(i) specifically provides that its restrictions are effective except as expressly provided in the Restated Agreement, and (3) the Restated Agreement contains no restrictions on the sale or refinancing of the Apartment Complex other than those set forth in 26 U.S.C. § 42, which contemplates no restrictions against a ROFR holder. Id. at ¶¶ 41-44. The second cause of action alleges that

---

[2] Section 8.02(b)(i) of the Restated Agreement states: "General Partner shall not without the Consent of the Special Limited Partner which Consent may be withheld in its sole and absolute discretion, have any authority to: sell or otherwise dispose of, at any time, all or any material portion of the assets of the Partnership, except as expressly provided in the Agreement." Compl. ¶ 34.

Plaintiff's ROFR "must be interpreted to be consistent with the statutory scheme of Section 42 as mandated by the Restated Agreement," and thus, "unlike a common law ROFR," it does not require either a willing seller or a bona fide offer before it can be exercised. Id. at ¶¶ 49-51. In support of this claim, the Complaint alleges that "Section 42 neither includes nor implies a bona fide third-party offer as a condition precedent for a ROFR holder to exercise its ROFR and such a limitation is inconsistent with the statutory scheme of Section 42 because a Section 42 ROFR permits a not-for-profit organization to purchase a project at a below-market price (the minimum purchase price) even if it is lower than the price offered by a third party, thereby discouraging any bona fide third party offeror from making any offer because the third parties would be aware that a non-for-profit would prevail against any such third-party offer no matter how competitive it is." Id. at ¶ 52.

## DISCUSSION

Under 28 U.S.C. § 1441, a defendant is entitled to remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." When federal jurisdiction is asserted by a defendant in a removal petition, the defendant has the burden of establishing that removal is proper. United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Properties Meriden Square, Inc., 30 F.3d 298, 301 (2d Cir. 1994).

Defendants contend that this Court has federal-question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1340 because the alleged causes of action for declaratory relief and breach of contract raise necessary, disputed and substantial issues relating to interpretation of parts of the federal LIHTC program under the Internal Revenue Code, and federal jurisdiction over this action does not disturb any congressionally-approved balance of federal and state judicial responsibilities. Defendants also contend that this Court has diversity jurisdiction pursuant to 28

U.S.C. § 1332 because the Plaintiff and Defendants SunAmerica and SLP are diverse and the non-diverse citizenship of the Partnership should be disregarded because it is a formal or nominal party without any adverse interest against any party in the action.[3]

## I. This Court Has Federal Question Subject Matter Jurisdiction Pursuant to 28 U.S.C. §§ 1331 and 1340

Federal district courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, and, specifically, "of any civil action arising under any Act of Congress providing for internal revenue, or revenue from imports or tonnage except matters within the jurisdiction of the Court of International Trade." 28 U.S.C. § 1340. "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987). However, the Supreme Court has also recognized that "federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 312 (2005). Thus, in cases where, as here, a plaintiff brings state law claims, federal jurisdiction exists if "a federal issue is (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." Gunn v. Minton, 568 U.S. 251, 258 (2013). "A state law claim 'necessarily' raises federal questions where the claim is affirmatively 'premised' on a violation of federal law." N.Y. ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A., 824 F.3d 308, 315-16 (2d Cir. 2016) (internal

---

[3]Defendants also assert this Court has supplemental jurisdiction under 28 U.S.C. § 1367 over claims for which there is no original jurisdiction. Given that the Court has federal-question jurisdiction over all of Plaintiff's claims pursuant to 28 U.S.C. §§ 1331, there are no claims over which we would need to exercise supplemental jurisdiction.

citations omitted). But, "the mere need to apply a federal law in a state-law claim will [not] suffice to open the 'arising under' door" and federal jurisdiction is "confined ... to those [claims] that really and substantially involv[e] a dispute or controversy respecting the validity, construction or effect of [federal] law." Grable, 545 U.S. at 313 (internal quotations omitted).

### A. Plaintiff's Claims "Necessarily Raise" An "Actually Disputed" Federal Issue

All of Plaintiff's claims necessarily raise a disputed federal issue because in order to grant the relief Plaintiff seeks, the Court must make "binding legal determinations of rights and liabilities under [federal law]." CWCapital Cobalt VR Ltd. v. CWCapital Investments LLC, 2018 WL 2731270, at *3 (S.D.N.Y. May 23, 2018) (quoting Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning, 136 S. Ct. 1562, 1569-70 (2016)). In essence, Plaintiff's claims will require the Court to resolve the parties' dispute over (1) whether 26 U.S.C. § 42 contemplates any restrictions on an ROFR holder's ability to exercise it, and (2) whether 26 U.S.C. § 42(i)(7) envisions an ROFR that differs from a common law ROFR.

Plaintiff contends that to the extent its claims invoke 26 U.S.C. § 42, they do so to illuminate a contractual agreement rather than question 26 U.S.C. § 42 itself, and "at most require the court to apply federal law in a state-law claim." CWCapital Cobalt VR Ltd., 2018 WL 2731270, at *3. But determination of the Plaintiff's rights and Defendants' obligations under the Restated Agreement and whether Defendants breached those obligations requires the Court to do more than engage in contract interpretation. By Plaintiff's own account, "the Restated Agreement granted a Section 42 ROFR to [Plaintiff]," Compl. ¶ 21, which "cannot be interpreted purely under New York common law, but must be interpreted to be consistent with the statutory scheme of Section 42." Id. at ¶ 49. Thus, the existence or non-existence of any

7

conditions precedent for Plaintiff to exercise its ROFR is mandated by 26 U.S.C. § 42, making Plaintiff's claims "predicated on ... violations of obligations rooted exclusively in federal law" Varga v. McGraw Hill Fin., Inc., 36 F. Supp. 3d 377, 382 (S.D.N.Y. 2014). Contrary to Plaintiff's contention, the parties' dispute is not about "whether the facts of the particular transaction ... [are] covered by [the applicable federal law]" but rather, it is about the correct construction of the requirements of a ROFR under 26 U.S.C. § 42. CWCapital Cobalt VR Ltd., 2018 WL 2731270, at *3.

A recent opinion by the Supreme Judicial Court of Massachusetts illustrates how a decision on the merits of Plaintiff's claims would require the Court to interpret the parties' rights and obligations under 26 U.S.C. § 42 rather than merely interpret the language of the Restated Agreement. In Homeowner's Rehab, Inc. v. Related Corp V SLP, L.P., the court acknowledged that the ROFR at issue was "not purely a creation of the common law but ... was granted 'in accordance with § 42(i)(7) of the Internal Revenue Code,' and must be understood in the context of agreements designed to secure tax credits under the LIHTC program." 479 Mass. 741, 753 (2018). After analyzing the legislative history and policy goals of 26 U.S.C. § 42, the court decided the parties' rights and obligations under the operative agreements, including whether the plaintiff's ROFR could be exercised as an option, by interpreting the language of the agreements in a way that did not "contravene the purpose of [26 U.S.C.] § 42(i)(7)." Id. at 753-59. This is exactly what the Court would have to do here because Plaintiff's claims that Defendants breached their obligations under the Restated Agreement "necessarily stand[] or fall[] based on a particular application of" the ROFR provided by 26 U.S.C. § 42(i)(7). CWCapital Cobalt VR Ltd., 2018 WL 2731270, at *3 (internal quotations omitted).

## B. The Federal Issue Presented by Plaintiff's Claims are "Substantial"

"[F]ederal jurisdiction demands not only a contested federal issue, but a substantial one." Grable, 545 U.S. at 313. "The substantiality inquiry ... looks ... to the importance of the issue to the federal system as a whole." Gunn, 568 U.S. at 260. "An issue may be substantial if it 'present[s] a nearly pure issue of law, one that could be settled once and for all and would govern numerous...other cases.'" CWCapital Cobalt, 2018 WL 2731270 at *5 (quoting Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 700 (2006)). However, "when 'the result [of a case] would be limited to the parties ... before the state court,' the 'possibility that a state court will incorrectly resolve a state claim is not, by itself, enough to trigger the federal courts' ... jurisdiction, even if the potential error finds its root in a misunderstanding of [federal] law.'" Id. (quoting Gunn, 568 U.S. at 263); see also Congregation Machna Shalva Zichron Zvi David v. U.S. Dep't of Agriculture, 557 F. App'x 87, 90 (2d Cir. 2014) (affirming dismissal for lack of jurisdiction where "[t]he determination at issue ... is a fact-specific application of [federal] regulations to [plaintiff] that does not implicate the validity of the regulations themselves, or have any other broader effect on federal interests.").

Plaintiff argues that any federal issue here is not substantial because the implications of a decision interpreting 26 U.S.C. § 42 would be limited to the specific language of this Restated Agreement, which is likely different than virtually every other LIHTC operating agreement. See Liana Carrier Ltd. v. Pure Biofuels Corp., 672 F. App'x 85, 92 (2d Cir. 2016) (summary order) (finding that when "resolution of the issue would be relevant only to these parties, the issue is not substantial enough to trigger federal jurisdiction over ... [a] fundamentally state law cause of action."). However, while it is true that the language of this specific ROFR may be unique to the parties' Restated Agreement, the Court's ultimate determination would not be based on the

9

specific language of the ROFR but rather on its interpretation of Congress' intent in drafting 26 U.S.C. § 42(i)(7).

The correct construction of 26 U.S.C. § 42(i)(7) and how it differs from a common law ROFR is a purely legal question that is substantial and will be applicable to many other LIHTC agreements nationwide that provide for a ROFR under 26 U.S.C. § 42(i)(7). See Grable, 545 U.S. at 315 ("The meaning of the federal tax provision is an important issue of federal law that sensibly belongs in a federal court."). In fact, courts that have recently addressed this issue have come to different conclusions based on different constructions of 26 U.S.C. § 42(i)(7). Compare Homeowner's Rehab, Inc., 479 Mass. at 753 (finding that the ROFR at issue was granted in accordance with 26 U.S.C. § 42(i)(7) and thus displaced Massachusetts state-law requirements for ROFR) with Senior Housing Assistance Grp. v. AMTAX Holdings 260, LLC, 2019 WL 687837, *1 (W.D. Wash. Feb. 19, 2019) (declining to find that 26 U.S.C. § 42(i)(7) created a federal common law definition of ROFR that could displace the state common law or the ordinary meaning of the term developed over the years).

### C. The Exercise of Jurisdiction Would Not Disrupt the Federal-State Balance

"[E]ven when the state action discloses a contested and substantial federal question... the federal issue will ultimately qualify for a federal forum only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." Grable, 545 U.S. at 313-14. The Supreme Court has instructed that "determinations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system." Merrell Dow Pharm. Inc. v. Thompson, 478 U.S. 804, 810 (1986). In deciding if the federal issue in a case is capable of

resolution in federal court without disrupting the federal-state judicial balance, courts should consider (1) whether Congress has expressed any preference for state versus federal jurisdiction over the type of claim at issue (2) any impact on the volume of federal court litigation if jurisdiction is accepted; (3) the possibility of causing a significant shift of what were traditionally state cases into federal cases; and (4) the litigants' interest in a federal forum. See Grable, 545 U.S. at 317-19. "Absent a special state interest in a category of litigation, or an express congressional preference to avoid federal adjudication, federal questions that implicate substantial federal interests will often be appropriately resolved in federal rather than state court." New York ex rel. Jacobson, 824 F.3d at 316.

The LIHTC program is a creature of federal law that accords favorable tax treatment to investments in low-income housing by providing tax credits to offset significant tax liabilities. An important purpose of this legislation is to encourage LIHTC properties to end up with not-for-profit organizations that will keep the units affordable. It does this by expressly allowing these organizations to have a ROFR to purchase projects at below market prices. See Senior Housing Assistance Grp., 2019 WL 687837, at *1.

Plaintiff contends that its claims sound in breach of contract and would only require a state court to consider the definition of "offer" under 26 U.S.C. § 42, relying on the Second Circuit's decision in Liana Carrier Ltd., where the court found that "respect for the state-federal balance ... incline[d] against attachment of federal question jurisdiction" because "[t]he fact that the state court's analysis of breach will necessarily turn on the requirements of federal securities law does not change the underlying nature of Plaintiffs-Appellants' claims." 672 F. App'x at 92. However, in that case, the issue was "whether [the defendant's] SEC Reports complied in all material respects with the requirements of the Securities Act and the Exchange Act." Id. This did

11

not require the court to make any determinations about what those requirements were or otherwise interpret the federal statute, and the court simply applied the requirements to the facts of the case. Here, on the other hand, Plaintiff's claims raise a threshold question of law about the meaning of a federal tax provision i.e. whether there are any conditions precedent for the exercise of an ROFR under 26 U.S.C. § 42. Even if state courts are the traditional forum for adjudication of breach of contract claims, "[they are] not the traditional forum for interpretation of the federal tax laws." New York ex rel. Jacobson, 824 F.3d at 318. In fact, 28 U.S.C. § 1340 demonstrates that Congress intended disputes involving federal tax statutes to be heard in federal courts.

Plaintiff also argues that it is relevant that the LIHTC program was specifically designed to divest the federal government of all administrative, compliance, and supervisory powers after the tax credit benefits are realized, as evidenced by the fact that the IRS relinquishes all monitoring authority over LIHTC projects to state agencies at the end of the Compliance Period. See U.S. Gov't Accountability Off., GAO-15-330, Low-Income Housing Tax Credit: Joint IRS-HUD Administration Could Help Address Weaknesses in Oversight (2015). According to Plaintiff, since the tax credits at issue in this case have already been exhausted, all monitoring authority belongs to the state housing agency. However, after the Compliance Period is over, state agencies only monitor a project's compliance with the LIHTC program's minimum requirements of affordability, such as rent ceilings, income limits, and tenant qualifications. Id. This is unrelated to the question of what rights and restrictions ROFR holders have under 26 U.S.C. § 42, which hinges on interpretation of federal tax principles. See Homeowner's Rehab, Inc., 479 Mass. at 754 (explaining that 26 U.S.C. § 42(i)(7) exists to "clarify that,

notwithstanding traditional principles of tax law, a nonprofit organization's right of first refusal … will not deprive the property owner of tax credits.").

Finally, federal jurisdiction over this case will not trigger a voluminous amount of cases or transform state court litigation of traditional breach of contract actions involving ROFR provisions into federal litigation because "it is the rare such action that hinges on the proper interpretation" of an admittedly unique ROFR under federal tax law. New York ex rel. Jacobson 824 F.3d at 318.

## CONCLUSION

Defendants' removal of this case to federal court was proper under 28 U.S.C. § 1441 because Plaintiff's claims raise a necessary, disputed and substantial federal issue, which this Court can entertain without disturbing the federal-state balance of judicial responsibilities approved by Congress. Since this Court has federal-question jurisdiction over Plaintiff's claims, we need not reach the question of whether we also have subject matter jurisdiction on the basis of diversity of citizenship between the parties. Accordingly, Plaintiff's motion to remand the action to state court is denied.

SO ORDERED.

Dated: Brooklyn, New York
August 7, 2019

s/ Raymond J. Dearie

RAYMOND J. DEARIE
United States District Judge