1                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF NEW YORK

2

3  ------------------------------------X
                            :

4  RISEBORO COMMUNITY PARTNERSHIP,    :
  INC.,                          :

5                          :  18-CV-07261 (RJD)

                Plaintiff,     :

6                          :

               v.           :  225 Cadman Plaza East

7                        :  Brooklyn, New York
  SUNAMERICA HOUSING FUND NO. 682,  :

8  *et al.*,                      :
                          :  August 21, 2019

9               Defendants.    :
  ------------------------------------X

10

11      TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
        BEFORE THE HONORABLE VERA M. SCANLON

12          UNITED STATES MAGISTRATE JUDGE

13

14  APPEARANCES:

15  For the Plaintiff:        BRIAN J. MARKOWITZ, ESQ.
                      DANIEL ROBERT GOLDENBERG, ESQ.

16                      Goldstein Hall, PLLC
                      80 Broad Street

17                      Suite #303
                      New York, New York 10004

18

19  For the Defendants:       JUAN L. GARCIA, ESQ.
                      SHELBY NACE, ESQ.

20                      Nixon Peabody, LLP
                      50 Jericho Quadrangle

21                      Suite #300
                      Jericho, New York 11753

22  Court Transcriber:        RUTH ANN HAGER, C.E.T.**D-641
                      TypeWrite Word Processing Service

23                      211 North Milton Road
                      Saratoga Springs, New York 12866

24

25

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

2

1  (Proceedings began 12:42 p.m.)

2           THE COURT:  -- Riseboro Community Partnership, Inc.,

3  v. SunAmerica Housing Fund No. 682, 18-CV-07261.

4           For the plaintiff?

5           MR. MARKOWITZ:  Brian Markowitz and Daniel

6  Goldenberg for the plaintiff of Goldstein Hall.

7           THE COURT:  Okay.  And --

8           MR. GARCIA:  And, Your Honor, I am --

9           THE COURT:  -- for defendants?

10           MR. GARCIA:  -- Juan Luis [ph.] Garcia from the firm

11  Nixon Peabody and my colleague Shelby Nace is also here from

12  my firm.  We represent two of the three defendants.  We

13  represent SunAmerica Housing Fund No. 682.

14           THE COURT:  Um-hum.

15           MR. GARCIA:  And SLP Housing I, LLC.  I understand

16  that the third defendant is not appearing in this case.

17           THE COURT:  Any idea why?

18           MR. GARCIA:  There -- Your Honor, I believe that's

19  because that's the partnership in which an affiliate of

20  plaintiff and our -- and my clients are a part of.  So, in

21  other words, we are all a part of that partnership and not --

22  nobody has authorized -- but to our understanding the general

23  partnership has not authorized separate counsel for that

24  defendant.

25           THE COURT:  Okay.  I'm not sure I understand that.

3

1   I'm not sure I -- well, can you explain in your case your

2   position and then we'll come back to what's going to happen

3   with 420 Stockholm Street Associates.

4           MR. MARKOWITZ:  They're the -- Your Honor, 420

5   Stockholm Street Associates is the deed holder in this case.

6   This whole case is a case regarding a Section 42 of the IRS

7   Code right of first refusal.  There was -- this case was

8   actually commenced in the Bronx Supreme Court.  I brought it

9   in Brooklyn Supreme Court originally and --

10          THE COURT:  It's a motion practice --

11          MR. MARKOWITZ:  -- a motion to remand.

12          THE COURT:  Um-hum.

13          MR. MARKOWITZ:  That was -- that was denied just

14   recently by Judge Dearie.

15          The LP in this case is they're the deed holder.

16   They're the only ones who can actually take any transfer --

17   undertake any transfer of the property at the ultimate end of

18   this case.  So I mean, I don't know if they're ultimately

19   going to appear but a default against them would basically

20   mean that we would transfer the property to the plaintiffs,

21   so --

22          THE COURT:  Yeah.

23          MR. MARKOWITZ:  -- you know, because they're the

24   ultimate deed holder, so we're fine with that.

25          THE COURT:  It's -- okay.

4

1          MR. GARCIA:  Well, Your Honor, my understanding

2     is --

3          THE COURT:  Still don't understand why they're not

4     here, but okay.

5          MR. GARCIA:  So, Your Honor, this involves -- I

6     agree that this involves primarily one property and the non-

7     appearing defendant is the deed holder of that property.

8     There's a complex structure to the ownership of that entity

9     because various investors receive the benefit of low income

10    housing tax credits.  And to receive that -- that benefit

11    across a pool of investors, there's a certain way to structure

12    it to do that.

13         The paren -- the entities that ultimately are the

14    investors in this project and in that partnership as the deed

15    holder are my clients.  And for the purposes -- and it is

16    required under the law to have a non-profit general partner

17    because this is for the purpose of providing affordable

18    housing.  And that non-profit general partner is, I

19    understand, controlled by the plaintiff.  So it's a separate

20    entity but it's controlled by the plaintiff and so it'd be up

21    to that general partner to actually authorize or provide for

22    representation for that entity.

23         MR. MARKOWITZ:  Yeah, I don't believe that we

24    control that entity.  I'm not sure what he means by we control

25    it when they're -- they're -- that's the whole issue in this

1   case is who controls that entity.  If we controlled that

2   entity then we would have just transferred it to the not-for-

3   profit owner, which is what Section 42 provides, which is that

4   the -- that ultimately at the end of the tax -- of the taxing

5   credit period, which we're at -- we're past that actually at

6   this point --

7                  THE COURT:  Okay.

8                  MR. MARKOWITZ:  -- that this would devolve --

9                  THE COURT:  Go ahead.

10                  MR. MARKOWITZ:  -- to not-for-profit ownership.

11                  THE COURT:  Right.

12                  MR. GARCIA:  Well we're talking about the general

13   partner entity, not the actual defendant here, right.  So

14   there's a defendant partnership and then as part of that

15   partnership there are three partners.  There's one general

16   partner and the name escapes me.  The general partner is a

17   non-profit entity and then there are two limited partners.

18   The two limited partners are our clients that we represent.

19                  My understanding is that the general partner, which

20   is the non-profit entity, that is an affiliate of plaintiff so

21   I may have misspoken if I said "controlled," but I understand

22   that they are an affiliate but --

23                  THE COURT:  A general partner there's -- okay, so

24   there's a three-part ownership --

25                  MR. GARCIA:  Right.  There's three partners --

6

1          THE COURT:  -- of an entity that then controls 420
2  Stockholm Street, which is the deed holder.  Is this right?
3          MR. GARCIA:  So there's three partners and under the
4  regulations the general partner has the general administrative
5  control and runs the day-to-day business of the partnership as
6  the deed holder and that general partner is a non-profit
7  entity that is an affiliate of plaintiff.
8          The limited -- our clients are limited partners that
9  have -- that have most of the benefit of ownership that they
10  own 99.9 percent of the ownership, but they don't have day-to-
11  day administration of the entity that's a structure required
12  under the laws that it be actually administered by a non-
13  profit entity.
14          THE COURT:  Okay.  So when --
15          MR. MARKOWITZ:  So they have the major decision
16  holder --
17          THE COURT:  They what?
18          MR. MARKOWITZ:  They have major decision-making
19  authority which is the nature -- which is the issue in this
20  case right now.
21          MR. GARCIA:  So to speak.
22          THE COURT:  Okay.  Just --
23          MR. MARKOWITZ:  Under the operating agreement
24  between the two --
25          THE COURT:  "They" meaning the two or the general

7

1  partner?  Which one were you saying?

2          MR. MARKOWITZ:  His clients.  His clients.

3          THE COURT:  His clients.

4          MR. GARCIA:  His clients, yes.

5          THE COURT:  The general -- and when you say

6  "affiliate," what does that mean?

7          MR. GARCIA:  I believe it's -- I believe one is

8  entirely owned by the other, one way or -- that's my

9  understanding.

10         MR. MARKOWITZ:  I mean, I don't think that's

11 accurate.  I don't have the operating agreement immediately in

12 front of me, but the general idea is pretty simple.  You have

13 the investment partnerships and then you'll have an HDFC who's

14 a nominal ownership and then you'll have a not-for-profit

15 sponsor and then we have us.

16         THE COURT:  Um-hum.

17         MR. MARKOWITZ:  Ultimately an investment partner has

18 major decisions and some sort of veto power.  I use "veto" in

19 quotes because they -- they argue that they have veto power

20 over our [indiscernible] and that's where the issue is.

21         We, as the not-for-profit or for holder wanted to

22 get the property at the end of 15 years.  They said, you can't

23 do it without a consent because of X, Y and Z.  What X, Y and

24 Z is the crux of the case.

25         THE COURT:  Okay.  So I'm sorry.  I'm still trying

8

1   to drill down on how come 420 Stockholm Street Associates L.P.

2   is, who is saying -- shouldn't they be here with a lawyer or

3   are they just floating and don't care what happens?

4           MR. GARCIA:  Well, essentially --

5           THE COURT:  Because it's really owned by all these

6   layers and this is really, you know, a fight layer above them

7   and --

8           MR. GARCIA:  Well --

9           THE COURT:  Okay.

10          MR. GARCIA:  Perhaps the best analogy, Your Honor,

11  is to basically characterize this as an intra-company dispute

12  because it's all -- so it's essentially -- you can analogize

13  to a dispute among partners about the partnership and in that

14  situation because the partners are themselves at odds they

15  don't then pay for another counsel to come in for the

16  partnership as a whole.

17          And I believe what plaintiff is speaking about is

18  the decision-making authority for the deed-holding partner,

19  right?  So we're not -- and that is at issue, what -- that is

20  separate from the authority of that general -- of the deed-

21  holding partner to actually sell the property is very

22  different from the day-to-day administration.

23          THE COURT:  Um-hum.

24          MR. GARCIA:  Right.  And as you can imagine, that is

25  a separate issue under various judiciary laws and under the

9

1   operating agreement.

2          Now, what I was saying about the relationship

3   between plaintiff and the general partner, it actually comes

4   from the complaint allegations.  Paragraph 26 says -- it's

5   about the general partner.  The general partners, 420

6   Stockholm Corp. --

7          THE COURT:  Okay.

8          MR. GARCIA:  -- and the actual partnership that

9   we're fighting about is 420 Stockholm Street Associates, L.P.

10  So the general -- about the general partner, Paragraph 26

11  states --

12         THE COURT:  Um-hum.

13         MR. GARCIA:  -- on August 14, 2000, 420 Stockholm

14  Corp., whose sole shareholder is Riseboro, replaced the HDFC

15  as general partner of the partnership and the partnership

16  refers to the non-appearing defendants.

17         THE COURT:  Okay.

18         MR. GARCIA:  So in our view, Your Honor, they are

19  aligned in interest essentially, the general partner of -- the

20  partnership is aligned in interest with the plaintiff and so

21  this places us basically in an intra-partnership dispute and

22  that's why there's no separate representation --

23         THE COURT:  So I suppose that's the --

24         MR. GARCIA:  -- for that part.

25         THE COURT:  -- fundamental question is, are they

10

1   actually aligned in interest.  If they are, I understand this.

2   If they are not, shouldn't there be counsel here?

3            MR. GARCIA:  Well, I --

4            THE COURT:  Because as long as the right person is

5   making the choice to abandon the possibility of having

6   counsel, but I'm not -- I don't know -- I don't --

7            MR. GARCIA:  So kind of came up collaterally in the

8   motion to remand.

9            THE COURT:  Um-hum.

10           MR. GARCIA:  And the Court decided -- just ruled on

11  the diverse jurisdiction that it would go to the merits of

12  nominal [ph.] --

13           THE COURT:  No, but did that on the federal right?

14  He didn't answer the diversity?

15           MR. GARCIA:  No, that's right.  Right, but the judge

16  couldn't address the diversity issue.  Our argument was so the

17  general partner actually is not a party.  Right?

18           THE COURT:  Um-hum.

19           MR. GARCIA:  So 420 Stockholm Corp. is not a party.

20  So we're sort of talking about -- what I'm talking about is

21  just the practicality of why nobody has appointed a separate

22  counsel for --

23           THE COURT:  Right.

24           MR. GARCIA:   -- the partnership entity and that's

25  because the partners are in dispute.  The limited [ph.]

1  partners, which are my clients, are at odds with the general

2  partner and the general partner was not sued in this case.

3  But the general partner has the decision-making authority over

4  day-to-day decisions, such as retaining counsel.  But that's

5  an issue where we can accept the Court's guidance.

6          Our view is that they are nominal defendants, so a

7  default would not affect the merits of the case.  The

8  complaint itself alleges that that third defendant is a

9  nominal defendant.

10          MR. MARKOWITZ:  Your Honor, the reason that 420

11  Stockholm is not a party is that the rule -- the right of

12  first refusal in and of itself is being held by the plaintiff

13  pursuant to the operating agreements.

14          THE COURT:  Well --

15          MR. GARCIA:  Not -- not --

16          THE COURT:  The Inc., the 420 Inc.

17          MR. GARCIA:  Riseboro Community Partnership, Inc.,

18  holds the right of first refusal pursuant to the operating

19  agreements.  Therefore, the general partner itself is not a

20  necess -- it was not a necessary party.

21          The L.P., the limited partnership, the 420 Stockholm

22  Street Associates, L.P., was a necessary party.

23          THE COURT:  Because they're the deed holder.

24          MR. GARCIA:  Because they're the deed holder.  So

25  they're necessary to transfer the ownership back to the HDFC

12

1  entity, the not-for-profit entity at the end of this case

2  pursuant to the rider.

3          THE COURT:  All right.  I -- so does it have any --

4  does 420 Stockholm Street Associates, L.P., have any interest

5  other than just being the vessel for the deed?

6          MR. GARCIA:  That's how we view them, Your Honor.

7  They're just a vessel for the deed, so they are -- we would

8  agree with plaintiff in their allegation in Paragraph 7 of the

9  complaint that they are just a nominal defendant, so it's a

10 nominal defendant.  It shouldn't be a default that affects the

11 merits of the case.

12         THE COURT:  Okay.  All right.  We'll go with that

13 for now.

14         MR. GARCIA:  Okay.

15         THE COURT:  So what does discovery look like in this

16 case?

17         MR. MARKOWITZ:  So before we get to discovery, Your

18 Honor, there was an issue that came up on the phone between us

19 and counsel yesterday that we would like to address and it was

20 the subject of a letter we wrote to counsel.

21         So we were discussing discovery and counsel had

22 mentioned that he wants to start deposing senators and all

23 those regarding the intent of congressmen passing Section 42

24 of the IRS Code and then mentions specifically that he has

25 counsel in his office that were involved with the drafting and

13

1  knows the intent of the -- of congressmen when they passed

2  this legislation; to which we responded, wait a second.  If

3  you have -- you know, these people would be interested

4  witnesses necessarily, then pursuant to just his own theory of

5  the case, and we've asked for the disclosure of who those

6  persons are, and basically pursuant to the ethical rules that

7  they should be somehow walled off from this case and anyone

8  that they've communicated with so far in this case is probably

9  familiar with [indiscernible] would have to be walled off as

10  well.

11         MR. GARCIA:  Your Honor, respectfully, I mean, I

12  don't appreciate -- this seems -- this approach seems to be

13  litigation by ambush since the issue was just raised

14  yesterday.  Preliminarily, I don't want to commit our client

15  or my firm to anything because this implicates my firm.  So I

16  think we should have the advice of our general counsel in a

17  formal response.

18         But preliminarily, this is a non-issue.  We're

19  talking about a law that was passed in 1986, so 33 years ago.

20  The fact that some people in our firm could have had

21  government experience during that time doesn't translate into

22  them being necessary witnesses for the case.  And so we

23  don't -- so -- and then we haven't -- and then beyond that,

24  nobody has disclosed any witnesses.  We don't know who the

25  witnesses are.  We don't know that anyone in our firm would be

1   a witness.

2              And perhaps the bottom issue is that the rule -- the

3   ethical rule that applies to an attorney or an advocate as a

4   witness applies only to that individual attorney and that's

5   very clear from the text of the rule itself and the case law.

6   It's not a rule that applies vicariously to a full offer and

7   none of the attorneys who appeared before Your Honor or before

8   Judge Dearie had any involvement in Government at any relevant

9   time.

10             So that's -- so, Your Honor, I would respectfully

11  just say that this issue needs to be tabled so the parties can

12  meet and confer and address it appropriately.  It's not an

13  issue that's --

14             THE COURT:  All right.  I'm not going to --

15             MR. GARCIA:  -- certainly not primed for an order of

16  any kind.

17             THE COURT:  All right.

18             MR. MARKOWITZ:  We're not seeking an order right

19  now.  We're seeking guidance on this issue.  We've --

20             THE COURT:  I don't want to talk about it anymore.

21  You need to talk about it between yourself, maybe among

22  lawyers who are giving you advice, and then if you think

23  there's a conflict that is not being dealt with by defendant's

24  counsel, you could raise that or if you think it's an

25  unresolvable conflict you could raise that.  But I think it's

15

1  premature to talk about it today.

2          MR. MARKOWITZ:  Well, Your Honor, may I ask a
3  question?

4          THE COURT:  On this topic?

5          MR. MARKOWITZ:  Yes, please.

6          THE COURT:  All right.  Go ahead.

7          MR. MARKOWITZ:  We wrote -- we wrote counsel a
8  letter on August 19th requesting the identity of the
9  employees, partners, members, whoever they are, who were
10 involved in this.  We'd ask that that letter be responded to.
11 It hasn't been responded to yet.

12         THE COURT:  No.  You have to have -- because they
13 haven't had an opportunity to talk among themselves, with
14 their counsel, with you about what exactly the issue is
15 because we're not even -- not even knowing what the questions
16 should be, if there's any, that they would have to respond to.
17 So, no, they don't have to respond to your letter except to
18 deal with the overall issue of, is there a conflict between --
19 or is there conflict for the firm, is there conflict for
20 certain attorneys, do certain attorneys need to be walled off.
21 I mean, we haven't yet talked about what this theory is that
22 is going to go behind the line.  I don't know if that's a
23 viable theory here, but that seems to be how these individuals
24 might be implicated, so -- all right.

25         All right.  So back to my question.  What does

1   discovery look like here?

2          MR. GARCIA:  So we filed the initial scheduling

3   order on --

4          THE COURT:  What are you looking for?  So I see I

5   have the schedule.  What are the disputes, what information

6   needs to be exchanged?  There obviously is -- you have both

7   from your -- from your complaint you already have a lot of

8   information about the relevant transactions.  So what needs to

9   be exchanged, explored, et cetera?

10         MR. MARKOWITZ:  There's information regarding both

11  who actually owns the entity that's at issue in this case

12  right now.  It's our understanding that the credits and the

13  right to those credits have been transferred from SunAmerica

14  to another entity in violation of the operating agreement in

15  violation of the regulatory agreement that controls this

16  project, so we're going to be seeking information regarding

17  that entity or entities that are in there now.

18         There's also issues regarding their intent to be

19  able to sell this property or back to us or not pursuant to

20  right of first refusal.  We were told by one of the other

21  counsel in this case that they are "long-term holder of

22  assets," which would be diametrically opposed to both

23  Section 42 and the operating agreement itself, so there will

24  be discovery respecting that.

25         Counsel indicated yesterday, Mr. Garcia said that he

1    wants to start deposing certain members of Congress regarding

2    their intent in passing this law.  Not sure if that's possible

3    or feasible or if he was just stating it and doesn't intend to

4    do it, but that -- those non-party depositions are certainly

5    some sort of possibility in this case based on his

6    representation yesterday -- sorry, Monday.

7              So those are some of the issues that are necessary

8    in discovery, as well as questions regarding valuation and

9    cost.  There'll be necessary issues for discovery.

10             THE COURT:  Okay.  And where do you think all these

11   records are in their custody with non-parties, with other

12   entities?  For example, the Stockholm Street company that's

13   not -- I didn't write the name down -- that is not here --

14   does not represent -- not the L.P., but the Inc., et cetera.

15             MR. MARKOWITZ:  I believe that most of the records

16   that we would be seeking in this case would be resident with

17   SunAmerica and/or their affiliates or parent companies.

18             THE COURT:  Okay.  Okay.  And then on the

19   defendant's side discovery and this idea that you could be

20   deposing lawmakers?

21             MR. GARCIA:  Well, Your Honor, no.  I think -- I

22   didn't use the term "lawmakers" or "senators," but we do think

23   an important issue here and Judge Dearie acknowledges the

24   issue is the interpretation of a federal statute.  A lot of

25   this may simply be legal research right about from public

18

1   records that are available.

2           But to the extent that it is feasible and we are

3   able to find people with helpful firsthand knowledge about the

4   process, that might be something that we can discuss at that

5   time.  It's not something that we wanted to close out

6   prematurely.  I think the focus should be, however --

7           THE COURT:  Do you want to create your own

8   legislative history based on their recollections?  Is that

9   what you're talking about?

10          MR. GARCIA:  Right.  Or just simply for guidance in

11  terms of which committee to go to or which -- we don't know

12  yet, right?  I think there are some homework for the parties

13  to do whether it's through formal discovery or through

14  interviews to investigate what the process was, which

15  committee has addressed the law, where it was amended.  I

16  personally don't know the history -- that history yet, so I

17  think there is some homework for the parties to simply do to

18  investigate it.  That might be their own research for them.

19  That might involve some possible discovery.

20          THE COURT:  I'm skeptical about being able to do --

21          MR. GARCIA:  Okay.

22          THE COURT:  -- discovery of the legislature.

23          MR. GARCIA:  Understand that.

24          THE COURT:  But --

25          MR. GARCIA:  Yeah.  We wouldn't necessarily --

1          THE COURT:  -- we'll see.

2          MR. GARCIA:  So -- but that's one issue that we see

3   as a potential for discovery.  Other than that, Your Honor, I

4   don't think we disagree what the general area is, except that

5   I would have a key issue here is whether in our view the

6   plaintiff has satisfied the state law requirements to exercise

7   their right of first refusal and that involves a third-party

8   offer.  So I think that we will at least confirm when there --

9   that is -- that exists in any way in the nature of -- if it

10  exists, you know, documents surrounding that of how it came

11  about and what that offer is

12          THE COURT:  Do you agree that that's necessary and

13  if you do, was it made?

14          MR. MARKOWITZ:  The issue of whether a third party

15  has made an offer or not what something addressed by Judge

16  Dearie where he specifically said, why on earth would a third

17  party try to come in and buy this when he knows that our

18  client can exercise their right of first refusal for a dollar

19  and undercut any bid.

20          So the issue of whether a third party came in is not

21  actually relevant, we believe, but if anything it would be

22  within their own documents.  They're the ones who would be

23  soliciting those offers to sell or not since they have the

24  major decision authority pursuant to the operating agreements.

25          So I mean, I'm not even sure what we would be

1  discovering but, sure, if that's the topic they want to use in

2  discovery then we'll -- you know, we certainly can respond or

3  request certain documents that are necessary for that.

4        MR. MARKOWITZ:  So, Your Honor, it assumes that

5  there isn't third-party offers.  If that's the case that's --

6  that would be, I think, the discovery response if there is any

7  third-party offer.  It has been an issue in other cases that

8  have raised the same type of dispute about this -- a similar

9  property ownership.  In those cases some general partners have

10  solicited third-party offers in one way or another to try to

11  come within the requirements of state law.

12        MR. MARKOWITZ:  I mean -- I'm sorry.  I didn't mean

13  to interrupt you.  I apologize.

14        MR. GARCIA:  So I think the only issue is that's

15  something that we'll request for in discovery.  If it doesn't

16  exist that will simply be the answer.

17        MR. MARKOWITZ:  And I think we'll probably

18  reciprocate with that -- with -- because honestly if there was

19  a third-party offer it would have been made to then and if we

20  would actually --

21        THE COURT:  You would know about it.

22        MR. MARKOWITZ:  -- would like to know, you know, if

23  there was, but I don't think it's necessarily the turning

24  point of the case whether it was or wasn't.

25        THE COURT:  Okay.  So just in terms of the discovery

21

1  given that you have described multiple layers of ownership, is

2  it going to be an issue getting the discovery from these other

3  corporate entities?  Is that going to have to be done as third

4  party or non-party discovery or is there a more cooperative

5  approach here?

6           MR. MARKOWITZ:  Which corporate entities are your

7  referring to?

8           THE COURT:  Well, at a minimum there's the -- that's

9  the Stockholm 420 -- what's it called?

10          MR. MARKOWITZ:  Oh, the L.P.?

11          MR. GARCIA:  Oh, the partnership --

12          THE COURT:  Not the L.P. --

13          MR. GARCIA:  And both the general partners, Your

14  Honor, I would agree the --

15          THE COURT:  The general partner.

16          MR. GARCIA:  I believe in most cases --

17          THE COURT:  And in the L.P. that's not here,

18  although they don't seem to have a lot according to your

19  descriptions.

20          MR. GARCIA:  It's possible a general partner could

21  be involved in any feasible -- or any conceivable third-party

22  offer so that might be something that we have to request from

23  them.  It might just simply be an interrogatory.  But if

24  they're not a party, it might have to be done through a

25  subpoena of someone.

1          THE COURT:  Okay.  And then at some point there was

2    a transfer, is that right, in this -- a while ago --

3          MR. GARCIA:  I don't --

4          THE COURT:  I don't know if that's relevant.

5          MR. GARCIA:  I don't know of anything about that,

6    Your Honor.  I'm not sure what -- I think the plaintiff may

7    have misunderstood of a statement that was made by a

8    colleague.  We don't know of any transfer of ownership and --

9    and, Your Honor, it's not really relevant.  It's -- the issue

10   is really about a proposed transfer pursuant to right of first

11   refusal.

12         So our own client's internal structure is not

13   relevant to that issue.  The issue is simply whether the main

14   partnership, the deed holder can transfer the property as an

15   option pursuant to the --

16         THE COURT:  Right.

17         MR. GARCIA:  -- operating agreement.

18         THE COURT:  Okay.  One last question.  So what form

19   are you looking for this -- you want a declaratory judgment

20   or --

21         MR. MARKOWITZ:  So yeah.  Our complaint seeks a

22   declaratory judgment that we are the rightful [indiscernible]

23   holder and that we can exercise the right of first refusal

24   pursuant to its terms and ultimately we ask for the transfer

25   of the property to the plaintiff.

1          THE COURT:  So the follow-on is that there's no jury

2    demand here because it actually started in state court.  So

3    sometimes declaratory judgment cases do have jury demands

4    depending on what you think is going to be in dispute and

5    sometimes they don't.  If you think it's ultimately going to

6    be just a straight contract issue, but it sounds like there's

7    some facts in dispute so what is your position -- what are

8    your positions with regard to a jury?

9          MR. MARKOWITZ:  So to be honest, Your Honor, I

10   really haven't given the jury question at this point --

11         THE COURT:  Okay.

12         MR. MARKOWITZ:  -- a huge amount of thought because

13   the case started in Supreme Court obviously --

14         THE COURT:  Right.  Didn't ask --

15         MR. GARCIA:  -- and there wouldn't [ph.] be no a

16   jury demand at this point.

17         THE COURT:  Right.

18         MR. GARCIA:  But I mean, I'm okay with having a jury

19   demand in here and then we can -- the parties can always

20   agree, you know, when we approach trial to have it as a bench

21   trial instead.

22         THE COURT:  All right.  Well, let me just -- it's

23   like before you.  If either side is interested or any of the

24   parties are interested you should file a request for a jury,

25   so at least it's clear who is looking for it and then however

1  it plays out down the line we can go from there.

2         MR. MARKOWITZ:  We'll discuss it with our client,

3  Your Honor.  Thank you.

4         THE COURT:  Um-hum.

5         MR. MARKOWITZ:  And obviously with counsel.

6         THE COURT:  Okay.  So with regard to the dates you

7  propose, I'm going to push out the out that's no additional

8  parties and -- number four and amending the pleading, number

9  five to December 4th because you're not doing any initial

10  document request interrogatories until October 11th, I think

11  you should be able to review those responses before you have

12  to make a decision about adding any party.

13         The other dates are fine.  Out of curiosity, what

14  are the potential experts -- experts about?

15         MR. GARCIA:  Pardon me, Your Honor.  From defense is

16  they would simply -- it would simply be this extra -- if it's

17  not a factual issue it would be the legislative history that

18  might be relevant to interpretation.  But we haven't --

19  obviously I think it's still early on in the case for us to

20  determine what the need would be for experts.  There might

21  also be a need for valuation expert or issues just simply

22  surrounding the potential transfer.

23         MR. MARKOWITZ:  We would also propose possibly a

24  valuation expert.  We actually think the intent of the

25  Congress in passing this is actually not really an issue

1  that's going to be before the Court at the end of the day

2  because there was actually a recent decision that says

3  Congressional intent is something they didn't pass or what

4  they did wasn't necessary.

5          So we don't believe necessarily that we'll be an

6  expert in that but obviously they're going to bring what --

7  we'll have a counter expert, but a valuation --

8          THE COURT:  All right.  Let me [indiscernible] --

9          MR. MARKOWITZ:  -- does definitely suggests an

10 expert issue.

11         THE COURT:  I'm not -- yeah, I think that the

12 legislative history question should really be revisited about

13 what's the right way to raise that, if at all, down the line.

14         All right.  So leave it -- we'll leave the proposed

15 dates for the expert discovery in here, but we could revisit

16 it at a later date whether it's necessary.  If it's not

17 necessary then that would move up wrapping up discovery and

18 motion practice to a couple months earlier than it is right

19 now.

20         All right.  So we'll have a status conference

21 January 18th, 4:15, in person.  I'd like a status letter the

22 week before January 11th.  That's No. 13 on this form.  The

23 pretrial conference, you know, obviously you know how to do

24 all that.  For a motion practice with Judge Dearie on the

25 pretrial conference if you get beyond motion practice it will

26

1   be sent by Judge Dearie.

2          And last, but not least, is there any possibility of

3   working out a business deal instead of litigating?

4          MR. MARKOWITZ:  Your Honor, I mean, I never

5   foreclosed that possibility but I just don't see what the path

6   to that is at this point.

7          THE COURT:  I'm not sure I understand this all to

8   propose one, but I could dig deeper.  Go ahead.

9          MR. GARCIA:  And we're always willing to discuss,

10  Your Honor, so we'll consider any off -- any demand.  What I

11  do agree is that we have a -- we have a unique issue in this

12  case in that it seems to be a purely legal issue.  It's about

13  just interpretation of a statute and what is meant by the

14  terms "right of first refusal" in a federal statute.  There

15  have been cases that have come on both sides of that issue

16  already, so it's -- it is very important to the parties, but

17  it seems to be purely a legal issue, Your Honor.

18         So that's why I think it makes it difficult to

19  resolve because I think the parties still want to try out or

20  still -- and still in a developing area of law that the

21  parties are still assessing in terms of how to settle

22  ultimately.

23         MR. MARKOWITZ:  Your Honor, if I may, just to go

24  back one sec.

25         THE COURT:  Um-hum.

1          MR. MARKOWITZ:  I'm just looking at my calendar.

2   January 18th and January 11th seem to appear to be Saturdays.

3          THE COURT:  Oh, sorry.  Sorry.  What do I want?

4   January 15th.  Sorry.  Thank you.

5          MR. MARKOWITZ:  So the status conference will be --

6          THE COURT:  The 15th.

7          MR. MARKOWITZ:  -- January 15th.

8          THE COURT:  On the 8th.

9          MR. MARKOWITZ:  And January 8th for a conference

10  letter.

11         THE COURT:  Yeah, yeah.

12         MR. MARKOWITZ:  Thank you, Your Honor.

13         THE COURT:  Okay.  So just based on what you were

14  talking about with the possibility or lack thereof for a

15  settling, is there a way instead of doing all the work that we

16  just went over to tee up the question about the right of first

17  refusal and the -- the valuation, is that part of that

18  discussion or is that a -- I'm not sure why you need a

19  valuation.

20         MR. MARKOWITZ:  I think a valuation is probably the

21  follow-on issue after the right of first refusal.  When -- if

22  you're talking about teeing up the issue of the right of first

23  refusal I think you're referring to some sort of like partial

24  summary judgment.  Is that what you're referring to?

25         THE COURT:  I don't know if it would be partial or

1   not.  I mean, I don't have a handle on this whole thing, but,

2   you know, I'm following on the defendant's counsel's comments

3   that this is really a question of law which raises me, well,

4   they -- why are you going to spend a year on the facts.

5          MR. GARCIA:  Right.  No, and we might agree with

6   that, Your Honor.  I think it's Judge Dearie did indicate

7   formally during our oral argument that it seemed like this was

8   a summary judgment case and we don't disagree with that.  So

9   it's actually a possibility we have discussed -- we had

10  internally discussed the idea of the motion to dismiss, but

11  that seems to now be a good route to make a definitive ruling

12  on statutory interpretation.

13         So we will not be filing a motion to dismiss, but

14  that's something that I think we can go back to our clients

15  with and perhaps if it's appropriate to hold back -- if it's

16  appropriate to have a follow-up telephonic conference, we can

17  address it at that time if it makes sense to bifurcate our

18  schedule for a dispositive motion earlier on.

19         THE COURT:  Right.  I mean, as a general matter

20  for -- to get everything done, summary judgment, if -- you

21  know, if it resolves it, it resolves it.  But if it doesn't,

22  then you're ready for a trial.  Does it -- you know, jury or

23  bench, whatever it is.  But if it really is a pure question of

24  law --

25         MR. GARCIA:  Right.

1          THE COURT:  -- then I don't know what we're doing

2    with all this discovery.  And, you know, talk about it through

3    that lens and maybe that's not how you've been looking at it,

4    but if either of this discovery could be prioritized so that

5    it is about that whatever is relevant to that question are

6    there things that you actually agree on so you could come up

7    with the stipulated facts so that it would make sense to have

8    that intermediate motion practice?  You know, I mean, it would

9    be Judge Dearie's call and, you know, you've already had round

10   one on your motion practice.  I don't know if he wants round

11   two and three.

12          One thought is if you're both waiving the jury --

13   you know, if you think that's the way -- sometimes it makes

14   sense to collapse summary judgment practice into the bench

15   trial and just, you know, deal the facts and the issue

16   altogether, which doesn't answer the question about whether

17   you should do the damages; but it might be a way to -- I'm

18   sorry, if you should do that before you do the damages part of

19   this, but it just is another way to look at efficiencies here.

20          And that's -- sorry, one last question.  So given --

21   a couple of things about transferring the property: who has

22   the long-term property, whether there were offers, were there

23   any market-related or other business-related pressure for this

24   to be resolved on a quicker schedule?

25          MR. MARKOWITZ:  Actually, there is.  The --

1          THE COURT:  Okay.  We haven't talked about it.

2          MR. MARKOWITZ:  And this is why doing summary

3   judgment earlier actually is an intriguing possibility for us.

4   The property is in somewhat disrepair and part of the issue

5   that plaintiffs are facing is that we cannot refinance the

6   property to make the necessary repairs to make this building

7   run to low-income housing, supportive housing-type projects.

8   So, you know, just keeping it in good repair is important to

9   both us and the community.  But also, as the problem is, is

10  that they're not putting any extra money into the project to

11  try to fix up the project and we're not -- we're not in an

12  ability to refinance it with any of the city agencies because

13  we're -- they're not permitting us to exercise the right of

14  first refusal.

15          So to be perfectly honest, we are very intrigued by

16  the prospective of an early summary judgment motion and trying

17  to have this thing settled relatively quickly.

18          THE COURT:  I mean, that might, you know, be

19  something if you can figure out how to tee it up to raise, you

20  know, with Judge Dearie as a reason why this should be the

21  exception to the usual pattern it might -- I don't have a good

22  enough handle to know whether this point is correct, that this

23  is really a question -- just going to be a question of law, so

24  I can't comment.

25          But if you get to the point where you agree about

1    that and you just need, you know, which side of the

2    interpretation it's going to come down on, then --

3              MR. MARKOWITZ:  Judge Dearie actually raised the

4    issue during oral argument --

5              THE COURT:  He's smarter and more experienced than

6    I, so --

7              MR. MARKOWITZ:  He said as he -- pretty much as he

8    was leaving the bench, you know, "So is this teed up for

9    summary judgment at this point?"  That's almost the exact

10   quote.

11             THE COURT:  Um-hum.

12             MR. MARKOWITZ:  Pretty close to it.  And I think

13   Ms. Dolan, his colleague -- Ms. Dorcy's [ph.] colleague and I

14   looked at each other like I think our -- the natural

15   attorney's reaction is --

16             THE COURT:  No.

17             MR. MARKOWITZ:  -- summary judgment no, not yet.

18   But in reality it may be something that's teed up earlier than

19   later.

20             THE COURT:  So -- all right, so my last thing was,

21   should we check in, say, mid-November or would you have gotten

22   your initial responses to the document requests?  Do you have

23   a sense of where you're going in time to think about these

24   theories and what you're going to do to -- you know, if -- I

25   mean, if you have issues we could try to resolve them, but it

 1   would really be to talk about the process.  And we've set out

 2   a pretty long schedule, but is there something that --

 3            MR. MARKOWITZ:  We have no issue with that.

 4            MR. GARCIA:  Yeah, I agree.  That's -- it's

 5   agreeable to us, Your Honor.

 6            THE COURT:  Okay.  So how does Tuesday,

 7   November 19th at 12:30?  Just a phone call.

 8            MR. GARCIA:  Just want to check my calendar.  I'm

 9   sorry, Your Honor.  You said the 12th?

10            THE COURT:  The 19th --

11            MR. GARCIA:  19th.

12            THE COURT:  -- at 12:30.

13            MR. MARKOWITZ:  I'm good with that, Your Honor.

14            MR. GARCIA:  And that's fine for me as well.

15            THE COURT:  Okay.  All right.  Plaintiffs, you can

16   organize the call.

17            MR. MARKOWITZ:  That will be a call-in, Your Honor?

18            THE COURT:  It's you two call and then call

19   chambers.  So call each other and then call chambers.

20            MR. MARKOWITZ:  At 12:30?

21            THE COURT:  Yes.  Okay.  Anything else?

22            MR. GARCIA:  That's it from defendants or from my

23   clients.

24            THE COURT:  Okay.  All right.  How about plaintiff?

25            MR. MARKOWITZ:  I'm sorry.  I didn't hear that, Your

33

1  Honor.

2       THE COURT:  Anything else?

3       MR. MARKOWITZ:  Oh, no.  No.  I think we

4  [indiscernible], thank you.

5       MR. GARCIA:  Well, I guess -- Your Honor, just I

6  guess one last thing.  We want to confirm that our time to

7  respond to the complaint will be September 6th.

8       THE COURT:  Yeah, all those dates are fine on here.

9       MR. GARCIA:  Okay.

10       THE COURT:  If I didn't mention changing it.

11       MR. GARCIA:  Okay.  Thank you.

12       THE COURT:  Okay.  Thank you.

13       MR. GARCIA:  All right.  Thank you.

14       MR. MARKOWITZ:  Thank you, Your Honor.

15       MS. NACE:  Thank you.

16  (Proceedings concluded at 1:22 p.m.)

17              *  *  *  *  *  *  *  *

18

19

20

21

22

23

24

25

34

1          I certify that the foregoing is a court transcript

2    from an electronic sound recording of the proceedings in the

3    above-entitled matter.

4    _____

5

6                    Ruth Ann Hager, C.E.T.**D-641

7    Dated:  August 28, 2019

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25