

Brian J. Markowitz
(646) 768-4127
bmarkowitz@GoldsteinHall.com

November 8, 2019

**VIA ECF AND PERSONAL DELIVERY**
HONORABLE RAYMOND J. DEARIE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:  **Riseboro Community Partnership Inc., against SunAmerica Housing Fund No. 682, et al.**
            **Docket No. 18-cv-07261 (RJD)**

Hon. Judge Dearie:

      This office represents plaintiff in the above referenced action currently pending before your Honor. I am writing pursuant to Your Honor's Individual Motion Practice Rules IIIA and your Honor's October 31, 2019 Order, permitting Plaintiff's counsel to submit its letter opposition to Defendants' request for a pre-motion conference, seeking permission to file a motion for summary judgment. As more fully discussed below, such request is premature, and should not be entertained at the present time.

      Defendants' answer in this action, which was only filed on September 6, 2019, contained several counterclaims, assert causes of action that cannot be maintained and for which Plaintiff has sought permission to file a motion to dismiss. In response to Plaintiff's request for permission to file a motion to dismiss the counterclaims, and apparently believing that the best defense is a good offense, Defendants now seek permission to file its own summary judgment motion. However, this motion is premature, and even if it wasn't premature, permission should not be granted, as Defendants cannot show that there are no material issues of fact. Indeed, the entire case is currently mired in several issues of material fact, several of which require discovery, and none of which are currently ripe for summary judgment. Further underscoring the fact that discovery is still required is the fact that Defendants' themselves served discovery requests, conclusively showing that a request to file a summary judgment motion is premature.

      First, Defendants incorrectly state that the only interpretation of the parties right of first refusal is in accordance with New York common law. This very interpretation is belied by the fact that Defendants themselves previously moved this case into Federal Court because it believed that an interpretation of IRS code, 26 U.S.C. §42(i)(7) was necessary under Federal Law. Indeed, the very basis for their opposition to the motion to remand was that the interpretation of Section 42(i)(7) could not be made with respect to New York law, but rather interpreted under Federal Law, that it rose to a level of Federal Question Jurisdiction. Clearly, under Federal Law, the issue cannot be as cut and dry


Client Focused. Results Driven.

as Defendants now allege, but rather, the question of what the parties right of first refusal meant is subject to interpretation and is in and of itself ambiguous.

As your Honor pointed out at oral argument, Defendants' reading of the right of first refusal would vitiate the very intent of the right in the first place. Further, Defendants' reading of the right of first refusal would likewise destroy the very foundation of the entire LIHTC structure for governmental and nonprofit sponsors. Indeed, Defendants very argument herein is that despite receiving millions of taxpayer dollars over a 10-year period, that Defendants themselves, without regard to any rights of the not-for-profit organizations trying to perpetuate affordable housing, can take over the project at the end of the compliance period. Such an understanding did not form the basis of the parties' intent when they formed the deal and did not form the basis of the deal with the City/State regulatory agencies who extended loans and provided the regulatory framework under which the LIHTC were taken. Defendant's offer to invest in the subject property would not have been competitive if Defendant had not agreed to an orderly transfer of the property to the Plaintiff at the expiration of the Compliance Period at the Section 42 minimum purchase price.

Defendants' requested interpretation of the right of first refusal leaves the not-for-profit entity or its designee (here, the Plaintiff) with no way to ever exercise the right of first refusal. Again, as your Honor correctly pointed out, no purchaser would spend the time and money necessary to make an offer, knowing that the right of first refusal at the predetermined price would undercut any amount the purchaser could offer, especially where here the underlying project has negative cash flow. Further, Defendants interpretation leaves them in the sole position to refuse any offer, thus never triggering the right of first refusal. Either scenario is abhorrent to the rights of Plaintiff. As New York law makes clear, "[i]n construing a contract, one of a court's goals is to avoid an interpretation that would leave contractual clauses meaningless." *Two Guys from Harrison-N.Y., Inc. v S.F.R. Realty Assoc.*, 63 NY2d 396, 403 (1984); *US Bank Nat'l Assoc. v. Lightstone Holdings LLC*, 103 A.D.3d 458, 459 960 N.Y.S.2d 18 (1st Dep't 2013), *quoting 150 Broadway N.Y. Assoc., L.P. v Bodner*, 14 AD3d 1, 6 (1st Dept 2004) ("It is a cardinal rule of contract construction that a court should avoid an interpretation that would leave contractual clauses meaningless. Stated otherwise, [c]ourts are obliged to interpret a contract so as to give meaning to all of its terms.") Further, none of the cases cited by Defendants interpreting the right of first refusal are on point, as none of the cases deal with the situation presented herein, where the holder of the right of first refusal has a fixed, below market price, to exercise its rights.

Contrary to Defendants' self-serving, cut and dry interpretation, the use of the term right of first refusal is clearly subject to a separate interpretation. Such ambiguity, as to what the parties intended when they drafted the agreement, and what the term right of first refusal actual means within this context requires discovery before a summary judgment motion can be entertained. Indeed, document discovery and/or depositions of the representatives of the parties – the identity of which hasn't even been ascertained with respect to the Defendants – as to what was intended when they entered into the underlying partnership agreement is clearly necessary. Further, discovery from the regulatory agencies may be necessary to determine what was intended by them when they permitted millions of dollars of taxpayer money to be used to create this project and under whose programmatic goals and regulations the partnership agreement was designed to satisfy. Such evidence is clearly

Goldstein Hall PLLC
New York City Office: 80 Broad Street, Suite 303, New York, NY 10004
Hudson Valley Office: 175 Huguenot Street, Suite 229, New Rochelle, NY 10801
NYC 646.768.4100  HV 914.713.6402  F 646.219.2450  E info@goldsteinhall.com  W www.goldsteinhall.com



necessary and appropriate to resolve the latent ambiguity found in the partnership agreement. *JA Apparel Corp. v Abboud*, 568 F3d 390, 404 (2d Cir 2009)

Further, Defendants' interpretation of the right of first refusal as required by Section 42 is purposely narrow. However, such an interpretation cannot be viewed myopically, but must be viewed in the broader context. The Section 42 right of first refusal is a deliberate federal policy of promoting the preservation of affordable housing through a below-market purchase price for a nonprofit organization such as Plaintiff. *See Report of Mitchell-Danforth Task Force on the Low-Income Housing Tax Credit* 19, January 1989. While Defendants claim that Plaintiff's interpretation would require the "creation of new common law", nothing can be further from the truth. Indeed, the entire LIHTC industry, since the implementation of Section 42 has revolved around the return of the project to the not-for-profit upon the expiration of the Compliance Period. This interpretation has formed the underlying basis of LIHTC deals since Section 42 became law. Indeed, neither the IRS nor the State of New York has ever challenged a Section 42 transfer to a not-for-profit or governmental entity on the basis of a lack of a bona-fide offer. It is only now, that financial institutions like Defendant SunAmerica, are seeking additional avenues of revenue, that after taking millions in tax credits, are now challenging the very underpinning of the deal which they willingly participated and which they knowingly agreed to exit. As such, further discovery is necessary with respect to experts testimony/reports regarding the nature of the LIHTC tax credits, the purpose and history of the Section 42 right of first refusal, and its exercise. Such testimony is clearly necessary to resolve the latent ambiguity found in the partnership agreement. *Revson v. Cinque & Cinque, P.C.,* 221 F.3d 59, 66 (2d Cir.2000) ("[a]mbiguous language is language that is 'capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'")

Accordingly, Defendants' request to file a summary judgment motion must be denied at the present time, as such request is premature, because discovery in necessary to first determine the latent ambiguity inherent in the term right of first refusal used by the parties in light of its meaning under Section 42 and within the overall context of a LIHTC project.

Very truly yours,

S/ *Brian J. Markowitz*
Brian J. Markowitz

CC: Nixon Peabody LLP
      Attorney for Defendants
      Attn: Louis E. Dolan, Jr.
            Juan Luis Garcia
      Via ECF