1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - X
                                        :
                                        :
RISEBORO COMMUNITY           :18-CV-07261 (RJD)
PARTNERSHIP, INC.,           :
                                        :
          Plaintiff,         :
                                        :United States Courthouse
                                        :Brooklyn, New York
     -against-               :
                                        :
                                        :Tuesday, November 26, 2019
                                        :11:00 a.m.
SUNAMERICA HOUSING FUND NO.  :
682, et al.,                 :
                                        :
          Defendants.        :
                                        :

- - - - - - - - - - - - - - - X


     TRANSCRIPT OF CIVIL CAUSE FOR PRE-MOTION CONFERENCE
       BEFORE THE HONORABLE RAYMOND J. DEARIE
          UNITED STATES SENIOR DISTRICT JUDGE


                  A P P E A R A N C E S :

For the Plaintiff:    GOLDSTEIN HALL, PLLC
                         80 Broad Street
                         Suite 303
                         New York, New York 10004
                      BY:BRIAN J. MARKOWITZ, ESQ.
                         DAVID GOLDSTEIN, ESQ.


For the Defendants:   NIXON PEABODY, LLP
                         799 9th Street, NW
                         Suite 500
                         Washington, DC 20001-5327
                      BY:LOUIS E. DOLAN, ESQ.


          SAM     OCR     RMR     CRR     RPR

2

```
 1                  A P P E A R A N C E S:   (Continued)
 2

 3

 4   For the Defendants:    NIXON PEABODY, LLP
                            55 West 46th Street
 5                          24th Floor
                            New York, New York 10036-4120
 6                        BY:SHELBY NACE, ESQ.

 7

 8

 9

10

11

12   Court Reporter:   Stacy A. Mace, RMR, CRR, RPR
                        Official Court Reporter
13                      E-mail:  SMaceRPR@gmail.com

14   Proceedings recorded by computerized stenography.  Transcript
     produced by Computer-aided Transcription.
15

16

17

18

19

20

21

22

23

24

25
```

```
                         Proceedings                      3
```

1                       (In open court.)

2              THE COURTROOM DEPUTY:  All rise.

3              (Judge RAYMOND J. DEARIE entered the courtroom.)

4              THE COURTROOM DEPUTY:  I am going to ask the

5       attorneys please to come up to the podium.

6                   We are on this morning for a pre-motion conference.

7       This is Riseboro Community versus SunAmerica Housing, Docket

8       Number 18-CIV-7261, assigned to Judge Dearie and Magistrate

9       Judge Scanlon.

10                  Can I ask the attorneys please to note their

11      appearance, beginning with counsel for plaintiff?

12                  Why don't you come up here.  Thank you.

13             MR. GOLDSTEIN:  David Goldstein from Goldstein Hall,

14      PLLC, 80 Broad Street, Suite 303, New York, New York 10004.

15             THE COURT:  Welcome.

16             MR. GOLDSTEIN:  Thank you, Your Honor.

17             MR. DOLAN:  Good morning, Your Honor.  My name is

18      Louis Dolan.  Nice to see you again.  I represent to

19      SunAmerica Housing Fund No. 681 and SLP Housing, I, LLC.  I'm

20      with the law firm of Nixon Peabody from Washington, D.C.

21                  And Your Honor has graciously granted my ability to

22      appear in this matter on a pro hac vice motion.  Thank you.

23             THE COURT:  You're welcome.  I would have granted

24      your appearance to appear by telephone too, but it is nice to

25      see you in person.

Proceedings                                      4

1          MR. DOLAN:  I understand that, Your Honor, that that

2     was one of my options, and I appreciate the opportunity to

3     appear in person.

4          MR. GOLDSTEIN:  Your Honor, if I may just be heard.

5          THE COURT:  Let the lady introduce herself.

6          MR. GOLDSTEIN:  Oh, I'm sorry.

7          MS. NACE:  Good afternoon, Your Honor.  My name is

8     Shelby Nace on behalf of defendant SunAmerica and SLP Housing

9     with Nixon Peabody, the New York office.

10         THE COURT:  Yes, sir.

11         MR. GOLDSTEIN:  Yes, I'm sorry, Your Honor.

12         My partner Brian Markowitz, who is the lead counsel

13    on this, is not here right now.  I am just merely here as a --

14         THE COURT:  So you are stuck.

15         MR. GOLDSTEIN:  I am kind of stuck.  I wanted to see

16    if I could reach him, if that's possible.  If I could get five

17    minutes.  My cell phone is downstairs.

18         THE COURT:  Your cell phone is downstairs?

19         MR. GOLDSTEIN:  Yes.  I haven't been in federal

20    court in about 15 years, Your Honor.  I don't -- I'm a

21    transactional attorney.  I don't litigate.  So I don't have

22    the standard attorney ID to appear in court.  I apologize

23    about that.

24         THE COURT:  It's all right.

25         THE COURTROOM DEPUTY:  Sir, if you give me --

Proceedings                                    5

1        THE COURT:  Did you expect to have him here?

2        MR. GOLDSTEIN:  Yes.  He was supposed to be here,

3   yes.

4        THE COURT:  Where are you going, Ellie?

5        THE COURTROOM DEPUTY:  I am going to get his phone

6   so he can call his partner.

7        MR. GOLDSTEIN:  Just to find out what happened.  I

8   apologize, Your Honor.  I could attempt to argue.

9        THE COURT:  I was about to apologize to you folks

10   for getting on the bench two minutes late because I generally

11   am very prompt.

12        Well, we will give him a few minutes.  I have got to

13   get moving, I have another matter.

14        To me, looking at these papers, there is one

15   fundamental question that dominates the scene here.  I don't

16   know about malicious interference with contractual relations,

17   I mean that seems like a bunch of nonsense to me, frankly.

18   That is not a ruling.  Somebody has a view as to the

19   interpretation of a contract, brings a lawsuit seeking a

20   declaration.  That, to me, does not add up to malicious

21   interference.  But what dominates here is this so-called right

22   of first refusal.

23        Once that issue is resolved, this case is going to

24   resolve itself, right?

25        MR. GOLDSTEIN:  That is correct.

Proceedings                                              6

1          THE COURT:  So why don't we just simply limit

2    ourselves, let's brief that question and get it resolved.

3          Does that make sense?

4          MR. DOLAN:  Yes, Your Honor.

5          THE COURT:  We are making progress here.  I don't

6    want to get you in Dutch with your partner, but there is not

7    much to talk about.

8          What is the authority, we had this discussion once

9    before, what is the authority for abandoning the express

10   language of the contract in favor of a discussion as to the

11   motivations behind these transactions, tax-wise, et cetera?

12         I mean fundamental contract interpretation, unless I

13   am missing something, is you take the language.  If it's clear

14   on its face, that is the end of it.  That is sort of where I

15   am coming out here.

16         MR. DOLAN:  From the defendants' point of view, we

17   agree with Your Honor.

18         THE COURT:  I am shocked to hear that.

19         MR. DOLAN:  And that position, of course, is

20   supported also by the language of the contract, which says

21   that 1605 is the fully integrated agreement and memorializes

22   the agreement of the parties, to the exclusion of any other

23   understandings or materials, unless they form a part of this

24   contract.  And they simply do not.

25         MR. GOLDSTEIN:  So, Your Honor, granted I'm not a

                        Proceedings                        7

1   litigator, but I am familiar enough with the case.

2            We tend to disagree here.  This is -- Low Income

3   Housing Tax Credit Program is a special program which is

4   regulated here, in this case, by the New York State agency

5   that oversees it.  We are talking about significant subsidy

6   dollars and federal tax relief that the investor got, which

7   is -- which is under the tax code, itself.  This program was

8   formed under Section 42.

9            THE COURT:  I understand all of that.

10           MR. GOLDSTEIN:  Right.

11           THE COURT:  In fact, I have a little familiarity

12  with it.  Not as much as you, I know a little bit about the

13  program.  But so what?

14           MR. GOLDSTEIN:  So, Your Honor --

15           THE COURT:  Why didn't you write it differently?

16           MR. GOLDSTEIN:  Well, firstly, we weren't counsel

17  then.

18           THE COURT:  Good.

19           MR. GOLDSTEIN:  Right, so we would have written it

20  differently.

21           The contract, itself, is not the standard language

22  that you would see in today's partnership agreements.  This

23  was an earlier agreement.  I'm not sure why it was drafted in

24  such a, to me, not following what the code would presume to

25  state, but the intent of the parties is it is important here

Proceedings                                                  8

1  because the state wants it to be maintained as affordable low

2  income housing.  The investor here does not.  The investor is

3  taking a position which is contrary to the purpose of the

4  statute.  They get ten years of deductions, tax deductions.

5  Then at the end of the compliance period, 15 years, they are

6  supposed to exit for a nominal amount.

7          THE COURT:  Maybe that is your partner texting you

8  that he is stuck.

9          MR. GOLDSTEIN:  Yes, probably.  For a nominal

10 amount.  And what --

11         THE COURT:  You would agree that on its face it

12 seems pretty clear, nothing ambiguous about the language,

13 right, of first refusal?  We all know what that is.

14         MR. GOLDSTEIN:  Well, Your Honor, they're not

15 letting our client exercise the right to take -- to have the

16 option to take the project.

17         So their position is contrary --

18         THE COURT:  And his response is going to be your

19 client did not contract for that right, your client contracted

20 for a right of first refusal.

21         I don't want to take advantage of you.  You seem to

22 be perfectly competent on the subject, to be honest.

23         Any idea where your colleague is?

24         MR. GOLDSTEIN:  Yes, I am going to take a look right

25 now, sorry, Your Honor.  I didn't want to be rude.

1          THE COURT:  You know, I do have a feeling somehow I

2    am missing something, to be candid, but I can't get past this

3    language.

4          MR. GOLDSTEIN:  He seems to be stuck, Your Honor, I

5    apologize.

6          THE COURT:  He's stuck?

7          MR. GOLDSTEIN:  Yes.

8          THE COURT:  Stuck where?

9          MR. GOLDSTEIN:  In court, in Supreme Court, New York

10   State Supreme.

11         THE COURT:  So we are waiting for Godot, I see.

12   Okay.

13         MR. GOLDSTEIN:  But, Your Honor, I think what's

14   important here is that the -- you have to look at the totality

15   of the situation.  There is a regula -- state regulatory

16   agreement, which talks about that this project is supposed to

17   be maintained as affordable housing with the intent that our

18   client, Riseboro Community Partnership, a non-profit

19   developer, is supposed to be able to own the project, at the

20   end of the day maintain it as affordable housing.

21         SunAmerica's position, basically, thwarts that

22   attempt to do that.  Their position is that no, you can't do

23   that under the basis of this agreement and under the statute.

24   But that flies in the face of -- in contrary to the whole

25   entire purpose of the program.  And by doing that, this sends

Proceedings                                              10

1   a message, a chilling effect actually, through the whole

2   entire tax credit community that non-profits are not going to

3   have the rights that they're supposed to have to be able to

4   take the investor out for a dollar. And if that happens, this

5   throws the whole entire program into chaos. That's not what

6   is intended by the program, the state here, in New York State.

7           THE COURT: I understand.

8           MR. GOLDSTEIN: And that's a really chilling effect

9   on affordable housing.

10          THE COURT: I understand what you're saying, but I

11  keep getting stuck on this schoolboy adage of take the

12  language as you find it.

13          Anything you want to add to your position, other

14  than you're glad you made the trip?

15          MR. DOLAN: Other than -- other than we agree with

16  Your Honor.

17          I mean, the position made by the plaintiff is that

18  the state has a certain desire or certain intent. Right, the

19  state is not a party to this contract. Right?

20          The state does have a regulatory agreement that

21  preserves this property as affordable housing property for a

22  substantial period of time after the expiration of what we

23  call the initial compliance period. So the state's interest

24  is well protected.

25          THE COURT: For how long?

1          MR. DOLAN:  In this particular case, it's probably

2     at least another 15 years.  Current deals are probably a total

3     of 30 to 45 years where the property in New York State is

4     required to be an affordable property; right.  That is part of

5     the consideration that is given to the state in exchange for

6     an allocation of the credits, just speaking in general.

7          And so typically what happens in these deals is that

8     there is what's called an Extended Use Agreement that is

9     recorded among the land records.  It runs with title.  And it

10    restricts and prohibits the use of the property for anything

11    other than low income or affordable housing, right, in

12    accordance with the desires of the state for a substantial

13    period in excess of the original 15-year period.

14          So that is the instrument that is out there that is

15    expressly designed to protect and effect the rights that the

16    plaintiff says the state has in this project and in this

17    interest.

18          They know how to protect themselves.  The parties to

19    the contract knew how to contract.  They elected to contract

20    for a right of first refusal.  As a matter of tax law, they

21    could not have contracted for a below-market price option,

22    right, because that would have defeated the tax benefits.

23    Right?  And, in fact --

24          THE COURT:  The incentive for you folks is the tax

25    benefit?

Proceedings                                    12

1          MR. DOLAN:  That's one, but there are other

2     incentives as well.  Partly they obtain some cash flow from

3     the property just through normal operations, collecting rents

4     and so forth.  They, in some instances, collect additional tax

5     benefits.  For example:  Deductions, depreciation,

6     amortization, things like that.  And also, they are entitled

7     as business people to realize, if it happens, as sometimes it

8     does in these projects, appreciation in the value of the

9     underlying real estate.  That is not always the case.  There

10    are plenty of these projects in other parts of the country

11    typically that do not appreciate as we see in the New York

12    City market, but those are all sort of a basket and bundle of

13    benefits that people who invest in these deals expect to have

14    for a period of time.

15          There is absolutely nothing that prohibited these

16    parties when they contracted from contracting for an option at

17    fair market value, right, not below fair market value, but at

18    fair market value.  So that the plaintiff here would have the

19    absolutely right to come in and purchase the property, not at

20    the beneficial price that it would like to be able to buy it

21    for now.  They could have contracted for that.  They knew how

22    to do that.  They didn't.

23          Similarly, Your Honor, what I would say is Congress

24    knew very well how to use the word "option" in the 42(i)(7)

25    legislation when that was adopted back in the 1980's.  And, in

1   fact, the very paper cited by my colleague at the bar here to

2   this Court indicates that in the 1980's Congress specifically

3   considered adoption of the word "option" "at the same time

4   they were considering adoption of the words "right of first

5   refusal," and they rejected the use of the term "option."

6   Right, and so that is a matter of the legislative history.

7   There is no particular discovery that is required on that.

8          We can provide you with a copy of that particular

9   bill, which found its way to the Senate floor and was not

10  acted on in favor of the right of first refusal.

11         And in addition, the current legislative history is

12  such that Congress is currently considering a bill known as

13  the Cantwell-Hatch bill, which would have the effect, at least

14  in part, of changing the "right of first refusal" language

15  that exists in the code to "option."  Right?  But they have

16  not enacted that, right, and Congress is not about the

17  business of going through frivolous activities changing words.

18         At least in this respect I would say, Your Honor,

19  perhaps that remark was a bit too broad, I apologize, but at

20  least in this respect:  If Congress thinks that there may need

21  to be a change, right, they are going to change the

22  legislation for a particular reason or to satisfy a particular

23  result, and so it is patently apparent that Congress knew what

24  it was doing when it adopted right-of-first-refusal language

25  in 42(i)(7).  It rejected the term "option" within that

Proceedings                                           14

1   context, and currently is considering the possibility of now

2   changing that language that's in the code to "option."  All of

3   which completely supports Your Honor's position, I think,

4   which is this language is right-of-first-refusal language.

5   That is a special instrument recognized in the law.  It has

6   been for years and years and years.  It has a special meaning

7   under the law.  And when Congress determined and decided to

8   adopt that language in 42(i)(7), it took with it, right, all

9   of the common law that was associated with that concept and

10  did not ask, for example, this Court to create a new body of

11  federal law around that concept because there was already

12  state law in every jurisdiction in the country, frankly, that

13  tells practitioners and business people what a right of first

14  refusal is in that jurisdiction."

15          MR. GOLDSTEIN:  Your Honor, I, obviously, disagree,

16  respectfully disagree.

17          THE COURT:  Well, you don't disagree on one thing,

18  the object here, the objective here --

19          MR. GOLDSTEIN:  Yes.

20          THE COURT:  -- is to provide low income housing.

21          MR. GOLDSTEIN:  That is absolutely correct.

22          THE COURT:  And there is nothing about the

23  instruments, and I am not ruling on this, I am just giving you

24  my reaction.  As I see it, there is nothing about the

25  instruments, if counsel is correct, that undermines that goal.

Proceedings                                      15

1          MR. GOLDSTEIN:  But, Your Honor, I would disagree

2    because I think the interpretation that counsel is taking is

3    that, yes, no one really truly understands why Congress didn't

4    do "option."  I don't know whether it was the more politically

5    correct thing at the time to do "right of first refusal."

6          If we go back to the beginning of the statute, that

7    was added after the statute was enacted in '86, because there

8    were many amendments.  There were two amendments after '86

9    when the statute was created.  And I think to create -- clean

10   up the gaps, because the states wanted to make sure that these

11   projects were -- primarily in the beginning were going to

12   non-profit organizations and they wanted to maintain

13   affordable housing.

14         So I think a compromise is what happens because the

15   way the right of first refusal is written in the statute, it

16   talks about a below-market price.  But how is that a true

17   right of first refusal?  It's not talking about fair market

18   value, it talks about there's -- you're able to obtain the

19   property for a dollar, assumption of the debt and paying any

20   of the investors' exit taxes.  That's not fair market.

21         And what the investor here wants to do is create a

22   fair market value, which cannot be supported in these

23   projects.  These projects are below-market rents.  They --

24   many of them have long-term regulatory agreements.  But the

25   belief here, and which I believes really is driving the

Proceedings                                       16

1  defendants' cause here, is that just happens that this

2  building is in an area of Brooklyn which is appreciating in

3  great value.  At the time, over 15 years ago, it was not such

4  a good neighborhood.  But investor --

5            THE COURT:  Where is it again?

6            MR. GOLDSTEIN:  It's in the Ridgewood/Bushwick area

7  of Brooklyn.

8            THE COURT:  I can't believe my daughter lives in

9  Bushwick.

10            MR. GOLDSTEIN:  Right.

11            THE COURT:  When I was a young prosecutor Bushwick

12  was sort of action central.

13            MR. GOLDSTEIN:  Right.

14            So, Your Honor, a lot of these investors see

15  opportunity.  New York City, 15, 20 years ago, besides outside

16  of Manhattan, was not extremely valuable property.  Who knew

17  today Brooklyn would be sitting on a gold mine?

18            (Mr. Markowitz entered the courtroom.)

19            MR. GOLDSTEIN:  And so the investor, when they say

20  they're a long-term holder of assets, that's not the intent of

21  the program, for the investor to be a long-term holder of

22  assets.  It's the intent of the non-profit to get the property

23  at a below market.  Yes, they did not use of the word

24  "option," but the right of first refusal, in essence, is an

25  option here and our client is exercising that right.

Proceedings                                          17

1          THE COURT:  Mr. Goldstein has, in your absence,

2    conceded the point and we've settled the case.

3          MR. MARKOWITZ:  Your Honor, I apologize.

4          THE COURT:  At least, we got a smile out of you.

5          MR. MARKOWITZ:  I apologize, Your Honor.  We had a

6    case in Supreme Court that could not be moved and the person

7    who was supposed to handle it got called into the Bronx on

8    another case that could not be moved.  So, I apologize.

9          THE COURT:  That's okay.

10         Well, we have just been having sort of an informal

11   back-and-forth here.  I think we've reached, at least, this

12   common understanding, that this case is driven by the question

13   of how one reads the right of first refusal as articulated in

14   the contract.

15         And even though Mr. Goldstein tells me he is not a

16   seasoned litigator, he has done a pretty good job stating your

17   position --

18         MR. MARKOWITZ:  I had not --

19         THE COURT:  -- which I had, frankly, some difficulty

20   with.  But I think we ought to focus on that question, get it

21   resolved, and see where that gets us.

22         MR. MARKOWITZ:  On the question of how to exercise

23   the right of first refusal?

24         MR. GOLDSTEIN:  Yes.

25         MR. MARKOWITZ:  Okay.

Proceedings                                18

1          So that question is actually a question that

2    wouldn't -- it's not -- while that is one of the major

3    questions in this case, it's not the question that's ready for

4    summary judgment at this point.  And that's the issue that we

5    took exception with in their letter, which was against our

6    request for the motion to dismiss.

7          Okay, the reason that their question about the

8    motion for summary judgment is not ready, there is many issues

9    here regarding what -- how this right of first refusal and

10   what the parties agreed to and what they understood at the

11   inception of the contract.

12         THE COURT:  Let me stop you, and I will give you

13   back the floor.

14         But fundamentally, contract interpretation, we start

15   with the language.  Right?  Contracts are Contracts 101.  I

16   can see David Garland preaching that gospel to me a thousand

17   years ago.  We start with the language.  Right?

18         Is there anything ambiguous about that language?

19         MR. MARKOWITZ:  Yes, that's the issue.

20         THE COURT:  Well, if I were to agree with you, then

21   maybe we do, maybe summary judgment isn't.

22         My inclination is you're wrong, but that is not a

23   ruling, that is just my reaction to what I have read in your

24   letters and the text of the contract.

25         MR. MARKOWITZ:  As we said, or as Your Honor

1    correctly pointed out the last time we were here before you on

2    the motion for remand, their interpretation of the contract,

3    which would have the right of first refusal only exercisable

4    upon this bona fide offer that they had the sole power to

5    reject or accept, would leave the contract provision

6    meaningless.  It would never be exercised because underlying

7    the right of first refusal, and what's not present in any one

8    of the New York cases that are out there or to which they've

9    cited, is the fact that the underlying purchase price, the

10   exercise price of that right of first refusal is an extremely

11   below market number of the assumption of the debt, plus a

12   nominal fee, and potentially some exit taxes.  Okay?

13          As Your Honor correctly pointed out the last time we

14   were here, no bona fide purchaser is going to come in here,

15   spend the time for an appraisal, spend the money for an

16   appraisal, spend the time and money to put together an offer,

17   make the offer, only to get it rejected; or even if it's not

18   rejected, to have it surpassed by this extremely below market

19   number, which they can never -- a bona fide purchaser would

20   never have been able to attain.

21          As of that, that by itself means that this New York

22   law on right of first refusal that they are relying so heavily

23   on, despite the fact that they're the ones who said this was a

24   federal question and should be done under the federal law,

25   which is the interpretation of how Section 42 is, now they

1    want to revert back to New York law, but that being said, none

2    of those -- those cases deal with what -- the issue here,

3    which is what we have, this interest, which as I heard my

4    partner talking is, in essence, operates as an option, but as

5    that number is so low, there can never be a bona fide offer.

6             Also Contract 101, as I learned it, you know, with

7    Professor Crea, was that we had to come in and you cannot have

8    a piece of a contract be meaningless.  You have to interpret

9    the words of the contract so that it actually has meaning and

10   intent.

11            If you -- if we agree with their position under the

12   New York law that this is a common law, regular, ordinary,

13   garden variety right of first refusal, then that means that

14   that entire provision has no meaning, has no intent, it can

15   never be exercised.  And that is not what the Section 42 ROFR

16   was about.  That's not what the parties intended when they

17   entered into this agreement.  That's not what the agencies

18   intended when they extended millions of dollars of loans to

19   the project.  That's not what they agreed to when they took

20   their millions of -- tens of millions of dollars' worth of tax

21   credits as part of this.

22            THE COURT:  Okay, I see your point, but I suggest

23   that we, in my view, turn to the head question.  Let's brief

24   it.  If I somehow come to believe that we are premature in

25   addressing it at this point, then we will move on to

1  discovery.

2          Where are you on discovery?

3          MR. DOLAN:  Your Honor, the defendants, we -- the

4  parties are under court order to initiate discovery.

5          THE COURT:  In other words, no place.

6          MR. DOLAN:  Strictly in compliance with that court

7  order, we have served initial disclosures and initial sets of

8  discovery because we wanted to comply and to be in compliance

9  with the court order.  We are certainly happy to hold those

10 materials in abeyance.  I don't think they are necessary,

11 but --

12         THE COURT:  Let me stop you a second.

13         What about this point:  Read as a standard garden

14 variety right of first refusal, your colleague here argues it

15 renders, essentially, the agreement meaningless.

16         Do I paraphrase you awkwardly, Counsel?

17         MR. MARKOWITZ:  No, that's pretty much the point.

18         MR. DOLAN:  That is fundamentally incorrect.  It may

19 not have every meaning in the book that they want it to have,

20 right, but there are any number of circumstances.  In fact,

21 the circumstance in the very case that they rely on, right,

22 which is the HRI decision out of Massachusetts, the facts of

23 that case are exactly what Mr. Markowitz told you could never

24 happen because there was, in fact, a third-party offer that

25 was advanced in that specific case.

1          Now, this case is different, in that the plaintiffs

2     here have not bothered to get an offer at all.  Whether it's a

3     bona fide offer, an offer for $10, right, a good faith offer,

4     none of that.  They have simply said that this language,

5     right, in 42(i)(7) excuses that.

6          There are any number of rights of first refusal --

7          THE COURT:  I get you.  I get your point.

8          MR. MARKOWITZ:  Your Honor, if I may just respond to

9     that briefly.

10         THE COURT:  I guess we are not going to need

11    argument after this.

12         MR. MARKOWITZ:  In the Homeowners Rehab case that he

13    just cited, the issue there was specifically, the

14    right-of-first-refusal language specifically and explicitly

15    required an offer.  Don't have that here.

16         THE COURT:  Well, he is going to say when you say

17    right of first refusal, that, if not explicitly, certainly

18    implicitly with a capital I requires some third-party offer.

19         All right, we are not going to resolve it now.  You

20    know where I am thinking.  Let's brief that question and go

21    from there.  Let's brief that question.  There's other stuff,

22    motions to dismiss that I recall.  Let's brief that question

23    and we will see where we come out.  The case could readily

24    resolve itself, it seems to me.

25         And if you think I am wrong, tell me.  Now is the

Proceedings                                          23

1   time.   Now is the time.

2            MR. MARKOWITZ:  Well, I think the problem is, is

3   that in order to properly brief it, there needs to be

4   depositions of parties --

5            THE COURT:  You are dying to get behind that

6   language, aren't you?

7            MR. MARKOWITZ:  You know, there has to be

8   depositions on what the parties intended when they entered

9   into the contract.

10           THE COURT:  Well --

11           MR. DOLAN:  And, Your Honor, on that point I would

12  just, again, refer the Court back to Section 1605 of the

13  Partnership Agreement, which says specifically:  This

14  agreement sets for the --

15           THE COURT:  Understood.  I understand your point.

16           Well, I cannot tell him not to file a motion on

17  this, but I think it makes sense to address this question.

18  And if I eventually agree with you that somehow we get past

19  this language, then the intent of the parties becomes quite

20  relevant, of course.

21           So let's do that.

22           MR. DOLAN:  Thank you, Your Honor.

23           THE COURT:  Let's do that, and do it in a streamline

24  fashion so we get this case moving.

25           Who is the Magistrate?

SAM      OCR      RMR      CRR      RPR

```
                    Proceedings                    24
```

 1            MR. MARKOWITZ:  Judge Scanlon.

 2            MR. DOLAN:  Judge Scanlon.

 3            THE COURT:  Judge Scanlon, okay.

 4            MR. DOLAN:  We are to appear in front of her at

 5    12:45 this afternoon.

 6            THE COURT:  Today?

 7            MR. DOLAN:  Yes, unless you can assist us with that.

 8            THE COURT:  I will try.  I don't know what her

 9    calendar is, but I will try.

10            MR. MARKOWITZ:  I believe her original intent, if

11    you remember correctly, when we were before her the first time

12    there was -- she'd actually asked us for -- we put down for a

13    telephone conference regarding whether there should be a

14    motion for summary judgment early in the case or not.

15            And after filing all these letter requests, she

16    turned that into a in-person conference, but I don't know if

17    she realized that we were in front of you in that same morning

18    on the same issue.  So I'm not even sure if it was necessary.

19            THE COURT:  I assume you can agree on a briefing

20    schedule?

21            MR. MARKOWITZ:  Yes.

22            MR. DOLAN:  Yes, of course.

23            THE COURT:  Why don't you do that, and let me go

24    place a phone call and see if I can get you in there and I

25    will come back.

Proceedings                                                25

1          MR. MARKOWITZ:  Your Honor, if I could just ask you

2    one question?

3          THE COURT:  Sure.

4          MR. MARKOWITZ:  I just want to know exactly the

5    narrow issue.  I just want to be clear on the narrow issue

6    that we are briefing, and I just want to be clear on that.

7          THE COURT:  The narrow issue is the interpretation

8    of the right of first refusal.

9          MR. MARKOWITZ:  Okay.

10         THE COURT:  Is it anything other than a right of

11   first refusal in the classic sense, if you will.

12         I will get ahold of Judge Scanlon and we'll come

13   back.

14         MR. DOLAN:  Thank you, Your Honor.

15         MR. MARKOWITZ:  Thank you, Your Honor.

16         (Judge RAYMOND J. DEARIE exited the courtroom.)

17         (Recess taken.)

18         (Judge RAYMOND J. DEARIE entered the courtroom.)

19         (In open court.)

20         THE COURT:  I called and, of course, got voicemail,

21   which means they are in court, I assume.  So I am going to

22   suggest you go there, 13A South.  In other words, upstairs.

23         We surrendered the upper floors to the magistrates,

24   so the architect would have some latitude to design the

25   building.  One of the great acts of generosity of my

Proceedings                                          26

1    colleagues. And I will continue to try to get ahold of her.

2              MR. MARKOWITZ: Okay.

3              THE COURT: Go in, sit yourself down, and if you can

4    get the deputy's attention, explain that I had called and,

5    perhaps, she will call me. Otherwise, we will get somebody

6    over there to try to intervene so you can get on her calendar.

7              Have you come up with a schedule?

8              MR. MARKOWITZ: Yes, we have, Your Honor.

9              We've come up with that on January 17th parties will

10   submit motions -- briefs to each other on the issue, that

11   opposition briefs will be submitted to each other and then to

12   the Court on February 14th, and there will be no replies.

13             THE COURT: Okay. Now, you want to argue this, I

14   bet?

15             MR. MARKOWITZ: Yes.

16             MR. DOLAN: Yes.

17             THE COURT: Again.

18             MR. GOLDSTEIN: I'll practice next time, Your Honor.

19             THE COURT: You are doing fine. You are doing just

20   fine. Not a problem.

21             All right, so the briefing will be to me when?

22             MR. MARKOWITZ: We will exchange on the 14th, which

23   is a Friday. I am assuming we can hand-deliver --

24             MR. DOLAN: The 17th.

25             MR. MARKOWITZ: -- it by that Monday, the 17th.

Proceedings                                27

1          THE COURT:  The 17th of?

2          MR. MARKOWITZ:  February.

3          MS. NACE:  That's a holiday.  It's Presidents' Day.

4          MR. MARKOWITZ:  Presidents' Day.  So by the 18th

5   we'll have it --

6          THE COURT:  So the 18th of February you will file.

7   That will get us into -- I am going to be away then.  So I

8   will get three weeks with the papers.  Let's put this down for

9   the 20th.  Is that okay?

10         Wait a minute, you said 18th of February.

11         MR. MARKOWITZ:  February 18th we will have it to

12  you.

13         THE COURT:  I beg your pardon.  I beg your pardon.

14  Yes, it is going to be the 20th of March, I'm afraid.

15         MR. MARKOWITZ:  Okay.

16         THE COURT:  I take it, 11:00 a.m. work?

17         MR. DOLAN:  Yes, Your Honor.

18         MR. MARKOWITZ:  Sure, Your Honor.

19         THE COURT:  11:00 a.m. on the 20th of March.

20         MR. DOLAN:  As long as Mr. Markowitz is not in state

21  court.

22         MR. MARKOWITZ:  As of now, I'm not.

23         THE COURT:  Well, as he has learned today, we don't

24  wait for him.

25         All right, gentlemen and madam, thank you for your

Proceedings                          28

1   time and we will see you in the spring.

2           MR. DOLAN:  Thank you, Your Honor.

3           MR. GOLDSTEIN:  Thank you, Your Honor.

4           MR. MARKOWITZ:  Thank you, Your Honor.

5           MS. NACE:  Thank you, Your Honor.

6           MR. DOLAN:  Best wishes for the holiday.

7           THE COURT:  Good luck.

8           MR. DOLAN:  Thank you.

9           (Matter adjourned.)

10

11

12                 *     *     *     *     *

13

14   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.

15

16     /s/ Stacy A. Mace                  November 26, 2019
     _____     _____
17       STACY A. MACE                     DATE

18

19

20

21

22

23

24

25

SAM     OCR     RMR     CRR     RPR