

Client Focused. Results Driven.

Brian J. Markowitz
(646) 768-4127
bmarkowitz@GoldsteinHall.com

September 11, 2020

**VIA ECF AND FEDERAL EXPRESS**
HONORABLE RAYMOND J. DEARIE
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:  **RiseBoro Community Partnership Inc., v.
SunAmerica Housing Fund No. 682, et al.
Docket No. 18-cv-07261 (RJD)**

Hon. Judge Dearie:

      This office represents plaintiff in the above referenced action currently pending before your Honor. We are in receipt of your Honor's Memorandum and Order (the "Order"), filed August 28, 2020. We write to respectfully request that your honor issue a certification, pursuant to 28 U.S.C. § 1292(b), and FRAP § 5 that the Order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation".

      Respectfully, Plaintiff believes that the Court's Order is incorrect on several grounds. Specifically, Plaintiff believes the Court incorrectly concluded that Plaintiff was seeking to interpret the Right of First Refusal as an option. This is not the case. Plaintiff's position has been, and continues to be, that the Right of First Refusal is not an option but rather an instrument that must be interpreted in accordance with the programmatic goals of Section 42(i)(7). *Bob Jones Univ. v. United States*, 461 U.S. 574, 586, 103 S. Ct. 2017, 2025 (1983 ("It is a well-established canon of statutory construction that a court should go beyond the literal language of a statute if reliance on that language would defeat the plain purpose of the statute.") Section 42(i)(7), and indeed the entirety of the Low-Income Housing Tax Credit program, is the sustainability of affordable housing, and "the legislative history of § 42(i)(7) confirms that it was intended to facilitate the inexpensive transfer of properties to nonprofit organization." *Homeowner's Rehab, Inc. v. Related Corp. V SLP, L.P.*, 479 Mass. 741, 755, 99 N.E.3d 744, 756 (2018) ("Homeowners"). The Order both inhibits that intent and ignores that the Limited Partnership Agreement provided the General Partner with the right to accept any offer which would trigger the Right of First Refusal. Instead, the Order rewrote the Limited Partnership Agreement to create an "unlikely" to be used right that is also subject to a for-profit investor's bottom-line veto. This Court framed the issue as though it is a binary choice between a right of first refusal and an option despite the fact that the LIHTC context compels a unique right altogether which promotes an inexpensive transfer rather than one that unreasonably repels it and makes it costly.

Goldstein Hall PLLC
New York City Office: 80 Broad Street, Suite 303, New York, NY 10004
Hudson Valley Office: 175 Huguenot Street, Suite 229, New Rochelle, NY 10801
**NYC** 646.768.4100  **HV** 914.713.6402  **F** 646.219.2450  **E** info@goldsteinhall.com  **W** www.goldsteinhall.com




Client Focused. Results Driven.

For instance, the limited issue brief discussed the fact that the Right of First Refusal clause did not contain any triggering language. It does not require either the General Partner, nor the Limited Partner, to desire to sell the Apartment Complex. Yet, the Order implicitly requires that the Limited Partner be desirous of selling. This is violative of two separate provisions of the Limited Partnership Agreement, 8.01 and 12.03. 8.01 and, more broadly, Article III grant the General Partner the right to accept any offers. Nothing in the Limited Partnership Agreement gives the limited or investor partners any ability or right to sell the Apartment Complex, or to accept or reject any offer. In other words, the ability to accept an offer does, and must rest in the general partner. The ability to trigger the Right of First Refusal does and must rest in Plaintiff.

Further, exception is taken to the Court's interpretation of the Right of First Refusal as a garden variety Right of First Refusal under New York Common Law. Justice Frankfurter's words "the notion that because the words of a statute are plain, its meaning is also plain, is merely pernicious oversimplification." (*United States v. Monia*, 317 U.S. 424, 431, 63 S.Ct. 409, 412 (1943)) could not ring truer in this scenario. The Right of First Refusal, as contemplated in Section 42 is not a typical Right of First Refusal, and cannot be interpreted by reference to unrelated litigation, merely because the same words are used. As stated by the Massachusetts Superior Court, "[w]ith a typical right of first refusal, a third party can still prevail against the holder by overbidding -- that is, by offering a price so high that it cannot be matched. But a right of first refusal under Section 42(i)(7) eliminates even that possibility, because the holder need not match the third-party price." *Homeowner's*, 479 Mass. At 758, 99 N.E.3d at 758 (2018). Here, there has not been a single New York case that has interpreted a Right of First Refusal in the LIHTC context. With this background, that a LIHTC Right of First Refusal is specifically designed to foster low income housing, it would not make sense to burden the Right of First Refusal with traditional formalities of a Right of First Refusal. Neither the Limited Partnership Agreement here, nor Section 42, require this.[1]

As for the issue regarding Congressional intent with respect to Congressional use of the term Right of First Refusal as opposed to option, Congress' rejection of the term option is not dispositive of how the Right of First Refusal is to be exercised. First, as the Supreme Court ruled "the private intent behind a drafter's rejection of one version of a text is shoddy evidence of the public meaning of an altogether different text." *Gamble v. United States*, 139 S. Ct. 1960, 1965, 204 L. Ed. 2d 322 (2019). Accordingly, Congress' decision to not use the term "option" is insignificant according to the *Gamble* Court and insignificant to the limited issue brief. Further, using the term "option" serves no purpose because Section 42(i)(7), as written,

---

[1] Moreover, though this Court relied on *Metro Transp. Auth. v. Bruken Realty Corp.*, 67 N.Y.2d 156, 163 (N.Y. Ct. App. 1986) ("Metro"), it did not consider that besides defining what a common law Right of First Refusal was, that decision also established that bargained-for-rights must be understood within the context that they were agreed to and for the purpose which such bargains were intended to serve. Specifically, in *Metro* not only did the Court consider "the rules limiting the rights of owners to indefinitely control title to property...", (a question most appropriate here because according to this Court, Riseboro has an "unlikely" to materialize ability to purchase a property as a result of an indefinite restriction), but it also recognized that the instrument in the dispute "though called an option by the parties, was a preemptive right to buy the freight yard … a right of first refusal." In other words, in *Metro*, the Court already set the precedent to compel a court to consider the circumstances, to avoid deciding a matter in a way that would strengthen unreasonable restraints on property, and seek to "ensure the productive use and development of property by its current beneficial owners by simplifying ownership, facilitating exchange, and freeing property." Here, the most efficient use of the land is to maintain and ensure perpetual affordability. Allowing for-profit investors to maintain ownership indefinitely leaves the project subject to traditional market forces that would not maintain the federally funded residual value. Weiss, Brandon M., Residual Value Capture in Subsidized Housing (July 6, 2016). Harvard Law & Policy Review, Vol. 10, No. 2, 2016, Available at SSRN: https://ssrn.com/abstract=2812718

Goldstein Hall PLLC
New York City Office: 80 Broad Street, Suite 303, New York, NY 10004
Hudson Valley Office: 175 Huguenot Street, Suite 229, New Rochelle, NY 10801
**NYC** 646**.**768**.**4100 **HV** 914**.**713**.**6402 **F** 646**.**219**.**2450 **E** info@goldsteinhall**.**com **W** www**.**goldsteinhall**.**com




contemplates a right that is distinct from common law understandings in the first place. Congress recognized a special right that incentivized the inexpensive transfer of property to a not-for-profit organization and protect the residual value created at the taxpayers' cost. Because, Plaintiff never espoused a theory that the Right of First Refusal was to be treated as an option, the comparison was inappropriate and incorrect.

Ignored by the Court is the fact that Congress, not in its legislative history, but in the actual passing of its legislation demonstrated that the Section 42 Right of First Refusal is a unique concept, divorced from common law. First, Congress expressly did not require a third party offer to trigger the Right of First Refusal, as it expressly required elsewhere in the Statute. In Section 42(h)(6)(F), for example, Congress did contemplate the need for a bona-fide offer and even included fair market value language. Had Congress wanted to include analogous language in Section 42(i)(7) it could have chosen to, but it did not. This is a clearer indication of Congressional intent, then whether Congress used the term option or Right of First Refusal. Second, Section 42 itself provides a safe harbor for a Right of First Refusal transaction. This is specifically because such transactions are not pursuant to regular rules of a Right of First Refusal transaction. Clearly, if the Right of First Refusal was to be interpreted strictly in accordance with non-LIHTC New York State cases, and not in line with Congressional intent and federal law, not only would such a safe harbor not be necessary, but this Action would not have been properly removed to Federal Court in the first place.

It is also respectfully requested that such certification be granted in this case as the instant decision is one of "near finality" and should be treated as final for purposes of the appeal. As the Supreme Court held:

> our cases long have recognized that whether a ruling is 'final' within the meaning of s 1291 is frequently so close a question that decision of that issue either way can be supported with equally forceful arguments, and that it is impossible to devise a formula to resolve all marginal cases coming within what might well be called the 'twilight zone' of finality. Because of this difficulty this Court has held that the requirement of finality is to be given a 'practical rather than a technical construction.'

*Gillespie v. United States Steel Corp.*, 379 U.S. 148, 152, 85 S. Ct. 308, 311, (1964), quoting, *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1226 (1949). Here, because of the nature of the Order and the fact that it, in essence, resolves the majority of the case, that Plaintiff should be permitted to appeal the Order and not await final resolution of the entire matter. Further, the central question of law, i.e., the meaning of the Right of First Refusal granted to Riseboro, is a controlling question of law because it "importantly affect[s] the conduct of [this] action." *In re Duplan Corp.*, 591 F.2d 139, 148 n.11 (2d Cir. 1978) (Friendly, J.); see *Klinghoffer v. S.N.C. Achille Lauro Ed Altri - Gestione Motonave Achille Lauro In Amministrazione Straordinaria*, 921 F.2d 21, 24 (2d Cir. 1990) (the resolution of an issue "need not necessarily terminate an action in order to be 'controlling.'"). Likewise, because the specific issue herein is an issue of first impression, the question offers grounds for substantial disagreement - among the Courts and the relevant stakeholders. This disagreement stems from the threshold issue as to whether Congress intends to make perpetual not-for-profit ownership actually occur or just to preserve an unlikely chance that a not-for-profit may be permitted to trigger its Right of First Refusal as this Court's decision concludes. In *Homeowners*, as this Court correctly concluded, the Massachusetts Superior Court agreed that the for-profit developers supplies funds needed to operate the property and in return receives the LIHTC Program tax credits. In other words,



that is the bargain. Based on that reasoning, the Circuit Court of Florida, in *Opa-Locka Community Development Corp., Inc. v. HK Aswan, LLC*, No. 201916913CA0144, 2020 WL 4381624, at 1 (Fla.Cir.Ct. July 07, 2020), agreed that the "expectation is for the properties to remain with the nonprofit owners in perpetuity and to continue to be operated as affordable housing." Here, the Defendant switched its original intent and now seeks to be in the position to avoid any sale whatsoever as a result of nomenclature that is irreconcilable with the original bargain. Neither the Agreement nor the law permit this and such should not be condoned by the Court.

        Accordingly, Plaintiff respectfully requests that your Honor issue a certification, pursuant to 28 U.S.C. § 1292(b), and FRAP § 5 that the Order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation"

        Very truly yours,

        S/ Brian J. Markowitz
        Brian J. Markowitz

CC:    Nixon Peabody LLP
        Attorney for Defendants
     Attn:   Louis E. Dolan, Jr.
          Via Email and ECF